1  Mark Punzalan (State Bar No. 247599)
   mpunzalan@finkelsteinthompson.com
2  **FINKELSTEIN THOMPSON LLP**
   100 Bush Street, Suite 1450
3  San Francisco, California 94104
   Telephone: (415) 398-8700
4  Facsimile: (415) 398-8704

5
   Additional Counsel Listed on Signature Page
6
7  Counsel for Gary Rall and Marion Rall

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11 | JORGE SALHUANA, Individually and On Behalf of All Others Similarly Situated, | Case No. No. C 11-05386 WHA |

12 |                                                                              | **NOTICE OF MOTION AND MOTION FOR CONSOLIDATION AND**          |
                  Plaintiff,                                                       **APPOINTMENT OF LEAD PLAINTIFF;**
13 |                                                                              | **MEMORANDUM OF POINTS AND**                                    |
                  v.                                                               **AUTHORITIES IN SUPPORT THEREOF**
14

15 | DIAMOND FOODS, INC.; MICHAEL J. MENDES; and STEVEN M. NEIL,                  | Date: February 23, 2012                                         |
                                                                                  Time: 2:00 p.m.
16 |                                                                              | Judge: The Honorable William Alsup                              |
                  Defendants.                                                     Courtroom 8; 19th Floor
17

18

19

20

21

22

23

24

25

26

27

28

1    **NOTICE OF MOTION AND MOTION**

2        TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3        PLEASE TAKE NOTICE, that on February 23, 2012, at 2:00 p.m., the undersigned will

4   move this Court before the Honorable William H. Alsup, at the United States District Court for

5   the Northern District of California, Courtroom 8, 19th Floor, 450 Golden Gate Ave., San

6   Francisco, CA 94102, pursuant to Rule 42 of the Federal Rules of Civil Procedure and the

7   Private Securities Litigation Reform Act of 1995, for an Order:

8        1.   consolidating with the above-captioned any and all cases filed in this District which

9             allege one or more common questions of law or fact;[1] and

10       2.   appointing Gary Rall and Marion Rall (the "Ralls" or "Movants") as Lead Plaintiffs on

11            behalf of the Class.

12            The Ralls respectfully submit the following memorandum in support of this motion.

13   **MEMORANDUM OF POINTS AND AUTHORITIES**

14   **I.      PRELIMINARY STATEMENT**

15       Currently, there are six securities class actions ("the Related Cases") pending in this

16   District against Diamond Foods, Inc. ("Diamond" or the "Company"); Diamond President, CEO,

17   and Chairman Michael J. Mendes ("Mendes"); and Diamond Executive Vice President and Chief

18   Financial and Administrative Officer Steven M. Neil ("Neil") (collectively "Defendants"): *Rall

19   et al. v. Diamond Foods, Inc., et al.*, No. 11-cv-5457 WHA; *Salhuana v. Diamond Foods, Inc., et

20   al.*, No. 11-cv-5386 WHA; *Mitchem v. Diamond Foods, Inc., et al.*, No. 11-cv-5399 WHA;

21   *Woodward v. Diamond Foods, Inc., et al.*, No. 11-cv-5409 WHA; *Simon v. Diamond Foods,

22   Inc., et al.*, No. 11-cv-5479 WHA; and *MacFarland v. Diamond Foods, Inc., et al.*, No. 11-cv-

23   5615.  The Related Cases involve common questions of law and fact, and allege claims on behalf

24

25   _____

26   [1]On January 3, 2012, the Court issued an Order directing that any party objecting to the
     consolidation of the related cases must show cause in writing no later than January 9, 2012 why
27   the cases should not be consolidated.  Movants Gary Rall and Marion Rall have no objection to
     the consolidation of the Related Cases as contemplated by the Court's January 3, 2012 Order.
28
                                        1
     GARY RALL AND MARION RALL'S MOTION FOR LEAD PLAINTIFF

1   of overlapping classes of purchasers of Diamond securities.  The longest class period set forth in

2   any Related Case is December 9, 2010 to November 4, 2011 (the "Class Period").

3         The plaintiff filing the first Related Case published the initial notice of pendency of class

4   action on November 7, 2011, as required by the Private Securities Litigation Reform Act of 1995

5   (the "PSLRA") (*See* accompanying Declaration of Mark Punzalan ("Punzalan Decl."), Exh. A).

6   The Ralls file a copy of this notice in compliance with the Court's January 4, 2010 Order

7   Requesting Filing of Notice of Publication.  The Ralls did not independently publish such a

8   notice because 15 U.S.C. § 78u-4(a)(3)(A)(ii) imposes the requirement solely on the first-filed

9   case. The Ralls file this motion within 60 days of the date of the notice.

