1   Joseph J. Tabacco, Jr. (SBN 75484)
    Daniel E. Barenbaum (SBN 209261)
2   Anthony D. Phillips (SBN 259688)
    **BERMAN DEVALERIO**
3   One California Street, Suite 900
    San Francisco, CA  94111
4   Telephone: (415) 433-3200
    Facsimile:  (415) 433-6282
5   jtabacco@bermandevalerio.com
    dbarenbaum@bermandevalerio.com
6   aphillips@bermandevalerio.com

7   *Proposed Lead Counsel for the Proposed Class*
    *and Attorneys for the Oklahoma Law*
8   *Enforcement Retirement System*

9               **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11                  **SAN FRANCISCO DIVISION**

12

13  | JORGE SALHUANA, Individually and On Behalf of All Others Similarly Situated, | Case No. CV 11-05386 WHA |

14                                         **NOTICE OF MOTION AND**
        Plaintiff,                         **MOTION OF THE OKLAHOMA**
                                           **LAW ENFORCEMENT**
    v.                                     **RETIREMENT SYSTEM TO**
15                                         **CONSOLIDATE RELATED**
    DIAMOND FOODS, INC., MICHAEL J.        **ACTIONS, FOR APPOINTMENT AS**
16  MENDES, and STEVEN M. NEIL,            **LEAD PLAINTIFF AND FOR**
                                           **APPROVAL OF ITS SELECTION**
17      Defendants.                        **OF LEAD COUNSEL;**
                                           **MEMORANDUM OF POINTS AND**
18                                         **AUTHORITIES IN SUPPORT**
                                           **THEREOF**
19

20                                         Date:   February 23, 2012
                                           Time:   2:00 p.m.
21                                         Dept.:  Courtroom 8, 19th Floor
                                           Judge:  Honorable William H. Alsup
22
                                           Date Action Filed: November 7, 2011
23  RICHARD MITCHEM, Individually and      Case No. CV 11-05399 WHA
    On Behalf of All Others Similarly Situated,
24

25      Plaintiff,

    v.
26
    DIAMOND FOODS, INC., MICHAEL J.
27  MENDES, and STEVEN M. NEIL,

28      Defendants.

| | |
|---|---|
| STEWART WOODWARD, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>v.<br><br>DIAMOND FOODS, INC., MICHAEL J. MENDES, and STEVEN M. NEIL,<br><br>       Defendants. | Case No. CV 11-05409 WHA |
| GARY RALL and MARION RALL, On Behalf of Themselves and All Others Similarly Situated,<br><br>       Plaintiffs,<br><br>v.<br><br>DIAMOND FOODS, INC., MICHAEL J. MENDES, and STEVEN M. NEIL,<br><br>       Defendants. | Case No. CV 11-05457 WHA |
| GARY SIMON, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>v.<br><br>DIAMOND FOODS, INC., MICHAEL J. MENDES, and STEVEN M. NEIL,<br><br>       Defendants. | Case No. CV 11-05479 WHA |
| HENRY J. MACFARLAND, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>v.<br><br>DIAMOND FOODS, INC., MICHAEL J. MENDES, and STEVEN M. NEIL,<br><br>       Defendants. | Case No. CV 11-05615 WHA |

# TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION AND MOTION ...................................................................... 1

STATEMENT OF ISSUES ...................................................................................... 2

SUMMARY OF ARGUMENT .................................................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 3

I.      INTRODUCTION ....................................................................................... 3

II.     STATEMENT OF FACTS ............................................................................. 3

III.    ARGUMENT ............................................................................................. 5

        A.      The Related Actions Should Be Consolidated ........................................ 5

        B.      OLERS Should Be Appointed Lead Plaintiff ......................................... 6

                1.      The PSLRA's Lead Plaintiff Provisions ................................... 6

                2.      OLERS Has Complied with the Procedural Requirements of the
                        PSLRA ........................................................................... 7

                3.      OLERS Is the Presumptive Lead Plaintiff Because It Has the
                        Largest Financial Interest in the Relief Sought by the Proposed
                        Class ............................................................................. 7

