Jiangxiao Athena Hou (Bar. No. 215256)
**ZELLE HOFMANN VOELBEL &**
**MASON LLP**
44 Montgomery Street, Suite 3400
San Francisco, California 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
Email: ahou@zelle.com

*Proposed Local Counsel for the Class*

Christopher J. Keller
Eric J. Belfi
Michael W. Stocker (Bar No. 179083)
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: ckeller@labaton.com
ebelfi@labaton.com
mstocker@labaton.com

*Counsel for Laborers Pension Trust*
*Fund for Northern California and Proposed*
*Lead Counsel for the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
AT SAN FRANCISCO

| | |
|---|---|
| JORGE SALHUANA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> DIAMOND FOODS, INC., MICHAEL J. MENDES, and STEVEN M. NEIL, <br><br> Defendants. | Case No.: 3:11-cv-05386-WHA <br><br> <u>CLASS ACTION</u> <br><br> **NOTICE OF MOTION AND MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL** <br><br> Hearing Date: February 23, 2012 <br> Time: 2:00 p.m. <br> Judge: Hon. William H. Alsup <br> Courtroom: 8 |

|  | ) | Case No.: 3:11-cv-05399-WHA |
| RICHARD MITCHEM, Individually and On Behalf of All Others Similarly Situated, | ) | |
| | ) | CLASS ACTION |
| Plaintiff, | ) | |
| | ) | Hearing Date: February 23, 2012 |
| vs. | ) | Time: 2:00 p.m. |
| | ) | Judge: Hon. William H. Alsup |
| DIAMOND FOODS, INC., MICHAEL J. MENDES, and STEVEN M. NEIL, | ) | Courtroom: 8 |
| | ) | |
| Defendants. | ) | |

|  | ) | Case No.: 3:11-cv-05409-WHA |
| STEWART WOODWARD, Individually and On Behalf of All Others Similarly Situated, | ) | |
| | ) | CLASS ACTION |
| Plaintiff, | ) | |
| | ) | Hearing Date: February 23, 2012 |
| vs. | ) | Time: 2:00 p.m. |
| | ) | Judge: Hon. William H. Alsup |
| DIAMOND FOODS, INC., MICHAEL J. MENDES, and STEVEN M. NEIL, | ) | Courtroom: 8 |
| | ) | |
| Defendants. | ) | |

|  | ) | Case No.: 3:11-cv-05457-WHA |
| GARY RALL and MARION RALL, On Behalf of Themselves and All Others Similarly Situated, | ) | |
| | ) | CLASS ACTION |
| Plaintiff, | ) | |
| | ) | Hearing Date: February 23, 2012 |
| vs. | ) | Time: 2:00 p.m. |
| | ) | Judge: Hon. William H. Alsup |
| DIAMOND FOODS, INC., MICHAEL J. MENDES, and STEVEN M. NEIL, | ) | Courtroom: 8 |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| GARY SIMON, Individually and On Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>  vs.<br><br>DIAMOND FOODS, INC., MICHAEL J. MENDES, and STEVEN M. NEIL,<br><br>   Defendants. | Case No.: 3:11-cv-05479-WHA<br><br><u>CLASS ACTION</u><br><br>Hearing Date: February 23, 2012<br>Time: 2:00 p.m.<br>Judge: Hon. William H. Alsup<br>Courtroom: 8 |
| HENRY J. MACFARLAND, Individually and On Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>  vs.<br><br>DIAMOND FOODS, INC., MICHAEL J. MENDES, and STEVEN M. NEIL,<br><br>   Defendants. | Case No.: 3:11-cv-05615-WHA<br><br><u>CLASS ACTION</u><br><br>Hearing Date: February 23, 2012<br>Time: 2:00 p.m.<br>Judge: Hon. William H. Alsup<br>Courtroom: 8 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

NOTICE OF MOTION AND MOTION ........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

I.     STATEMENT OF THE ISSUES TO BE DECIDED.....................................................1

II.    STATEMENT OF THE RELEVANT FACTS ............................................................2

III.   ARGUMENT ...............................................................................................................5

       A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED ..........................5

       B.    NORTHERN CALIFORNIA LABORERS SHOULD BE APPOINTED
              LEAD PLAINTIFF..................................................................................................6

