STATE OF MISSISSIPPI



**JIM HOOD**
ATTORNEY GENERAL

March 5, 2012

Honorable William H. Alsup
United States District Judge
United States Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

**Re:** *In re Diamond Foods, Inc. Securities Litigation*, No. 11-CV-05386 (WHA)

Dear Judge Alsup:

This letter is submitted in response to this Court's Order, dated March 2, 2012, in which this Court wrote, in part:

> At the hearing, it was stated that pursuant to a state statute, the Mississippi Attorney General's Office has the full executive authority to bring, decide, and settle cases on behalf of Mississippi PERS. Please provide a citation for this statute and provide a copy of the statute.

The Office of the Mississippi Attorney General was created by the Mississippi Constitution. As set forth more fully below, Mississippi courts have repeatedly determined that the executive authority asserted by the Attorney General is premised not just in statute, but in Mississippi's Constitution itself and the common law.

> The attorney general is a constitutional officer. Miss. Const. 1890 § 173. He has the powers which were vested in him at common law, and those which have been conferred upon him by statute.

*State ex rel. Patterson for Use & Benefit of Adams County v. Warren*, 180 So. 2d 293, 299 (Miss. 1965), *suggestion of error overruled in pertinent part*, 182 So. 2d 234 (Miss. 1965).

By virtue of the powers bestowed upon him by the State's Constitution, statutes, and common law, "the role of the Attorney General apropos of a State agency" is not "precisely akin to the traditional role of private counsel apropos of a client." *State ex rel. Allain v. Miss. Pub.*

*Serv. Comm'n*, 418 So. 2d 779, 782 (1982) (quoting with approval *EPA v. Pollution Control Board*, 372 N.E.2d 50, 52-53 (Ill. 1977)). To the contrary, "[t]he authority of the Attorney General, as chief law officer, to assume primary control over the conduct of litigation which involves the interests of the Commonwealth has the concomitant effect of creating a relationship with the State officers he represents that is not constrained by the parameters of the traditional attorney-client relationship." *Allain*, 418 So. 2d at 783 (quoting *Feeney v. Commonwealth*, 366 N.E.2d 1262, 1266 (Mass. 1977)).

As a consequence, the Attorney General has complete authority over litigation brought on behalf of the State as well as all state entities. The Attorney General does not require the Mississippi Public Employees' Retirement System ("Mississippi PERS") and other state agencies to make decisions regarding the prosecution of such cases. The staff of approximately 130 attorneys is capable to assist in any litigation and have the experience and resources to better manage class action cases for the State of Mississippi.

This is not authority that the Attorney General's office exercises merely in theory; it is one that it exercises on a day-to-day basis. I have worked in the Attorney General's office for twenty years, and during that time, my colleagues and I have initiated, prosecuted and settled numerous cases on our own authority. While we place great weight upon the opinion of the agency whose claim or defense we are litigating, ultimate decision-making authority remains with our office. Indeed, Mississippi PERS has established its own internal procedures for evaluating potential litigation which expressly recognize that the decision as to how to proceed is left to the Attorney general. ("If a recommendation to pursue an active role in seeking recovery of financial damages is received, the Attorney General of Mississippi will determine what action, if any, that should be taken.")[1] As a consequence, the Attorney General bears a great fiduciary responsibility for all state litigation.

### The Attorney General's Constitutional Authority

The Mississippi Attorney General's office was created by Article 6, Section 173 of the Mississippi Constitution,[2] which states:

> There shall be an attorney-general elected at the same time and in the same manner as the governor is elected, whose term of office shall be four years and whose compensation shall be fixed by law. The qualifications for the attorney-general shall be the same as herein prescribed for judges of the circuit and chancery courts.