10       Pursuant to the PSLRA, the Court appoints the movant demonstrating the "largest

11   financial interest" in the litigation as Lead Plaintiff, provided that movant satisfies the typicality

12   and adequacy prongs of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15

13   U.S.C. § 78u-4(a)(3)(B)(iii).  As set forth in the Ralls' Loss Calculations and certifications

14   (Punzalan Decl., Exh. B, D & E), the Ralls purchased 5,100 shares of Diamond stock during the

15   Class Period and held those shares until the end of the Class Period.  As such, the Ralls have

16   demonstrated that they suffered cognizable losses of at least $130,601.21, the largest loss known

17   to them at this time.

18       In addition to having the largest known financial stake, the Ralls satisfy the typicality and

19   adequacy elements of Rule 23 and are not subject to any unique claims or defenses.  As such, the

20   Ralls are the presumptive "most adequate plaintiffs" and this Court should appoint them Lead

21   Plaintiffs.

22   **II.**     **FACTUAL BACKGROUND**

23       This case stems from Defendants' alleged improper accounting and its public

24   misstatements regarding that accounting.  Diamond is a packaged food company based in San

25   Francisco, California.  For most of its history, the Company focused almost exclusively on

26   selling nuts.  Upon going public in 2005, Diamond aggressively branched out into the acquisition

27   of popular snack food brands.  This trend culminated on April 5, 2011, with the Company's

28

GARY RALL AND MARION RALL'S MOTION FOR LEAD PLAINTIFF

1  announcement of a deal to purchase the Pringles brand from Procter & Gamble.  In the press

2  release announcing the deal, Diamond touted the financial benefits it and its shareholders would

3  receive in the deal (including combined-company financial estimates), and stated "[t]he

4  transaction is expected to be completed by the end of calendar 2011."

5          Even after its expansion into other snack foods, a significant amount of Diamond's

6  revenue (and expenses) came from its lines of snack nuts.  Throughout the Class Period,

7  Diamond's filings with the Securities Exchange Commission described the policy governing the

8  price it paid for walnuts as follows:  "We have entered into long-term Walnut Purchase

9  Agreements with growers, under which they deliver their entire walnut crop to us during the Fall

10 harvest season and we determine the minimum price for this inventory by March 31, or later, of

11 the following calendar year. The final price is determined no later than the end of the Company's

12 fiscal year."

13         However, in 2010, Diamond significantly underpaid its walnut growers for their crops,

14 creating problems between Diamond and their growers.  Diamond accordingly decided to make

15 an additional payment to growers for their 2010 crops in late 2011, aimed as assuaging growers'

16 concerns over the growing gap between their revenues and market rates.  However, Diamond did

17 not want to account for these additional payments (totaling approximately $50 million) as an

18 expense for their past fiscal year.  Accordingly, Diamond falsely asserted to the investing public

19 that these payments were "momentum payments" serving as an advance on the upcoming fall

20 2011 walnut crop.  To that end, on October 3, 2011, Diamond issued a press release stating:

21         Diamond made a pre-harvest momentum payment to walnut growers in early
           September, prior to the delivery of the fall walnut crop to reflect the fiscal 2012
22         projected market environment. The payment is accounted for in fiscal 2012 cost
           of goods sold and is reflected in the guidance provided by the company on
23         September 15, 2011.

24         Because Diamond's so-called "momentum payments" should have been realized as

25 expenses for the 2011 fiscal year, Diamond's financial statements for that year were significantly

26 overstated.  Indeed, the improper accounting resulted in an approximately 20% overstatement of

27

28

                                                    3

1    the company's gross margin for fiscal 2011, and an approximately 50% overstatement of

2    operating income.

3      Diamond's prior statements regarding the Company's financial prospects were false and

4    misleading.  The Company's announcement of the Pringles deal was also false and misleading

5    because (1) the omission of the upcoming momentum payments skewed the 2011 combined-

6    company financial estimates and/or (2) the total value of the all-stock transaction reflected an

7    artificially inflated valuation of Diamond shares.

8      On November 1, 2011, the truth about Diamond's accounting irregularities began to

9    emerge, with the Company issuing a press release stating:

10

11     Diamond Foods, Inc. (NASDAQ: DMND) today announced that its previously
     announced acquisition of the Pringles snack business from The Procter & Gamble
     Company ("P&G") is now expected to close in the first half of calendar 2012.