                        a.      OLERS Has the Largest Known Financial Loss ............. 7

                        b.      As an Institutional Investor, OLERS Is the Preferred  Type
                                of Investor to Act as Lead Plaintiff Under the PSLRA ..... 8

                4.      OLERS Satisfies the Requirements of Rule 23 ......................... 9

                        a.      OLERS Claims Are Typical of the Claims of the Proposed
                                Class ................................................................... 9

                        b.      OLERS Will Fairly and Adequately Represent the Interests
                                of the Proposed Class ............................................. 10

                5.      OLERS' Selection of Counsel Should Be Approved ................. 11

CONCLUSION ................................................................................................... 11

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...................................................................... 2, 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................. 2, 9, 10

*In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) ............................................................... passim

*In re Vaxgen Sec. Litig.*, No. C 03-1129 JSW, 2004 U.S. Dist. LEXIS 29812 (N.D. Cal. Apr. 14, 2004) ...................................................................................................................... 8

*Investors Research Co. v. U.S. Dist. Ct.*, 877 F.2d 777 (9th Cir. 1989) ................................... 2, 5

*Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 U.S. Dist. LEXIS 147521 (N.D. Cal. Dec. 12, 2011) ................................................................................... 6, 7

*Mohanty v. Bigband Networks, Inc.*, No. C 07-5101 SBA, 2008 U.S. Dist. LEXIS 32764 (N.D. Cal. Feb. 13, 2008) ............................................................................................... 2, 5

*Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813 (N.D. Cal. Feb. 15, 2011) ........................................................................... 8, 10

*Rubke v. Capital Bancorp, Ltd.*, No C 05-4800 PJH, 2006 U.S. Dist. LEXIS 25170 (N.D. Cal. Mar. 31, 2006) .............................................................................................. 9, 10

*Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31-CJC (RNBx), *et seq.*, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) ...................................................... 9

*Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129 (C.D. Cal. 1999) ................................ 10

**Statutes & Rules**

15 U.S.C. § 78j(b) ...................................................................................................................... 3

15 U.S.C. § 78t(a) ...................................................................................................................... 3

15 U.S.C. § 78u-4 ...................................................................................................................... 1

15 U.S.C. § 78u-4(a)(3) ............................................................................................................. 2

15 U.S.C. § 78u-4(a)(3)(A)(i) ............................................................................................. 3, 6, 7

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................................ 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................. 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ...................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb) ............................................................................. 7

15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................................................. 11

17 C.F.R. § 240.10b-5 ................................................................................................ 3

Fed. R. Civ. P. 23 ...........................................................................................passim

Fed. R. Civ. P. 23(a) ................................................................................................ 9

Fed. R. Civ. P. 23(a)(4) .......................................................................................... 10

Fed. R. Civ. P. 42(a) ........................................................................................ 2, 5, 6

Private Securities Litigation Reform Act of 1995 § 21D(a)(3)(B) ............................. 1

Securities Exchange Act of 1934 § 10(b) ................................................................ 3

Securities Exchange Act of 1934 § 20(a) ................................................................ 3

Securities Exchange Act of 1934 § 21D(a)(2) ......................................................... 7

**Other Authorities**

H.R. Conference Report on the Securities Litigation Reform, S. Rep. No. 104-98 (1995) ........... 8

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on February 23, 2012, at 2:00 p.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable William H. Alsup, located in Courtroom 8 on the 19th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 94102, the Oklahoma Law Enforcement Retirement System ("OLERS") shall move the Court pursuant to Section 21D(a)(3)(B) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, *et seq.*, for an Order:

    (a)    consolidating the above-captioned actions;

    (b)    appointing OLERS as lead plaintiff for a class of investors who purchased securities of Diamond Foods, Inc. ("Diamond" or the "Company"); and

    (c)    approving Berman DeValerio as lead counsel for the proposed class.

This motion is made on the grounds that the above-captioned federal securities law actions brought in this Court against Diamond allege similar legal claims based on the same or similar factual allegations, including alleged violations of federal securities laws, and should therefore be consolidated.  Moreover, OLERS timely filed this motion and is the most adequate lead plaintiff.  OLERS believe that it has the most substantial financial interest in the relief sought by the class, and it meets the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of the claims of the proposed class and it will fairly and adequately represent the interests of the proposed class.  Further, OLERS has selected and retained Berman DeValerio, a law firm with substantial experience in prosecuting securities fraud class actions, to serve as lead counsel for the proposed class.