           1.    The PSLRA Standard for Appointing Lead Plaintiff................................6

           2.    Northern California Laborers is the "Most Adequate Plaintiff"...............7

                a.    Northern California Laborers Has Satisfied the PSLRA's
                       Procedural Requirements ....................................................7

                b.    Northern California Laborers Has the Largest Financial
                       Interest in the Relief Sought by the Class .......................7

                c.    Northern California Laborers Satisfies Rule 23's Typicality
                       and Adequacy Requirements .............................................8

                d.    Northern California Laborers Is Precisely the Type of Lead
                       Plaintiff Envisioned by the PSLRA .............................10

       C.    THE COURT SHOULD APPROVE NORTHERN  CALIFORNIA
              LABORERS' SELECTION OF COUNSEL .......................................................11

IV.   CONCLUSION............................................................................................................12

No. 11-CV-5386-WHA: Ntc. of Mot. &  Mot., & MPA iso the Mot. of N. Cal.
Laborers for Consol., App't as Lead Pl., & Approval of Selection of Counsel

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) ..................................................................5, 8

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ........................................................................6, 7, 11

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)..................................................................................10

*In re Charles Schwab Sec. Litig.*,
   No. C 08-01510-WHA, 2008 WL 2635495 (N.D. Cal. July 3, 2008)...............8, 9

*Ferrari v. Gisch*,
   225 F.R.D. 599 (C.D. Cal. 2004) ........................................................................7, 9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................................9

*Richardson v. TVIA, Inc.*,
   No. C 06 06304, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007)...............................9

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) .............................................................................9

*In re Surebeam Corp. Sec. Litig.*,
   No. 03-cv-1721, 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) .................................9

## DOCKETED CASES

*In re Am. Int'l Group, Inc. Sec. Litig.*,
   No. 04-cv-8141 (S.D.N.Y. 2004)...........................................................................11

*In re Broadcom Corp. Class Action Litig.*,
   No. 06-cv-5036 (C.D. Cal. 2006) ..........................................................................11

*In re HealthSouth Corp. Sec. Litig.*,
   No. 03-cv-1501 (N.D. Ala. 2003) ..........................................................................11

*In re Monster Worldwide, Inc. Sec. Litig.*,
   No. 07-cv-2237, Hr'g Tr. (S.D.N.Y. June 14, 2007)...........................................12

No. 11-CV-5386-WHA: Ntc. of Mot. &  Mot., & MPA iso the Mot. of N. Cal.
Laborers for Consol., App't as Lead Pl., & Approval of Selection of Counsel

ii

*Pappas v. Countrywide Fin. Corp.*,
  No. 07-cv-5295, slip op. (C.D. Cal. Nov. 28, 2007) ..........................................................8, 11

*In re Sipex Corp. Sec. Litig.*,
  No. 05-cv-392-WHA, slip op. (N.D. Cal. May 24, 2005) ......................................................8

**FEDERAL STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(ii) ................................................................................. *passim*

Fed. R. Civ. P. 23(a) ...........................................................................................................8, 9

Fed. R. Civ. P. 42(a) ...........................................................................................................5

No. 11-cv-5386-WHA: Ntc. of Mot. &  Mot., & MPA iso the Mot. of N. Cal.
Laborers for Consol., App't as Lead Pl., & Approval of Selection of Counsel

iii

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, February 23, 2012, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 8 of the Honorable William H. Alsup, the Laborers Pension Trust Fund for Northern California ("Northern California Laborers") will and hereby does move this Court for an order granting consolidation, appointment of lead plaintiff, and approval of selection of lead counsel and local counsel.

Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), Northern California Laborers will and hereby does move the Court for an order: (1) consolidating the above-captioned related actions (the "Action"); (2) appointing Northern California Laborers as Lead Plaintiff for a class of purchasers (the "Class") of Diamond Foods, Inc. ("Diamond Foods" or the "Company") securities between December 9, 2010 and November 4, 2011, inclusive (the "Class Period");[1] and (3) approving Northern California Laborers' selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class and Zelle Hofmann Voelbel & Mason LLP ("Zelle Hofmann") as Local Counsel for the Class. This Motion is made on the grounds that Northern California Laborers is the "most adequate plaintiff" to serve as lead plaintiff. In support of this Motion, Northern California Laborers submits herewith a Memorandum of Points and Authorities and the Declaration of Michael W. Stocker (the "Stocker Decl.").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      STATEMENT OF THE ISSUES TO BE DECIDED**

Northern California Laborers—a pension fund with more than a billion dollars in assets—respectfully submits that it should be appointed Lead Plaintiff on behalf of purchasers of Diamond Foods securities during the Class Period who incurred damages as a result of the

---

[1]  The complaints filed against Diamond assert different class periods. After it is appointed, the Lead Plaintiff will reconcile the different class periods upon filing a consolidated complaint. For the purposes of this Motion, Northern California Laborers adopts the longest class period involved in these actions.