As the Mississippi Supreme Court has confirmed, "[t]he creation of the office of Attorney General by the constitution vested him with these common law duties, which he had previously exercised as chief law officer of the realm." *Kennington-Saenger Theaters v. State ex rel. Dist. Atty.*, 18 So. 2d 483, 486 (Miss. 1944). Indeed, "[t]he creation of the office therefore by the

---

[1] Relevant pages of Mississippi PERS' Manual are submitted herewith as Attachment A.

[2] A copy is attached as Attachment B.

Constitution without prescribing his powers, by implication adopted his common-law powers, none of which can be taken away from him by the Legislature." *Dunn Const. Co. v. Craig*, 2 So. 2d 166, 175 (Miss. 1941).

The common law duties and powers of the Attorney General were outlined by the Mississippi Supreme Court in *Warren*, 180 So. 2d at 307 (emphasis added), as follows:

> At common law the duties of the attorney general, as chief law officer of a realm, were numerous and varied. He was ... entrusted with the management of all legal affairs and the prosecution of all suits, criminal and civil, in which the crown was interested. He had authority to ... ***control and manage all litigation*** on behalf of the state.

The Mississippi Supreme Court elaborated on these common law powers in *Gandy v. Reserve Life Ins. Co.*, 279 So. 2d 648, 649 (1973) (emphasis added):

> The Attorney General is a constitutional officer possessed of all the power and authority inherited from the common law as well as that specifically conferred upon him by statute. This includes the right to ***institute, conduct and maintain*** all suits necessary for the enforcement of the laws of the state, preservation of order and the protection of public rights.

### **The Attorney General's Statutory Authority**

The Attorney General's authority to control litigation is derived, not merely from the Constitution and common law, but from statute as well. The Mississippi legislature has expressly clarified and emphasized the Attorney General's control over litigation brought on behalf of state agencies:

> The Attorney General ... is charged with ***managing*** all litigation on behalf of the state.... He shall have the powers of the Attorney General at common law and is given the ***sole power to bring or defend a lawsuit on behalf of a state agency***, the subject matter of which is of state-wide interest.

MISS. CODE ANN. § 7-5-1 (emphasis added).[3]

As part of the Attorney General's power over litigation involving state agencies, the Attorney General has control over the selection of outside counsel to represent state agencies. "The case law and statutes make it unquestionably clear that he is the state's chief legal officer and is charged with managing all litigation on behalf of the state. Moreover, no state agency may employ legal counsel without the prior approval of the attorney general and any such special legal counsel appointed performs their duties under the ***supervision and control of the attorney general*** and serves at his pleasure and may be dismissed by him." *Allain*, 418 So. 2d at 782 (emphasis added).

---

[3] A copy of the statute is attached as Attachment C.

3

## Application of the Attorney General's Authority to This Case

The Attorney General's Constitutional and statutory powers enable the Attorney General to take control of litigation brought by or against state agencies even if contrary to the wishes of such agencies. *Wade v. Mississippi Cooperative Extension Service*, 392 F. Supp. 229 (N.D. Miss. 1975), involved a lawsuit against a state agency, the Board of Trustees of State Institutions of Higher Learning. The Board wanted to retain private counsel of its choosing, but the Attorney General decided that because of the significance of the matter, he would assume control of the defense of the case. The Court upheld the Attorney General's right "to assume control of the Board's defense" of the case, "irrespective of the Board's wishes to proceed through counsel of its own choice." *Id.* at 233. *See also id.* at 235 (the Board is not "allowed to usurp [the Attorney General's] constitutional prerogative" to control the case). Thus, as stated in *Gates v. Collier*, 70 F.R.D. 341 (N.D. Miss. 1976), *rev'd in part on other grounds*, 559 F.2d 241 (5th Cir. 1977) (emphasis added):

> [A]s a constitutional officer vested with all powers which the attorney general exercised at common law, the attorney general was fully authorized to ***adopt whatever strategy he chose*** in this suit of undoubted statewide significance ***without regard to the wishes of his nominal clients, who had no power to discharge him or assume control*** through private counsel.