12   Diamond and P&G had previously expected the closing to occur in December of
     2011.

13

14     Diamond and P&G have revised the expected closing date of the acquisition
     following the receipt by the Chairman of the Audit Committee of Diamond's

15   Board of Directors of an external communication regarding Diamond's
     accounting for certain crop payments to walnut growers. In response to the

16   communication, Diamond's Audit Committee decided to perform an investigation
     of this matter. Management is fully committed to supporting the Audit Committee

17   in this process.

18

19     This revelation was followed by two *Wall Street Journal* articles elaborating on the

20   accounting irregularities.  The Company's stock went into a tailspin, falling from $64.12 on

21   November 1, 2011 to $46.40 on November 4, 2011 to close the trading week.  Subsequently, the

22   Securities and Exchange Commission opened an investigation into Diamond's accounting

23   practices.

     **III.    ARGUMENT**

24     **A.    The Related Actions Should Be Consolidated**

25     The six class actions identified above allege one or more common questions of law or fact

26   and allege securities claims against Diamond and certain officers.  The Related Actions allege

27   that Diamond violated federal securities laws by misrepresenting and omitting material adverse

28

GARY RALL AND MARION RALL'S MOTION FOR LEAD PLAINTIFF

1   facts regarding Diamond's accounting and financial statements.  Thus, this Court should

2   consolidate the Related Cases pursuant to Rule 42 of the Federal Rules of Civil Procedure ("If

3   actions before the court involve a common question of law or fact, the court may… consolidate

4   the actions).  Fed. R. Civ. P. 42(a).

5               **B.         The Ralls Are The Most Adequate Plaintiffs Under The PSLRA**

6               The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee

7   securities class actions.  *See* 15 U.S.C. § 78u-4(a)(3).  First, the plaintiff who files the initial

8   action must publish a notice, within 20 days of filing the action, informing class members of

9   their right to file a motion for appointment as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i) &

10   (ii).  Here, Plaintiff in the first-filed action published a notice on *Business Wire* on November 7,

11   2011 indicating any Class Member could move for appointment as Lead Plaintiff no later than

12   January 6, 2011.  (Punzalan Decl., Exh. A.); *see also* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

13               According to the PSLRA, within 90 days after publication of the initial Notice of

14   Pendency, the Court shall appoint as Lead Plaintiff the movant most capable of adequately

15   representing the interests of the class members.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In determining

16   the "most adequate plaintiff," the PSLRA provides that:

17               the court shall adopt a presumption that the most adequate plaintiff in any private action
               arising under this chapter is the person or group of persons that—

18

19               **(aa)** has either filed the complaint or made a motion in response to a notice under
               subparagraph (A)(i);

20               **(bb)** in the determination of the court, has the largest financial interest in the relief sought
               by the class; and

21

22               **(cc)** otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil
               Procedure.

23   15 U.S.C. § 78u-4(a)(3)(B)(iii).

24

25               Here, the Ralls timely move the Court for appointment as Lead Plaintiffs pursuant to the

     provisions of the PSLRA.

26   //

27

28
                                                      5
                     GARY RALL AND MARION RALL'S MOTION FOR LEAD PLAINTIFF

1      **1.  The Ralls Have the Largest Known Financial Interest**

2          The class member movant with the largest financial interest in the relief sought by the

3  action is the presumptive "most adequate plaintiff". *Eichenholtz v. Verifone Holdings, Inc.*, No.

4  07-06140 MHP, 2008 WL 3925289, at *1 (N.D. Cal. Aug. 22, 2008) ("*Verifone*"); *see also* 15 §

5  U.S.C. § 78u-4(a)(3)(B)(iii).  Courts properly calculate a movant's financial interest under a

6  "retained share methodology," which measures a movant's losses solely in connection with

7  shares bought during the class period which are held through the end of the class period.  *See*

8  *Verifone*, 2008 WL 3925289, at *3.  *See also In re Cornerstone Propane Partners, L.P. Sec.*

9  *Litig.,* No. C 03-2522 MHP, 2006 WL 1180267, at *8-*9 (N.D. Cal. May 3, 2006).  Courts make

10  this determination by referencing the longest class period in any filed case because "no benefits

11  accrue by shortening the class period at this stage in the litigation."  *Id.* at *2.  Moreover, "[a]t

12  least as a first approximation, the candidate with the most net shares purchased will normally

13  have the largest potential damage recovery." *In re Network Associates, Inc., Sec. Litig.*, 76

14  F.Supp. 2d 1017, 1027 (N.D. Cal. 1999).

15          Accordingly, the Ralls base their Loss Calculations on the Class Period: December 9,

16  2010 to November 4, 2011.  The Ralls purchased 5,100 shares during the Class Period, at a total

17  price of $333,346.98.  They held those shares through the end of the Class Period and sold all of

18  them for a total price of $202,745.77.  The difference between these two prices – $130,601.21 –

19  is their total loss.  Both the Ralls' total number of shares purchased and their total loss is the

20  largest known to them at this time.