OLERS bases this motion on this notice of motion and memorandum of law, the Declaration of Daniel E. Barenbaum in support thereof ("Barenbaum Declaration" or "Barenbaum Decl."), the pleadings and other files herein, and such other written or oral argument as may be presented to the Court.

**STATEMENT OF ISSUES**

1.     Whether the Court should consolidate the six pending federal securities actions against defendants, which involve common questions of law and fact.

2.     Whether the Court should appoint OLERS as lead plaintiff under the PSLRA.

3.     Whether the Court should approve OLERS' selection of Berman DeValerio as lead counsel for the proposed class.

**SUMMARY OF ARGUMENT**

OLERS seeks an order consolidating the above-captioned complaints brought under federal securities laws against defendants; appointing OLERS as lead plaintiff; and approving its selection of counsel as lead counsel for the proposed class.

The Court should consolidate the related cases because they present common questions of law and fact and because consolidation will promote judicial efficiency and will conserve the resources of the Court and the parties.  Fed. R. Civ. P. 42(a); *Investors Research Co. v. U.S. Dist. Ct.*, 877 F.2d 777, 777 (9th Cir. 1989).

The Court should appoint OLERS as lead plaintiff because it has complied with the procedural requirements of the PSLRA and because it has the largest financial interest in the litigation.   15 U.S.C. 78u-4(a)(3); *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). Moreover, OLERS claims are typical of the claims of the proposed class and OLERS will fairly and adequately represent the interests of the proposed class.  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Moreover, the PSLRA demonstrates a preference for institutional investors to act as lead plaintiff, and OLERS is an institutional investor.  *Mohanty v. Bigband Networks, Inc.*, No. C 07-5101 SBA, 2008 U.S. Dist. LEXIS 32764, at *17 (N.D. Cal. Feb. 13, 2008).

The Court should approve OLERS' selection of counsel because its selected counsel, Berman DeValerio, will provide high-quality legal representation and will vigorously prosecute the claims of the proposed class.  15 U.S.C. 78u-4(a)(3); *In re Cavanaugh*, 306 F.3d at 734.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

On November 7, 2011, Jorge Salhuana ("Salhuana") filed a class action complaint in this Court on behalf of all persons who purchased securities of Diamond during the period between April 5, 2011 and November 1, 2011, inclusive (the "Class"), alleging violations of federal securities laws.  The *Salhuana* complaint named the Company, Michael J. Mendes and Steven M. Neil as defendants (collectively, "Defendants").  Since then, five additional plaintiffs have filed complaints in this Court asserting largely identical claims as Salhuana and alleging Class periods beginning as early as December 9, 2010 and ending as late as November 4, 2011.

All six complaints allege that, throughout the Class period, Defendants violated federal securities laws by issuing false and misleading statements that artificially inflated Diamond's stock price.  All plaintiffs claim these statements violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, promulgated thereunder, 17 C.F.R. § 240.10b-5, by the Securities Exchange Commission ("SEC").

In line with the timeframe mandated by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(i), OLERS now moves for consolidation; for appointment as lead plaintiff; and for appointment of its selected counsel, Berman DeValerio, as lead counsel.

## II.  STATEMENT OF FACTS

Diamond is a Delaware corporation headquartered in San Francisco, California.  It specializes in processing, marketing and distributing various packaged and branded snack foods, principally nuts.  Diamond built its business by acquiring and energizing branded snacks such as Kettle Brand® Chips, Emerald® nuts, Pop Secret® popcorn, and Diamond of California® snack and culinary nuts.  Diamond's stock trades on the NASDAQ Global Select Market under the ticker symbol "DMND," and it did so throughout the Class period.