Defendants' alleged violations of the Exchange Act.  As set forth in detail below, Northern California Laborers incurred a loss of $227,473, as calculated under the last-in-first-out ("LIFO") loss calculation methodology, on its investments in Diamond Foods common stock. Accordingly, Northern California Laborers has a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant.

Northern California Laborers also meets the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of those of absent Class members, and it will fairly and adequately represent the interests of the Class.  Indeed, the PSLRA's legislative history shows that Northern California Laborers is precisely the type of sophisticated institutional investor whose participation in securities class actions the PSLRA was meant to foster.  In short, Northern California Laborers is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

Northern California Laborers respectfully requests that the Court approve its choice of counsel.  Northern California Laborers' choice for Lead Counsel, Labaton Sucharow, is a nationally-recognized securities class action firm that has recovered billions of dollars in damages for injured shareholders.  Northern California Laborers' choice for Local Counsel, Zelle Hofmann, is a respected firm with substantial experience in the prosecution of class actions and complex litigation.  These firms are eminently qualified to prosecute this case and have extensive experience in the prosecution of class actions and securities fraud claims such as those asserted in the Action.

## II.    STATEMENT OF THE RELEVANT FACTS

Pending before the Court are six complaints that were filed against: (1) Diamond Foods, a branded food company that specializes in processing, marketing, and distribution of culinary, snack, in-shell, and ingredient nuts;[2] (2) Michael J. Mendes, Diamond Foods' Chairman of the Board since January 2010, and President and Chief Executive Officer since 1997; and (3)

---

[2]  Diamond Foods is a Delaware corporation headquartered in San Francisco, California. Diamond Foods' stock is listed on the NASDAQ Global Select Market under the ticker symbol "DMND."

1    Steven M. Neil, Diamond Foods' Executive Vice President and Chief Financial and

2    Administrative Officer since March 1, 2008 (collectively, "Defendants").  The complaint

3    alleges violations of Sections 10(b) and 20(a) of the Exchange Act and U.S. Securities and

4    Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.

5         Founded in 1912, Diamond Foods is a packaged food company that builds, acquires,

6    and (re)energizes brands.  The Company's product lines include Kettle Chips, Emerald snack

7    nuts, Pop Secret popcorn, and Diamond of California snack and culinary nuts.

8         On April 5, 2011, Diamond Foods announced that it had reached an agreement with the

9    Proctor & Gamble Company ("P&G") to acquire P&G's Pringles brand in a transaction worth

10   $2.35 billion.  The Company had a strong incentive to keep its share price high in the months

11   preceding the consummation of the deal, as Diamond Foods' stock was to make up $1.5 billion

12   of the price of the Pringles acquisition.  The transaction was to be completed by the end of

13   2011.

14        Accordingly, during the Class Period, the Company had a strong incentive to inflate its

15   share prices in anticipation of the Pringles deal.  It appears that the Company accomplished this

16   by manipulating its payments to walnut growers.

17        As part of its business model, Diamond Foods enters into output contracts with walnut

18   growers for their crops.  Pursuant to these agreements, walnut growers deliver their entire

19   walnut crop to Diamond during the fall harvest season.  Diamond Foods customarily pays

20   walnut growers for the previous fall's harvest in installments that are completed by the end of

21   the Company's fiscal year the following July.[3]

22         In early September 2011, Diamond Foods made an estimated $50 million in what it

23   called "Momentum Payments" to its walnut growers.  Diamond Foods asserted that these

24   unusual payments were for the upcoming fall 2011 crop—a break from its usual practice.[4]  In

25   fact, these payments appear to have been for the previous year's crop—meaning that the

26

27   [3]  Diamond Foods' fiscal year runs from August 1 through July 31.