Given that the Attorney General has the power to "institute," "control," "manage," and "maintain" litigation on behalf of state agencies, and to adopt "whatever strategy he [chooses]," even if contrary to the wishes of the agency, it cannot be disputed that it is the right and responsibility of the Attorney General to supervise and control all aspects of such cases, including settlement. Participation by the agency in the litigation decisions would "usurp" the Attorney General's "constitutional prerogative" to control the case. *Wade*, 392 F. Supp. at 235.

As noted above, the authority to manage cases is routinely exercised by the Attorney General's office. That is not to suggest that the office acts unilaterally in the regular course of business, but it exercises ultimate authority, and sometimes does act contrary to the opinion of the agency in question. In an example most relevant to this motion, the Attorney General's office rejected a bankruptcy claim of approximately $3.2 million proposed by the State Tax Commission in a case asserting claims regarding unpaid taxes against the bankruptcy estate of MCI WorldCom and, contrary to that Agency's preferred claim, litigated the case, ultimately achieving a settlement in excess of $110 million. *In re Worldcom, Inc.*, Case No. 02-13533 (Bankr. S.D.N.Y.).

Given the Attorney General's broad powers, derived both from constitutional and statutory sources, to "manage" litigation, Mississippi PERS cannot discern whom it should have designated in response to this Court's Questionnaire other than attorneys from the Attorney General's Office as the individual's "in charge of managing [its] litigation responsibilities." Any suggestion that the designation of attorneys from the Attorney General's Office reflects poorly on the adequacy of Mississippi PERS to serve as a lead plaintiff, or is even out of the ordinary, is without any basis.

Indeed, even if this Court were to ignore the provisions set forth above and treat the Attorney General merely as a traditional in-house counsel for Mississippi PERS, no conclusion, adverse or otherwise, should be drawn from the fact that state lawyers, who themselves are all members of Mississippi PERS and thus have personal interest in any recovery, are responsible for management of a state agency's litigation. To the contrary, control exercised by in-house counsel over litigation is encouraged, not disfavored. In *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999), this Court directed an institutional lead plaintiff to "identify a single officer or ***internal counsel*** with experience in managing litigation to be primarily responsible for carrying out the duties" of the lead plaintiff. *Id.* at 1033 (emphasis added). Judge Orrick similarly recognized in *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1109 (N.D. Cal. 2011), that an institutional lead plaintiff will normally employ an "in-house legal team" to supervise securities litigation. As stated in *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 455 n.14 (C.D. Cal. 2002), "[t]he PSLRA was not intended to prevent institutional investors from acting through their representatives, often in-house counsel." *See also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 417-18 (S.D.N.Y. 2004). Indeed, if New England Carpenters Funds employed an in-house lawyer, rather than its solitary part-time employee, Mr. Harry R. Dow, IV, it would have likely passed without notice if such lawyer appeared at Thursday's hearing on New England Carpenters' behalf, in lieu of the Funds' director, and no one would have suggested that in-house counsel's presence demonstrated that the case was "lawyer driven." Mississippi PERS should not be held to a different standard.

Our Chief of Staff, Geoffrey Morgan, and I have actively participated in over twenty mediations of large, complex, and diverse cases. Renowned mediators like retired Judges Dan Weinstein, Layne Phillips, and the late Nicholas Politan as well as Professor Eric Green, have learned to appreciate and respect our active participation in these cases. This is not by chance. It is because the Office of the Attorney General, on behalf of PERS, has accepted the profound responsibility to be the fiduciary for the class impacted by the underlying allegations.

On the basis of the foregoing, it is respectfully submitted that it is entirely appropriate and, indeed, salutary, that the Mississippi Attorney General's office, rather than employees of Mississippi PERS, will monitor and supervise outside counsel if Mississippi PERS is appointed lead plaintiff in this case.

Respectfully,

George W. Neville
Special Assistant Attorney General

cc: All counsel (via ECF filing)