21      **2.  The Ralls Satisfy The Requirements of Rule 23**

22          In addition to possessing the largest financial interest in the outcome of the litigation, the

23  Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of

24  Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B).  Rule 23(a) provides that a party may serve as a

25  class representative if the following four requirements are satisfied:

26          (1) the class is so numerous that joinder of all members is impracticable; (2) there are
           questions of law or fact common to the class; (3) the claims or defenses of the
27

28

GARY RALL AND MARION RALL'S MOTION FOR LEAD PLAINTIFF

1    representative parties are typical of the claims or defenses of the class; and (4) the
     representative parties will fairly and adequately protect the interests of the class.

2

3        Fed. R. Civ. P. 23(a).

4   Of the four prerequisites to class certification, only two – typicality and adequacy – directly

5   address the personal characteristics of the class representative.  Those two prongs are

6   accordingly the only relevant considerations at this stage.  *See In re Cavanaugh,* 306 F.3d 726,

7   730 (9th Cir. 2002).

8        Here, the Ralls satisfy both the typicality and adequacy requirements of Rule 23.

9   Typicality exists if claims are "reasonably co-extensive with those of absent class members."

10  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  The claims of the Lead

11  Plaintiff, however, need not be identical to the claims of the class to satisfy typicality.  *Id.*  The

12  Ralls satisfy this requirement because, just like all other class members, they (1) purchased

13  common stock of Diamond during the Class Period; (2) at prices allegedly artificially inflated by

14  Defendants' materially false and misleading statements and/or omissions; and (3) suffered

15  damages thereby.  Thus, the Ralls' claims are typical of those of other class members.

16       The Ralls also satisfy the "adequacy" prong of Rule 23.  Under Rule 23(a)(4), the

17  representative party must "fairly and adequately protect the interests of the class."  The Ralls

18  have already taken significant steps demonstrating that they have and will protect those interests:

19  they have executed sworn certifications detailing their Class Period transactions and expressing

20  their willingness to serve as Lead Plaintiffs (Punzalan Decl., Exhs. D and E.); they have timely

21  moved to be appointed Lead Plaintiffs in this action; and they have retained and been advised by

22  competent and experienced counsel.  Further, the expectation is that the person or group with the

23  largest amounts at stake "presumably meets the adequacy requirement."  *See Richardson v.*

24  *TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *5 (N.D. Cal. Apr. 16, 2007).

25       Thus, the Ralls, in addition to having the largest financial interest, also *prima facie* satisfy

26  the typicality Rule 23(a)(3) and adequacy 23(a)(4) requirements of Rule 23 and thus satisfy all

27  elements of the PSLRA's prerequisites for appointment as Lead Plaintiff.

28

7

GARY RALL AND MARION RALL'S MOTION FOR LEAD PLAINTIFF

1    Pursuant to the Court's January 5, 2012 Order, Movants will defer any application for

2   Class Counsel until after the Court has appointed a Lead Plaintiff.  If appointed as Lead

3   Plaintiffs, the Ralls will perform due diligence in selecting the most appropriate counsel.  At the

4   appropriate time, the Ralls' current chosen counsel – Finkelstein Thompson LLP – intends to

5   apply to serve as Class Counsel.  (*See* Punzalan Decl. Exh. C.)

6                                        **CONCLUSION**

7    Because the Ralls are presumptively the most adequate plaintiffs, and because they will

8   fairly and adequately represent the Class, this Court should appoint the Ralls as Lead Plaintiffs.

9   Dated:  January 6, 2012                            Respectfully submitted,

10                                                      **FINKELSTEIN THOMPSON LLP**

11                                                       /s/ Mark Punzalan

12                                                      Mark Punzalan
                                                        100 Bush St., Suite 1450
13                                                      San Francisco, California 94104
                                                        Telephone:  (415) 398-8700
14                                                      Facsimile:   (415) 398-8704

15
                                                        L. Kendall Satterfield
16                                                      Michael G. McLellan
                                                        Robert O. Wilson
17                                                      James Place
                                                        1077 30th Street NW, Suite 150
18                                                      Washington, D.C.  20007
                                                        Telephone: (202) 337-8000
19                                                      Facsimile: (202) 337-8090

20

21

22

23

24

25

26

27

28

8

GARY RALL AND MARION RALL'S MOTION FOR LEAD PLAINTIFF