As alleged in the complaints, Defendants issued false and misleading statements during the Class period about Diamond's financial health that artificially inflated the price of the Company's stock.  Specifically, the complaints allege that Defendants made false and

1    misleading statements about Diamond's accounting for certain crop payments to walnut

2    growers.  By improperly accounting for those crop payments, Defendants are alleged to have

3    manipulated the recording of expenses between fiscal years to misrepresent the Company's

4    actual 2011 cost of goods and to artificially inflate its profitability and earnings per share.  It is

5    alleged that this was done under the shadow of Diamond's planned December 2011 acquisition

6    of the Pringles® snack brand from the Procter & Gamble Company.  Diamond stock would

7    have provided consideration for the acquisition.

8         On November 1, 2011, the Company announced that its Audit Committee would

9    investigate these accounting practices and also that the planned Pringles® acquisition was being

10   delayed.  On November 2nd, Diamond's share price fell 17.6%, to close at $52.79.  Further

11   revelations about Diamond's accounting practices precipitated additional substantial stock price

12   declines.  By the time the *Salhuana* complaint was filed on November 7th, Diamond's stock

13   price closed at $39.09, having dropped 39% from November 1st.

14        Since November 7th, Diamond's sheen has been further tarnished.  A member of the

15   Company's Audit Committee recused himself from the investigation after its announcement due

16   to a conflict of interest.  Tragically, he committed suicide on November 17th, a fact about which

17   the market did not learn and Diamond did not acknowledge until November 23rd.[1]  Further

18   revelations emerged in the press that certain walnut growers had received payments from

19   Diamond in September 2011, despite the fact they had no plans to sell their crop to Diamond in

20   2011.  On December 15, 2011, the SEC announced that it had begun an investigation into

21   Diamond's accounting for its payments to walnut growers.

22        During the Class period, OLERS purchased 7,200 shares of Diamond common stock,

23   including net purchases of 4,500 shares.[2]  *See* Barenbaum Decl. Ex. 2.  OLERS expended a net

24   _____

25   [1] OLERS is not stating at this time that the suicide is related to this action; however it is relevant
     to this narrative because the market reacted to the eventual disclosure.

26   [2] A copy of the Plaintiff's Certification of Class Action Complaint, executed by OLERS, is
     attached as Exhibit 1 to the Barenbaum Declaration.  This Certification sets forth the
27   transactions of OLERS in Diamond securities during the Class period.  In addition, a chart
     reflecting the calculations of OLERS' financial losses from its trading in Diamond securities is
28   attached as Exhibit 2 to the Barenbaum Declaration.

1   amount of $342,216 during the Class period, and it suffered a loss of approximately $157,320,

2   based on both first-in/first-out ("FIFO") as well as last-in/first-out ("LIFO") loss calculation

3   analyses. *Id.*

4   **III.    ARGUMENT**

5        **A.    The Related Actions Should Be Consolidated**

6        On December 21, 2011, the Court ordered the six pending securities cases related.  *See*

7   Related Case Order, *Salhuana v. Diamond Foods, Inc.*, No. C 11-05386 WHA (Dec. 21, 2011),

8   ECF No. 16.  On January 3, 2012, the Court issued an Order to Show Cause Why Cases Should

9   Not Be Consolidated.  *See* ECF No. 18.  The Court ordered any objections to consolidation

10  submitted by January 9, 2012.  *Id.*

11       OLERS does not object; it agrees that the Court should consolidate the six related cases.

12  Federal Rule of Civil Procedure 42(a) ("Rule 42") grants broad discretion to consolidate cases

13  that involve common questions of law or fact.  Fed. R. Civ. P. 42(a); *see also Investors*

14  *Research Co.*, 877 F.2d at 777.  "[C]lass action shareholder suits are ideally suited to

15  consolidation because their unification expedites proceedings, reduces duplication, and

16  minimizes the expenditure of time and money by all concerned.  Consolidation facilitates

17  discovery, conserves judicial resources and reduces the confusion and delay that result from

18  prosecuting related class actions separately."  *Mohanty*, 2008 U.S. Dist. LEXIS 32764, at *9-10

19  (internal citation omitted).