28   [4]  The Action alleges that *The Wall Street Journal* first disclosed these momentum payments on
     September 27, 2011.

Company had in the preceding months deliberately underpaid growers for their product.  This ploy permitted the Company to artificially maximize its revenues in the months leading up to the proposed Pringles acquisition.

The Action alleges that, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company overstated its earnings by improperly accounting for certain crop payments to walnut growers; (2) the Company's acquisition of Pringles would be delayed; (3) the Company lacked adequate internal and financial controls; and (4) as a result of the foregoing, the Company's financial results were materially false and misleading at all relevant times.

On September 25, 2011, Off Wall Street Consulting Group, a hedge fund research firm, issued a report questioning Diamond Foods' accounting practices with respect to walnut purchases.  On September 27, 2011, *The Wall Street Journal* published an article disclosing Diamond Foods' momentum payments.  According to the *Journal*, those payments would have significantly reduced the Company's fiscal year 2011 results had they been made on or before July 31, 2011.  The *Journal* also noted that as walnut prices surged for the 2010 crop, Diamond Foods actually paid growers much less than most buyers.  On this news, Diamond Foods' stock price dropped $8.31 per share, or 9.20 percent, on September 26 and 27, 2011, to close at $82.06 per share on September 27, 2011.

After the markets closed on November 1, 2011, Diamond Foods disclosed that its Audit Committee had received an external communication describing accounting issues with the Company's payments to walnut growers.  As a result of this development, the Company explained that it would delay its acquisition of Pringles until the first half of 2012 pending the outcome of an investigation by the Audit Committee.  On this news, Diamond Foods' share price declined $11.33 per share, or more than 17.6 percent, to close at $52.79 per share on November 2, 2011.

On November 3, 2011, *The Wall Street Journal* reported that the Company's investigation was focusing on the timing of the momentum payments.  The *Journal* also noted that because the Pringles transaction was tied to the price of Diamond Foods' stock, if the

1   Company's stock price fell it would have to take on more debt to consummate the transaction.

2   Following these revelations, Diamond shares declined $6.39 per share, or 12.1 percent in two

3   consecutive trading sessions, to close at $46.40 per share on November 4, 2011.  On November

4   5, 2011, *Barron's* published an article that explained the Company's accounting issues and

5   payments to walnut growers in more detail.  On this news, the Company's stock price fell an

6   additional $7.31 per share, or more than 15.7 percent, to close at $39.09 per share on November

7   7, 2011.

8          The Company's misconduct and the revelations thereof have caused Diamond Foods'

9   stockholders to incur hundreds of millions of dollars in losses.

10  **III.    ARGUMENT**

11         **A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

12         The PSLRA provides that "[i]f more than one action on behalf of a class asserting

13  substantially the same claim or claims arising under this chapter has been filed," a court shall

14  not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered."

15  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Under Rule 42(a) of the Federal Rules of Civil Procedure

16  ("Rule 42(a)"), consolidation is appropriate when the actions involve common questions of law

17  or fact.  Fed. R. Civ. P. 42(a); *see also Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146,

18  1150 (N.D. Cal. 1999) (same).

19         Here, the six related actions are ideally suited for consolidation pursuant to Rule 42(a)

20  because their unification will expedite pretrial proceedings, reduce case duplication, and

21  minimize the expenditure of time and money for all concerned parties.  These actions present

22  substantially similar factual and legal issues, arise from the same alleged scheme by

23  Defendants, and allege violations of Sections 10(b) and 20(a) of the Exchange Act.  Because

24  these actions are based on the same facts and involve the same subject matter, discovery

25  obtained in this lawsuit will undoubtedly be relevant to all others.  Accordingly, consolidation

26  of the above-captioned actions is appropriate under Rule 42(a) and the PSLRA, and the

27  Northern California Laborers respectfully submits that these actions should be consolidated.

28

### B.    NORTHERN CALIFORNIA LABORERS
###        SHOULD BE APPOINTED LEAD PLAINTIFF

#### 1.    The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward procedure for selecting lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff).  Specifically, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i); *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).

Under the PSLRA, a court is to consider any motion made by class members and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff.  Specifically, the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (. . . the "most adequate plaintiff") . . . .

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Cavanaugh*, 306 F.3d at 729-30.