20       OLERS submits that it would be appropriate for the Court to consolidate the following

21  actions, now pending in this district and as contemplated by the Court's January 3rd Order to

22  Show Cause:

| Name & Case Number | File Date |
|---|---|
| *Salhuana v. Diamond Foods, Inc.*, No. CV 11-05386-WHA | November 7, 2011 |
| *Mitchem v. Diamond Foods, Inc.*, No. CV 11-05399-WHA | November 7, 2011 |
| *Woodward v. Diamond Foods, Inc.*, No. CV 11-05409-WHA | November 8, 2011 |
| *Rall v. Diamond Foods, Inc.*, No. CV 11-05457-WHA | November 9, 2011 |

| Name & Case Number | File Date |
|---|---|
| *Simon v. Diamond Foods, Inc.*, No. CV 11-05479-WHA | November 10, 2011 |
| *MacFarland v. Diamond Foods, Inc.*, No. CV 11-05615-WHA | November 21, 2011 |

All of these actions share common questions of law and fact—namely, whether Defendants violated federal securities laws by overstating Diamond's financial results through improper accounting.

For these reasons, and as the Court has acknowledged, consolidation of these actions and future related actions is proper under Rule 42(a).

**B.      OLERS Should Be Appointed Lead Plaintiff**

**1.      The PSLRA's Lead Plaintiff Provisions**

The PSLRA sets forth a three-step procedure for the appointment of a lead plaintiff in class actions brought under the Exchange Act.  15 U.S.C. § 78u-4(a)(3)(B); *In re Cavanaugh*, 306 F.3d at 729.  First, within twenty days of filing a class action, the first-filing plaintiff must publish a notice advising members of the purported class of the pendency of the action, the claims asserted, the purported class period and their right to move the court for appointment as lead plaintiff of the purported class.  15 U.S.C. § 78u-4(a)(3)(A)(i); *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 U.S. Dist. LEXIS 147521, at *3 (N.D. Cal. Dec. 12, 2011).

Second, upon considering all motions for appointment as lead plaintiff filed in response to the notice, the court must identify the presumptively "most adequate [lead] plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 729; *see also Krieger*, 2011 U.S. Dist. LEXIS 147521, at *4.  That plaintiff is the entity that (1) filed the complaint or made a motion to serve as lead plaintiff within sixty days after publication of the required notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 729; *see also Krieger*, 2011 U.S. Dist. LEXIS 147521, at *4.

Third, the court must then "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements."

*Cavanaugh*, 306 F.3d at 730.  Only proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class" can rebut the presumption of appointing the presumptively most adequate plaintiff as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb); *Krieger*, 2011 U.S. Dist. LEXIS 147521, at *5.

As set forth below, OLERS satisfies all three of these criteria and is entitled to the presumption that it is the most adequate plaintiff.

### 2.   OLERS Has Complied with the Procedural Requirements of the PSLRA

OLERS filed this Motion to serve as lead plaintiff in a timely manner.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), counsel in the *Salhuana* action, the first-filed action of the related cases, published notice of the pendency of this action on November 7, 2011, through *Business Wire*, a national, business-oriented news service.  *See* Barenbaum Decl. Ex. 3.  The notice advised Diamond investors that motions for appointment as lead plaintiff must be submitted no later than sixty days from the date of publication, *i.e.*, on or before January 6, 2012.  15 U.S.C. § 78u-4(a)(3)(A)(i).  OLERS has filed its motion within the required time frame.

Moreover, pursuant to Section 21D(a)(2) of the Exchange Act and in accordance with applicable Local Rules, OLERS has signed and submitted a certification detailing its trading in Diamond securities and its suitability to serve as a class representative in this case.  *See* Barenbaum Decl. Ex. 1.

### 3.   OLERS Is the Presumptive Lead Plaintiff Because It Has the Largest Financial Interest in the Relief Sought by the Proposed Class

#### a.   OLERS Has the Largest Known Financial Loss

The PSLRA establishes a rebuttable presumption that the lead plaintiff should be the movant with "the largest financial interest in the relief sought by the class" who also meets the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *see also Cavanaugh*, 306 F.3d at 732.  Courts calculate a movant's financial interest "through accounting methods that are both rationally and consistently applied to establish which one has the most to gain from

1    the lawsuit." *In re Vaxgen Sec. Litig.*, No. C 03-1129 JSW, 2004 U.S. Dist. LEXIS 29812, at \*9

2    (N.D. Cal. Apr. 14, 2004) (internal quotation marks omitted) (*quoting Cavanaugh*, 306 F.3d at

3    730).