Under the sequential procedure set forth by the Ninth Circuit in *Cavanaugh*, this presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* at 741; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## 2.   Northern California Laborers is the "Most Adequate Plaintiff"

Northern California Laborers respectfully submits that it is the presumptive "most adequate plaintiff" because it has complied with PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements.

### a.   Northern California Laborers Has Satisfied the PSLRA's Procedural Requirements

Northern California Laborers has filed this Motion to serve as lead plaintiff in a timely manner.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint in the Action caused notice regarding the pending nature of this case to be published on *Business Wire*, a widely-circulated, national, business-oriented news wire service, on November 7, 2011. *See* Stocker Decl. Ex. C; *see also Salhuana* Dkt. No. 20.  Thus, as permitted by the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty (60) days after publication of the notice, *i.e.*, on or before January 6, 2012. Northern California Laborers has filed its motion within the required period.

### b.   Northern California Laborers Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with the largest financial interest in the relief sought by the class, so long as the movant meets the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Ferrari v. Gisch*, 225 F.R.D. 599, 602 (C.D. Cal. 2004) (citing *Cavanaugh*, 306 F.3d at 729-30).

During the Class Period, Northern California Laborers incurred a substantial loss of approximately $227,473 calculated under the LIFO method of accounting for purchases and sales.[5]  *See* Loss Analysis, Stocker Decl. Ex. B.  Consequently, and because it also satisfies Rule 23's typicality and adequacy requirements, Northern California Laborers is entitled to the legal presumption that it is the most adequate plaintiff.

### c.     Northern California Laborers Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ."  15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(I)(cc).  With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the representative will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  However, "[a]t the lead plaintiff selection stage, all that is required is a 'preliminary showing' that the lead plaintiff's claims are typical and adequate."  *Aronson*, 79 F. Supp. 2d at 1158 (quoting *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 587 (N.D. Cal. 1999)); *see also In re Charles Schwab Sec. Litig.*, No. C 08-01510-WHA, 2008 WL 2635495, at *3 (N.D. Cal. July 3, 2008) (noting that the inquiry focuses on Rule 23's typicality and adequacy requirements in the context of appointing lead plaintiff).

### (i)     Northern California Laborers' Claims Are Typical of Those of the Class

The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff: "(1) suffered the same injuries as class members; (2) as a result of the same course of conduct;

---

[5]  Northern California Laborers' loss is also $227,473 under the first-in-first-out ("FIFO") loss calculation methodology.  However, FIFO is not preferred by courts in the Ninth Circuit.  *See Pappas v. Countrywide Fin. Corp.*, No. 07-cv-5295, slip op. at 14 (C.D. Cal. Nov. 28, 2007) (Pfaelzer, J.), Stocker Decl. Ex. D ("[C]ourts have generally *rejected* FIFO as an appropriate means of calculating losses in securities fraud cases.") (internal quotation marks and citation omitted); *In re Sipex Corp. Sec. Litig.*, 05-cv-392-WHA, slip op. at 7 (N.D. Cal. May 24, 2005), Stocker Decl. Ex. E ("In the Court's view, LIFO is closer to the economic realities of market investing and the purposes of the securities acts.").

1    and (3) their claims are based on the same legal issues." *Charles Schwab*, 2008 WL 2635495,

2    at *4 (citing *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1050 (N.D. Cal. 2001)).

3    Rule 23(a) requires only that resolution of the common questions affect all, or a substantial

4    number of, class members. *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 657 (C.D. Cal. 2000).  As

5    the Ninth Circuit Court of Appeals has noted, typicality is not an exacting test, because "[u]nder

6    [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-

7    extensive with those of absent class members; they need not be substantially identical." *Hanlon*

8    *v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

9         The typicality requirement is met here because Northern California Laborers, which is

10   not subject to any unique or special defenses, seeks the same relief and advances the same legal

11   theories as other Class members.  Like all members of the Class, Northern California Laborers:

12   (1) acquired Diamond Foods securities during the Class Period, (2) at prices that are alleged to

13   have been artificially inflated by Defendants' misrepresentations and omissions, and (3)

14   suffered damages as a result.  *See Ferrari*, 225 F.R.D. at 606 (discussing ways in which lead

15   plaintiff movants can meet the typicality requirement). These shared claims, which are based

16   on the same legal theories and arise from the same events and course of conduct as the Class'

17   claims, satisfy Rule 23(a)(3)'s typicality requirement.  *In re Surebeam Corp. Sec. Litig.*, No.