4          During the Class period, OLERS purchased 7,200 shares of Diamond common stock and

5    lost $157,320 under both the FIFO or LIFO methodologies.[3]   OLERS is unaware of any other

6    investor who intends to file a motion for appointment as lead plaintiff in this action that has

7    suffered larger losses than OLERS.   Accordingly, OLERS believes that it has the largest

8    financial interest in the relief sought by the proposed Class.

9          **b.    As an Institutional Investor, OLERS Is the Preferred  Type of
               Investor to Act as Lead Plaintiff Under the PSLRA**

10

11          In enacting the PSLRA, Congress expressed a clear preference for institutional investors,

12    such as OLERS, to lead securities class actions.  *See* H.R. Conference Report on the Securities

13    Litigation Reform, S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690

14    ("The Committee believes that increasing the role of institutional investors in class actions will

15    ultimately benefit the class and assist the courts . . . . [and] believes that an institutional investor

16    acting as lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the

17    class with the long-term interests of the company and its public investors."); *Mohanty*,

18    2008 U.S. Dist. LEXIS 32764, at \*17 ("It is true that Congress's intent in enacting the PSLRA

19    provisions governing the appointment of lead plaintiff was, in part, to increase the likelihood

20    that institutional investors will serve as lead plaintiffs.") (citation omitted).

21          As an institutional investor, OLERS fully understands its role as a fiduciary and

22    possesses the financial sophistication, experience and resources to ensure that lead counsel will

23    litigate in the best interests of the proposed Class.   OLERS understands the complexities of

24

25

26    [3] In this case, the FIFO and LIFO approaches yield the same loss calculation for OLERS.  *See*
     Barenbaum Decl. Ex. 2.  The FIFO approach to loss calculation assumes that those stocks
27    purchased first were sold first.  *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK,
     2011 U.S. Dist. LEXIS 16813, at \*32 (N.D. Cal. Feb. 15, 2011) (citation omitted).  Under
28    LIFO, the most recently acquired stocks are assumed to be sold first.  *Id.*

1   securities litigation and class actions, and its strength and position as an institutional investor

2   will help it command the best possible recovery.

3   **4.    OLERS Satisfies the Requirements of Rule 23**

4   The PSLRA requires that the lead plaintiff satisfy the requirements of Rule 23.[4]

5   15 U.S.C. § 78u-(4)(a)(3)(B).  Courts applying the PSLRA focus principally on the *typicality*

6   and *adequacy* elements of Rule 23 when appointing a lead plaintiff.  *Rubke v. Capital Bancorp,*

7   *Ltd.*, No C 05-4800 PJH, 2006 U.S. Dist. LEXIS 25170, at *8 (N.D. Cal. Mar. 31, 2006).  A

8   *prima facie* showing of *typicality* and *adequacy* is all that is required at the lead plaintiff

9   appointment stage.  *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31-CJC (RNBx), *et*

10  *seq.*, 2006 U.S. Dist. LEXIS 40607, at *16 (C.D. Cal. May 1, 2006).

11
12  **a.    OLERS Claims Are Typical of the Claims of the Proposed Class**

13  The *typicality* requirement of Rule 23 is satisfied when the lead plaintiff's claims arise

14  from the same event or course of conduct that gives rise to the claims of other class members

15  and all claims are based on the same legal theory.  *Armstrong*, 275 F.3d at 868 ("Typicality . . .

16  is said to require that the claims of the class representatives be typical of those of the class, and

17  to be satisfied when each class member's claim arises from the same course of events, and each

18  class member makes similar legal arguments to prove the defendant's liability.") (citation and

19  internal quotation omitted); *see also Hanlon,* 150 F.3d at 1020 ("[C]laims are 'typical' if they

20  are reasonably co-extensive with those of absent class members; they need not be substantially

21  identical.").