18   03-cv-1721, 2004 WL 5159061, at *6 (S.D. Cal. Jan. 5, 2004) (reciting typicality standard).

19                    **(ii)      Northern California Laborers Will Fairly**
                                  **and Adequately Protect the Interests of the Class**
20

21        The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a

22   representative party establishes that it "will fairly and adequately protect the interests of the

23   class." Fed. R. Civ. P. 23(a)(4).  The adequacy requirement is met if no conflicts exist between

24   the representative's interests and those of the class, and the representative's attorneys are

25   qualified, experienced and generally able to conduct the litigation.  *Richardson v. TVIA, Inc.*,

26   No. C 06 06304, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007); *see also Charles Schwab*,

27   2008 WL 2635495, at *4 ("The 'adequacy' requirement is satisfied when the proposed lead

28   plaintiff does not have interests antagonistic to the proposed class.").

Northern California Laborers will fairly and adequately represent the interests of the proposed Class.  No antagonism exists between Northern California Laborers' interests and those of absent Class members; rather, the interests of Northern California Laborers and the Class members are squarely aligned.  In addition, Northern California Laborers has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and has timely submitted its choice to the Court for approval, in accordance with the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Northern California Laborers suffered substantial losses due to Defendants' alleged fraud and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of the Action.  Accordingly, Northern California Laborers satisfies the adequacy requirement.

### d.     Northern California Laborers Is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the requirements of Rule 23, Northern California Laborers—a large, sophisticated institutional investor—is the type of investor Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions.  Congress noted in its PSLRA Statement of Managers Report that the PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (quoting S. Rep. No. 104-98, at 10 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 and H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733)).

Created in 1963 by a trust agreement between the Associated General Contractors of California, Inc. and the Northern California District Council of Laborers, affiliated with the Laborers' International Union of North America, AFL-CIO, Northern California Laborers provides retirement and other benefits to thousands of laborers and their dependents.  Northern California Laborers, which is headquartered in Fairfield, California, had more than $1.3 billion in assets as of May 1, 2009.

Northern California Laborers is a sophisticated institutional investor with sufficient resources to adequately litigate the Action and supervise Class counsel. Northern California Laborers understands the fiduciary duties of a lead plaintiff, is willing to oversee the vigorous prosecution of the Action, and has pledged to "provid[e] testimony at deposition and trial, if necessary." *See* Certification, Stocker Decl. Ex. A. Thus, as demonstrated herein, Northern California Laborers is the very personification of the lead plaintiff contemplated by the PSLRA.

## C.     THE COURT SHOULD APPROVE NORTHERN CALIFORNIA LABORERS' SELECTION OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 732 n.11. Northern California Laborers has selected Labaton Sucharow to serve as Lead Counsel for the Class. Labaton Sucharow actively practices complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors.

Labaton Sucharow, Northern California Laborers' choice for Lead Counsel, has excelled as lead counsel in numerous important actions on behalf of defrauded investors. Labaton Sucharow is lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y. 2004), in which it recently achieved settlements-in-principle totaling approximately $1 billion. In addition, Labaton Sucharow is lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal. 2007), which resulted in a settlement of $624 million—one of the largest securities fraud settlement arising from the financial crisis of 2007 to 2008. Labaton Sucharow also serves as lead counsel in *In re Broadcom Corp. Class Action Litigation*, No. 06-cv-5036 (C.D. Cal. 2006), the largest accounting restatement arising from options backdating. Labaton Sucharow achieved a cash settlement of $160.5 million for the class—at the time, the second-largest cash settlement in an options backdating case. Labaton Sucharow also served as co-lead counsel in *In re HealthSouth Corp. Securities Litigation*, No. 03-cv-1501 (N.D. Ala. 2003), the largest securities fraud arising out of the healthcare industry, which resulted in a total settlement amount of $804.5 million for the class. Labaton Sucharow is currently serving as the court-appointed lead

1   or co-lead counsel in the securities fraud cases against The Bear Stearns Cos., Inc., Federal

2   National Mortgage Association (Fannie Mae), Satyam Computer Services Ltd., and Goldman

3   Sachs Group, Inc., among other significant investor litigations.  In *In re Monster Worldwide,*

4   *Inc. Securities Litigation*, No. 07-cv-2237, Hr'g Tr. at 24:25-25:1 (S.D.N.Y. June 14, 2007),