22  Here, OLERS, like other proposed Class members, seeks to hold Defendants liable for

23  their violations of federal securities laws.  Like other proposed Class members, OLERS

24  acquired Diamond securities during the Class period at prices artificially inflated by the false

25  statements and omissions of Defendants and suffered damages as a result.  OLERS' claims

26
27  _____

[4] Rule 23 requires that (1) the class be so numerous that joinder of all members is impracticable; (2) questions of law common to the class exist; (3) such claims are typical of those of the class; and (4) the representatives will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

28

therefore arise from the same events and are based on the same legal theories as all proposed Class members' claims.  Indeed, OLERS' claims are identical to those of other proposed Class members who invested in Diamond securities during the Class period and sustained losses when the truth about Defendants' misrepresentations emerged.  OLERS therefore fully satisfies the typicality requirement of Rule 23.

### b.    OLERS Will Fairly and Adequately Represent the Interests of the Proposed Class

The *adequacy of representation* requirement of Rule 23 is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4); *Rubke*, 2006 U.S. Dist. LEXIS 25170, at *8-9.  Accordingly, the Ninth Circuit has held that "[r]esolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class."  *Hanlon*, 150 F.3d at 1020; *see also Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *13.  Further, the class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1137 (C.D. Cal. 1999).

OLERS fully satisfies the adequacy requirement.  First, like all proposed Class members, OLERS purchased Diamond securities during the Class period and suffered losses when the truth about Defendants' misrepresentations emerged.  The interests of OLERS and the proposed Class are therefore closely aligned.

Second, as an experienced institutional investor, OLERS will effectively manage this litigation and vigorously represent the interests of all proposed Class members.  OLERS has submitted the statutorily-required certification confirming it understands and is willing to assume the responsibilities of a lead plaintiff.  *See* Barenbaum Decl. Ex. 1.  The significant losses suffered by OLERS as a result of Defendants' misconduct will ensure vigorous advocacy. *See id.*; *see also* Barenbaum Decl. Ex. 2.  OLERS has also retained well-qualified and

1  experienced securities class action attorneys to represent the proposed Class.  *See* Barenbaum

2  Decl. Ex. 4.  OLERS therefore qualifies as an adequate class representative.

3  **5.  OLERS' Selection of Counsel Should Be Approved**

4  The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject

5  to approval by the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734

6  ("While the appointment of counsel is made subject to the approval of the court, the [PSLRA]

7  clearly leaves the choice of class counsel in the hands of the lead plaintiff.").  The Court should

8  not interfere with lead plaintiff's selection of counsel unless necessary to protect the interests of

9  the proposed Class.  *Id*.

10  OLERS has retained the law firm of Berman DeValerio to serve as lead counsel for the

11  proposed Class.  Berman DeValerio is highly experienced in the areas of securities litigation

12  and class actions and has successfully prosecuted numerous securities fraud class actions,

13  obtaining excellent recoveries on behalf of defrauded investors.  Further, counsel has the skill

14  and knowledge that will enable them to prosecute this action effectively and expeditiously.  *See*

15  Barenbaum Decl. Ex. 4.  The Court may rest assured that, by approving OLERS' selection of

16  counsel, the proposed Class will receive the highest caliber of legal representation.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

## CONCLUSION

2
OLERS respectfully requests that the Court consolidate the above-captioned, related

3
actions; appoint OLERS as lead plaintiff for the proposed Class; approve Berman DeValerio as

4
lead counsel for the proposed Class; and grant such other relief as the Court may deem to be just

5
and proper.

6
Dated:  January 6, 2012                    **BERMAN DEVALERIO**

7
By:    /s/ Daniel E. Barenbaum
8
Daniel E. Barenbaum

9
Joseph J. Tabacco, Jr.
Anthony D. Phillips
10
One California Street, Suite 900
San Francisco, CA  94111
11
Telephone: (415) 433-3200
Facsimile:  (415) 433-6282
12
Email: jtabacco@bermandevalerio.com
dbarenbaum@bermandevalerio.com
13
aphillips@bermandevalerio.com

14
*Proposed Lead Counsel for the Proposed Class*
*and Attorneys for the Oklahoma Law Enforcement*
15
*Retirement System*

16

17

18

19

20

21

22

23

24

25

26

27

28