5   Judge Jed S. Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton

6   firm is very well known to . . . courts for the excellence of its representation."  *See also* Labaton

7   Sucharow Firm Resume, Stocker Decl. Ex. F.

8          Proposed Local Counsel Zelle Hofmann has handled class actions and complex

9   litigation for more than 40 years, including matters arising under the securities laws.  *See* Zelle

10   Hofmann Firm Resume, Stocker Decl. Ex. G.  The firm has a national reputation for its trial and

11   litigation skills, as well as for resolving highly complex disputes.  Members of Zelle Hofmann

12   have been selected to serve as Lead, Co-Lead, Liaison, or as members of Executive Committees

13   in numerous class action cases that have recovered substantial damages for class members.

14   Most significantly, the firm has a prominent practice in Northern District of California.

15          Thus, the Court may be assured that by granting this motion, the Class will receive the

16   highest caliber of legal representation.

17   **IV.    <u>CONCLUSION</u>**

18          For the foregoing reasons, Northern California Laborers respectfully requests that the

19   Court: (1) consolidate the above-captioned related actions pursuant to Rule 42(a); (2) appoint

20   Northern California Laborers as Lead Plaintiff; and (3) approve Northern California Laborers'

21   selection of Labaton Sucharow as Lead Counsel for the Class and Zelle Hofmann as Local

22   Counsel for the Class.

23   DATED:  January 6, 2012                    Respectfully submitted,

24                                              _/s/ Jiangxiao Athena Hou_
25                                              Jiangxiao Athena Hou (Bar. No. 215256)
                                                **ZELLE HOFMANN VOELBEL**
26                                              **& MASON LLP**
                                                44 Montgomery Street, Suite 3400
27                                              San Francisco, California  94104

28

1    Telephone: (415) 693-0700
Facsimile:  (415) 693-0770

2    Email: ahou@zelle.com

3    *Proposed Local Counsel for the Class*

4

5    Christopher J. Keller
Eric J. Belfi

6    Michael W. Stocker (Bar No. 179083)
**LABATON SUCHAROW LLP**

7    140 Broadway
New York, New York  10005

8    Telephone: (212) 907-0700
Facsimile: (212) 818-0477

9    Email: ckeller@labaton.com
ebelfi@labaton.com

10    mstocker@labaton.com

11

12    *Counsel for Laborers Pension Trust Fund for Northern California and Proposed Lead Counsel for the Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO NORTHERN DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 45**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 44 Montgomery Street, Suite 3400, San Francisco, California 94104.

On January 6, 2012, I caused to be served the following documents:

1. Notice of Motion and Motion, and Memorandum of Points and Authorities in Support of the Motion of Laborers Pension Trust Fund for Northern California for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel

2. [Proposed] Order for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel

3. Declaration of Michael W. Stocker in Support of the Motion of Laborers Pension Trust Fund for Northern California for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel

4. Certification of Jiangxiao Athena Hou Pursuant to Civil Local Rule 3-7(D)

5. Certification of Christopher J. Keller Pursuant to Civil Local Rule 3-7(D)

6. Certification of Eric J. Belfi Pursuant to Civil Local Rule 3-7(D)

7. Certification of Michael W. Stocker Pursuant to Civil Local Rule 3-7(D)

By posting these documents to the ECF Website of the United States District Court for the Northern District of California, for receipt electronically by the parties as reflected on the attached Court's Service Lists.

And on the following non-ECF registered party:

Jeffrey Block
Jason M. Leviton
Block & Leviton LLP
155 Federal Street
Suite 1303
Boston, Massachusetts  02110

By Mail:  By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service.  I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

I hereby certify that I caused an electronic copy of the foregoing documents to be forwarded via email to the following Designated Internet Site, in compliance with Civil Local Rule 23-2(c)(2):

Securities Class Action Clearinghouse
Stanford University School of Law
Crown Quadrangle
Stanford, CA 94305-8612
scac@law.stanford.edu

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 6, 2012, at San Francisco, California.

*/s/ Jiangxiao Athena Hou*
Jiangxiao Athena Hou

## Mailing Information for a Case 3:11-cv-05386-WHA

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Daniel E. Barenbaum**
  dbarenbaum@bermandevalerio.com

- **Brian Joseph Barry , Esq**
  bribarry1@yahoo.com

- **Peter Arthur Binkow**
  info@glancylaw.com,pbinkow@glancylaw.com

- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,mbafus@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com

- **Lionel Z. Glancy**
  info@glancylaw.com

- **Michael M. Goldberg**
  info@glancylaw.com

- **Dean S. Kristy**
  dkristy@fenwick.com,kayoung@fenwick.com,cprocida@fenwick.com

- **Susan Samuels Muck**
  smuck@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,cprocida@fenwick.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com

- **Mark Punzalan**
  mpunzalan@finkelsteinthompson.com,arivas@finkestienthompson.com,bassad@finkelsteinthompson.com,ttien@finkelsteinthompson.com,jdito@finkelsteinthompson.com,srenwick

- **Casey Edwards Sadler**
  csadler@glancylaw.com

- **James John Varellas , III**
  jvarellas@fenwick.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

# Mailing Information for a Case 3:11-cv-05399-WHA

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Daniel E. Barenbaum**
  dbarenbaum@bermandevalerio.com

- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,mbafus@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com

- **Dean S. Kristy**
  dkristy@fenwick.com,kayoung@fenwick.com,cprocida@fenwick.com

- **Susan Samuels Muck**
  smuck@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,cprocida@fenwick.com

- **Anthony David Phillips**
  aphillips@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Joseph J. Tabacco , Jr**
  jtabacco@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **James John Varellas , III**
  jvarellas@fenwick.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`

# Mailing Information for a Case 3:11-cv-05409-WHA

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Arthur Nash Bailey , Jr**
  abailey@hausfeldllp.com,celder@hausfeldllp.com

- **Daniel E. Barenbaum**
  dbarenbaum@bermandevalerio.com

- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,mbafus@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com

- **Dean S. Kristy**
  dkristy@fenwick.com,kayoung@fenwick.com,cprocida@fenwick.com

- **Michael P. Lehmann**
  mlehmann@hausfeldllp.com

- **Susan Samuels Muck**
  smuck@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,cprocida@fenwick.com

- **Whitney E. Street**
  wstreet@blockesq.com

- **James John Varellas , III**
  jvarellas@fenwick.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Jeffrey          Block
Block & Leviton LLP
155 Federal Street
Suite 1303
Boston, MA 02110

Jason            M. Leviton
Block & Leviton LLP
155 Federal Street
Suite 1303
Boston, MA 02110
```

## Mailing Information for a Case 3:11-cv-05457-WHA

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Daniel E. Barenbaum**
  dbarenbaum@bermandevalerio.com

- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,mbafus@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com

- **Dean S. Kristy**
  dkristy@fenwick.com,kayoung@fenwick.com,cprocida@fenwick.com

- **Susan Samuels Muck**
  smuck@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,cprocida@fenwick.com

- **Mark Punzalan**
  mpunzalan@finkelsteinthompson.com,arivas@finkestienthompson.com,bassad@finkelsteinthompson.com,ttien@finkelsteinthompson.com,jdito@finkelsteinthompson.com,srenwicl

- **James John Varellas , III**
  jvarellas@fenwick.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

# Mailing Information for a Case 3:11-cv-05479-WHA

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Daniel E. Barenbaum**
  dbarenbaum@bermandevalerio.com

- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,mbafus@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com

- **Dean S. Kristy**
  dkristy@fenwick.com,kayoung@fenwick.com,cprocida@fenwick.com

- **Susan Samuels Muck**
  smuck@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,cprocida@fenwick.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **James John Varellas , III**
  jvarellas@fenwick.com

- **David Conrad Walton**
  davew@rgrdlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`

# Mailing Information for a Case 3:11-cv-05615-WHA

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Daniel E. Barenbaum**
  dbarenbaum@bermandevalerio.com

- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,mbafus@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com

- **Robert S. Green**
  CAND.USCOURTS@CLASSCOUNSEL.COM

- **Dean S. Kristy**
  dkristy@fenwick.com,kayoung@fenwick.com,cprocida@fenwick.com

- **Susan Samuels Muck**
  smuck@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,cprocida@fenwick.com

- **James John Varellas , III**
  jvarellas@fenwick.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`