1
2
3
4
5
6           IN THE UNITED STATES DISTRICT COURT
7
8        FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

United States District Court
For the Northern District of California

10 | In re Diamond Foods, Inc., Securities           No. C 11-05386 WHA
11 | Litigation

                            /

12 | This Document Relates to:               **ORDER APPOINTING**
13 |      All Actions.                     **LEAD PLAINTIFF**

14                             /

15                **INTRODUCTION**

16      Pursuant to the Private Securities Litigation Reform Act, this order appoints Mississippi

17 PERS as lead plaintiff.  Accordingly, this order **DENIES** the motions of other parties for

18 appointment as lead plaintiff.  This order also sets forth the procedure to be used for the selection

19 and approval of class counsel.

20                   **STATEMENT**

21      This is a putative securities class action that arises from allegations of false and

22 misleading statements in violation of federal securities laws.  Six such securities class actions

23 were filed in this district.  Those actions were related and subsequently consolidated into the

24 above-captioned action.  Plaintiffs are individuals who purchased securities of Diamond Foods,

25 Inc., between December 9, 2010 and November 4, 2011.  Defendants are Diamond Foods, Inc.,

26 and individuals Michael J. Mendes, Chairman of the Board, President and Chief Executive

27 Officer of Diamond Foods, Inc., and Steven M. Neil, Chief Financial Officer of Diamond Foods,

28 Inc.

United States District Court

For the Northern District of California

Plaintiffs allege that defendants made false and/or misleading statements and/or failed to disclose that the company, Diamond Foods, Inc., was underestimating the ultimate price to be paid to walnut growers and was improperly accounting for its costs of sales. As a result, the company's financial results were overstated. Plaintiffs further allege that the company lacked adequate internal and financial controls, and that as a result, the company's financial statements were materially false and misleading, during the relevant times, and that the company's positive statements about the company's business, operations, and prospects, as well as those regarding the timetable for acquisition of the Pringles snack business, lacked a reasonable basis.

On November 7, 2011, investor Jorge Salhuana was the first to file a lawsuit in this district. That same day, he published a notice over the *Business Wire*, informing investors that he had just filed a class action lawsuit against Diamond Foods, Inc. and two individual defendants and that investors had sixty days to seek appointment as lead plaintiff. The notice also described the general allegations against defendants.

Several lead-plaintiff candidates filed motions for appointment: Laborers Pension Trust Fund for Northern California, New England Carpenters Guaranteed Annuity and Pension Funds ("New England Carpenters"), Mississippi Public Employees' Retirement System ("Mississippi PERS"), Laurie Trombella, Kivun Mutual Funds, Ltd., and Andrew Reckles, Gary Rall and Marion Rall, and Oklahoma Law Enforcement Retirement System. All but Mississippi PERS and New England Carpenters withdrew or did not oppose the motions by other lead-plaintiff candidates. The Court requested that each lead-plaintiff candidate individually file responses to a questionnaire about its qualifications, experience in managing litigation, transactions in the shares at issue, and any potential conflicts related to the instant securities litigation. Both remaining candidates have submitted answers to the lead-plaintiff questionnaire. A hearing on the appointment of lead plaintiff was held. Both lead-plaintiff candidates were questioned on their qualifications.

Mississippi PERS is an institutional investor who purchased Diamond Food, Inc., securities during the class period. It alleges a loss of $1,819,454. New England Carpenters is also an institutional investor who purchased Diamond Food, Inc., securities during the class

United States District Court

For the Northern District of California

1   period.  It alleges a loss of $252,038.92.  It is undisputed that Mississippi PERS has the largest

2   loss (although New England Carpenters notes that "despite having a smaller loss," it "actually lost

3   a far greater percentage of its asset value than Mississippi PERS") (Dkt. No. 85 at 9).

**ANALYSIS**

5       Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of

6   the purported plaintiff class that the court determines to be most capable of adequately

7   representing the interests of the class members . . .  in accordance with this subparagraph."  15

8   U.S.C. 78u-4(a)(3)(B)(i).  The PSLRA creates a rebuttable presumption that the most adequate

9   plaintiff should be the plaintiff who:  (1) has filed the complaint or brought the motion for

10  appointment of lead counsel in response to the publication of notice; (2) has the "largest financial

11  interest" in the relief sought by the class; and (3) otherwise satisfies the requirements of FRCP 23.

12  15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(aa)–(cc).  The above presumption may be rebutted only upon

13  proof that the presumptive lead plaintiff:  (1) will not fairly and adequately protect the interests of

14  the class or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately

15  representing the class.  15 U.S.C. 78u-4(a)(3)(B)(iii)(II)(aa)–(bb).

16      The PSLRA establishes a three-step inquiry for appointing a lead plaintiff.  *First*, a

17  plaintiff files the action and posts notice, allowing other lead-plaintiff candidates to file motions.

18  *Second*, the district court considers which of those plaintiffs has the largest financial interest in

19  the action, and whether that plaintiff meets FRCP 23's requirements.  *Third*, other candidates

20  have the opportunity to rebut the presumption that the putative lead plaintiff can adequately

21  represent the class.  *In re Cavanaugh*, 306 F.3d 726, 729–30 (9th Cir. 2002).

22      **1.    LARGEST FINANCIAL INTEREST.**

23      The PSLRA does not indicate a specific method for calculating which plaintiff has the

24  "largest financial interest."  *See* 15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(bb).  Our court of appeals has

25  instructed only that "the court may select accounting methods that are both rational and

26  consistently applied."  *In re Cavanaugh*, 306 F.3d at 730 n.4.

27      Here, the movants calculate financial interest based on losses suffered, which requires the

28  Court to consider:  "(1) the number of shares purchased during the class period; (2) the number of

1  net shares purchased during the class period; (3) the total net funds expended during the class

2  period; and (4) the approximate losses suffered during the class period." *City of Royal Oak*

3  *Retirement Sys. v. Juniper Networks, Inc.*, 2012 WL 78780, at *4 (N.D. Cal. Jan. 9, 2012) (Koh,

4  J) (citing *In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 295 (E.D.N.Y 1998)). The fourth

5  factor, "approximate loss," is generally considered the most important factor. *City of Royal Oak*

6  *Retirement Sys.*, 2012 WL 78780, at *4; *see In re Charles Schwab Securities Litigation*, 2008 WL

7  2635495, at *3 (N.D. Cal. 2008) (Alsup, J). Absent proof that the lead-plaintiff candidate with

8  the largest financial interest does not satisfy the requirements of FRCP 23, said candidate is

9  "entitled to lead plaintiff status." *In re Cavanaugh*, 306 F.3d at 732.

10  The following is undisputed: (1) that Mississippi PERS purchased 57,300 shares during

11  the class period; (2) that Mississippi PERS purchased 54,800 net shares during the class period;

12  (3) that Mississippi PERS expended a total of $3,883,357 net funds during the class period; and

13  (4) that Mississippi PERS suffered an approximate loss of $1,819,454 (Dkt. Nos. 36 at 10; 74 at

14  5). It is undisputed: (1) that New England Carpenters purchased 8,300 shares during the class

15  period; (2) that New England Carpenters purchased 6,800 net shares during the class period; (3)

16  that New England Carpenters expended a total of $476,084 net funds during the class period; and

17  (4) that New England Carpenters suffered an approximate loss of $252,038.92 (Dkt. Nos. 41 at 6;

18  74 at 5).

19  Mississippi PERS has shown that it has the largest financial interest within the meaning of

20  the statute. Thus, it is presumptively the most adequate lead plaintiff.

21  **2. REQUIREMENTS OF TYPICALITY
         AND ADEQUACY UNDER FRCP 23.**

22  Once the court determines which plaintiff has the largest financial interest, "the court must

23  appoint that plaintiff as lead, unless it finds that [that plaintiff] does not satisfy the typicality or

24  adequacy requirements" *In re Cavanaugh*, 306 F.3d at 732. The district court must inquire

25  whether the putative lead plaintiff satisfies the requirements of FRCP 23(a). *Id*. at 730. The

26  inquiry focuses on the "typicality" and "adequacy" requirements, as the other requirements in

27  FRCP 23 of numerosity and commonality would preclude class certification by themselves. *Id*. at

28  730 n.5.

*United States District Court*
For the Northern District of California

4

United States District Court
For the Northern District of California

1    The typicality requirement is satisfied when the putative lead plaintiff has suffered the

2    same injuries as absent class members, as a result of the same conduct by the defendants. *Hanon*

3    *v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In the instant action, the artificial

4    inflation and consequent market corrections of the price of Diamond's stock caused by

5    defendants' allegedly false and misleading disclosures during the class period resulted in

6    Mississippi PERS and absent class members, alike, suffering financial loss. Mississippi PERS'

7    claims are based on the same legal theories as other class members.

8    A test for adequacy is whether the class representative and his counsel "have any conflicts

9    of interest with other class members" and whether the class representative and its counsel will

10   "prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957

11   (9th Cir. 2003). Mississippi PERS has shown the same interest as the rest of the class. It wishes

12   to recover against defendants for the alleged damages it suffered because of allegedly false and

13   misleading disclosures.

14   In its response to the lead-plaintiff questionnaire Mississippi PERS identified the

15   following individuals, all attorneys within the Mississippi Attorney General's Office, as being

16   primarily in charge of managing its litigation responsibilities: (1) Executive Counsel S. Martin

17   Millette III, (2) Chief of Staff Geoffrey C. Morgan; (3) Director of the Consumer Protection

18   Agency Meredith M. Aldridge; and (4) Special Assistant Attorney General George W. Neville

19   (Dkt. No. 73 at 5).

20   The above-identified attorneys will have primary responsibility for the day-to-day

21   oversight of this action and will report to Mississippi Attorney General, Jim Hood and the Board

22   of Trustees of Mississippi PERS. Attorney Hood, it was stated in the response to the lead-

23   plaintiff questionnaire, will personally monitor the progress of the case, as managing litigation for

24   state agencies such as Mississippi PERS is a statutory function for the Attorney General's Office.

25   Specifically, it is indicated in the lead-plaintiff questionnaire, that the (*id.* at 6):

26   Attorney General's legal team plans, as it has done in other cases,
     to actively work with its carefully selected outside counsel to
27   review any and all filings with the Court, to participate in the
     strategy of the prosecution of the claims, attend hearings,
28   participate in mediation, consult with respect to experts, provide
     documents and deposition testimony and ultimately make the final

United States District Court

For the Northern District of California

1    decision regarding whether settlement is appropriate or the case
     should proceed to trial.

2        The Attorney General's Office has managed numerous securities class actions, and such

experience will improve representation of the class.  Furthermore, none of the four attorneys have

been convicted of a crime or been sued for fraud (*ibid*.).  Special Assistant Attorney General

Neville, on behalf of Mississippi PERS, has submitted a certification affirming Mississippi PERS'

understanding of its duties owed to class members (Dkt. No. 37-1).  Mississippi PERS has made a

showing of typicality and adequacy.[*]

     Because this order does not appoint plaintiffs' counsel at this time, the adequacy of

counsel will be determined at a later time.

**3.    ATTEMPTS TO REBUT PRESUMPTION.**

     Other plaintiffs may rebut the presumption that the putative lead plaintiff has satisfied the

requirements of typicality and adequacy.  *In re Cavanaugh*, 306 F.3d at 730.  In its briefing on

this motion, New England Carpenters argued that Mississippi PERS is presumptively barred by

the professional plaintiff statutory provision from serving as lead plaintiff because it has been a

appointed lead plaintiff in at least six securities class actions in the last three years (Dkt. No. 75 at

6).  Mississippi PERS replies that the professional plaintiff bar does not apply to it because it is an

institutional investor.

     Assuming the professional plaintiff bar applies to institutional investors, that leads to the

further inquiry whether the purpose of the statute would be served by nevertheless appointing

Mississippi PERS.  The main purpose of the statute is to favor institutional investors over

individuals such that a repeat individual lead-plaintiff candidate may be prevented from

exceeding the statutory limit.  In this instance, we have two institutional investors and the

institutional investor who is presumed to be the most adequate lead plaintiff has exceeded the

statutory bar under Section 78u-4(a)(3)(B)(vi).  Nevertheless, this institutional investor has shown

it has the capability to manage this litigation.  And considering its loss is seven times greater than

---

[*] This litigation will be managed by the Mississippi Attorney General's Office, not by individuals from
Mississippi PERS, because the Attorney General's Office is charged with this duty pursuant to a state statute.
MISS. CODE. ANN. § 7-5-1.

1   New England Carpenter's, the order concludes that the statutory purpose is served by appointing

2   Mississippi PERS as lead plaintiff.

3          In our district, the argument over whether the professional plaintiff bar applies to

4   institutional investors has been dealt with as part of the burden of the party trying to rebut the

5   presumption that the institutional investor with the largest financial interest and who satisfies the

6   FRCP 23 requirements is the most adequate lead plaintiff.  *In re SiRF Tech. Holdings, Inc. Sec.*

7   *Litig.*, 2008 U.S. Dist. LEXIS 43617, at *8–11 (N.D. Cal. 2008) (Chesney, J.); *Casden v. HPL*

8   *Techs., Inc.*, 2003 U.S. Dist. LEXIS 19606, at *32–33 (N.D. Cal. 2003) (Walker, J.); *In re*

9   *Network Associates*, *Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027–31 (N.D. Cal. 1999) (Alsup, J.).

10         Pursuant to the PSLRA's "professional plaintiff" provision, 15 U.S.C. 78u-4(a)(3)(B)(vi):

11              Except as the court may otherwise permit, consistent with the
                purposes of this section, a person may be a lead plaintiff, or an
12              officer, director, or fiduciary of a lead plaintiff, in no more than 5
                securities class actions brought as plaintiff class actions pursuant
13              to the Federal Rules of Civil Procedure during any 3-year period.

14         As stated in *Casden v. HPL Techs., Inc.*, "the statute itself does not seem to restrict

15   institutional plaintiffs to only five appointments within three years.  For one thing, the language

16   of § 78u-4(a)(3)(B)(vi) applies the restriction only to 'person[s].'"  2003 U.S. Dist. LEXIS, at

17   *33–34.  Although usually, the word "person" includes entities," the conference report described

18   such persons as "individuals" rather than entities."  H.R. Conf. Rep. No. 104-369, at 732 (1995),

19   *as reprinted in* 1995 U.S.C.C.A.N. 730 ("Individuals who are motivated by the payment of a

20   bounty or bonus should not be permitted to serve as lead plaintiffs.  These individuals do not

21   adequately represent other shareholders — in many cases the 'lead plaintiff' has not even read the

22   complaint.").

23         As the Ninth Circuit observed, apart from the statute itself, the Conference Report for the

24   PSLRA represents "the most reliable evidence of congressional intent."  *In re Silicon Graphics*

25   *Sec. Litig*., 183 F.3d 970, 977 (9th Cir. 1999).  As stated within the Conference Report (H.R.

26   Conf. Rep. No. 104-369, at 35):

27              The Conference Report seeks to restrict professional plaintiffs
                from serving as lead plaintiff by limiting a person from serving in
28              that capacity more than five times in three years.  Institutional
                investors seeking to serve as lead plaintiff may need to exceed this

United States District Court
For the Northern District of California

7

limitation and do not represent the type of professional plaintiff this legislation seeks to restrict. As a result, the Conference Committee grants courts discretion to avoid the unintended consequence of disqualifying institutional investors from serving more than five times in three years. The Conference Committee does not intend for this provision to operate at cross purposes with the "most adequate plaintiff" provision.

The majority of judges in our district who have considered the issue and a judge in a neighboring district have concluded that the "professional plaintiff" provision of the PSLRA was not intended to apply to institutional investors. *See e.g., Nursing Home Pension Fund v. Oracle Corp.*, 2006 U.S. Dist. LEXIS 94470, at *14–15 (N.D. Cal. 2006) (Jenkins, J.); *Casden*, 2003 U.S. Dist. LEXIS 19606, at *33–34; *In re Impax Labs., Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 104485, at *26 (N.D. Cal 2008) (Ware, J); *In re Gemstar-TV Guide Intern, Inc. Sec. Litig.*, 209 F.R.D. 447, 454–55 (C.D. Cal. 2002) (Manella, J.).

New England Carpenters points out, however, that in *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999), Judge Whyte refused to allow the Florida State Board of Administration, which exceeded the five suits-in-three years provision of the professional plaintiff bar to serve yet again, noting that the court was "not persuade[d] . . . to lift the presumptive bar," but that it might be inclined to allow Florida to serve if it were the only institutional movant, had accrued a longer record of participation in securities litigation, or shown other special circumstances.  Judge Whyte also stated he was not persuaded to "lift the presumptive bar" because the "text of the statute contains no flat exemption for institutional investors." *Id.* at 1156.  But, the text of the statute clearly provides courts with the authority to lift the bar, even for those who may be considered "professional plaintiffs," if they choose to do so in an exercise of discretion.  This order chooses to do so.

New England Carpenters further attempted to argue that two cases from our court of appeals "dramatically alter the landscape with respect to the lead plaintiff provisions" since 1999.  The first such decision, to which New England Carpenters pointed was *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002).  Counsel stated that in *Cavanaugh*, Judge Kozinski  "admonished district courts to follow . . . the straightforward application of the statutory scheme."  This admonition, however, was in the context of a district court failing to apply the presumption that

the lead-plaintiff candidate with the largest financial interest at stake would be the most adequate plaintiff.  The court reprimanded the lower court for "having freed itself of the statutory presumption [and] . . . engag[ing] in freewheeling comparison of the parties competing for lead plaintiff, questioning them about their business acumen, their knowledge of the lawsuit and, especially, their fee arrangements with their respective lawyers."  *Id.* at 732.  This order engages in no such freewheeling.  The statutory presumption has been applied.

The second decision New England Carpenters cited is *Cohen v U.S. Distr. Ct. for the N. Distr. of Cal.*, 586 F.3d 703, 709 (9th Cir. 2009), quoting, "[w]hen a statute speaks with clarity to an issue, courts must apply the clear meaning of the statute."  This statement was made in the context of the court explaining that the statute delegates to the lead plaintiff the ability to select lead counsel, subject, of course, to court approval.  That court did not consider the professional plaintiff provision.

These two decisions by our court of appeals do not bear on the immediate issue, and thus do not change the conclusion of this order that lifting the professional plaintiff bar, assuming it applies to institutional investors, and appointing Mississippi PERS as lead plaintiff is warranted.  As such, the presumption in favor of finding the lead-plaintiff candidate with the largest financial interest to be the most adequate plaintiff has not been rebutted on the theory that Mississippi PERS is barred from serving as lead plaintiff due to the professional plaintiff bar, as was New England Carpenter's contention.

In a further attempt to rebut the presumption that Mississippi PERS is the most adequate plaintiff, New England Carpenters raised several additional arguments in its briefing.  *First*, New England Carpenters stated that Mississippi PERS was actually appointed as lead plaintiff in a seventh case filed within the three years preceding the date of its certification, but failed to disclose this in its certification.  Mississippi PERS responded stating that its (Dkt. No. 82 at 14):

> certification listed *Pub. Employees' Ret. Sys. of Miss. v. Merill.Lynch & Co.* as a case where Mississippi PERS had filed a complaint but did not move for lead plaintiff . . . [because that case] was later consolidated into an earlier filed case . . . and Mississippi PERS was thereafter appointed lead plaintiff in the [earlier filed] case.  Since the [earlier filed case] was filed more than three years before the certification in this case, the PSLRA

United States District Court

For the Northern District of California

does not require that lead plaintiff appointment be included in the certification in this case.

This is an acceptable explanation of this apparent discrepancy.

*Second*, New England Carpenters contended that no special circumstances exist which require lifting the bar for Mississippi PERS. Nowhere does the PSLRA require that a showing of "special circumstances" is needed in order to justify lifting the bar. The bar will be lifted in this instance for reasons stated herein.

*Third*, New England Carpenters stated that Mississippi PERS is "involved in too many cases to warrant lifting the bar," and that an institutional investor such as itself, with "far less on its plate" would be a better lead plaintiff (Dkt No. 75 at 13, 14). In its briefing, New England Carpenters indicated that Mississippi PERS is currently serving as lead plaintiff in as many as nine active securities cases (which includes cases filed *more than* three years prior to the date on which the certification in this action was signed) and that simultaneous prosecution of all nine actions will stretch its resources thin (Dkt. No. 75 at 6).

At oral argument, supplemental briefing was requested and the parties were asked to answer the following questions regarding Mississippi PERS' service as a lead plaintiff: (1) How many times has Mississippi PERS been appointed lead plaintiff in the last three year? (2) In how many cases is Mississippi PERS currently serving as lead plaintiff? Mississippi PERS' responded and listed nine cases in which it was appointed lead or co-lead plaintiff in the last three years. Mississippi PERS stated it is currently serving as lead plaintiff in eleven cases. It noted that only eight of these cases have "active litigation" (Dkt. No. 92 at 5–7). Mississippi PERS also has a motion pending wherein it is seeking to be appointed lead plaintiff in another action. New England Carpenters' submissions indicated Mississippi PERS had been lead plaintiff in fewer cases than was stated in Mississippi PERS submissions, but for purposes of resolving this motion, the order assumes Mississippi PERS's submissions is most accurate. (Of course, this assumption works in favor of New England Carpenters, who may have not been aware of certain other cases in which Mississippi PERS has been lead plaintiff.)

The conference report contemplated that institutional investors will serve as lead plaintiff in more than five cases during any three-year period. Here, Mississippi PERS, an institutional

10

1   investor, is a state agency, with the resources of its Attorney General's Office at its disposal.  The

2   record shows that Mississippi PERS has extensive experience in serving as lead plaintiff in

3   securities class actions and that the Mississippi Attorney General's Office has sufficient resources

4   to devote to managing this action.  Other than pointing to the number of cases in which

5   Mississippi PERS is currently serving as lead plaintiff, New England Carpenters has not offered

6   sufficient proof beyond mere speculation, that the state agency Mississippi PERS cannot fairly

7   and adequately protect the interests of the class.

8          *Fourth*, New England Carpenters took issue with the fact that the Mississippi Attorney

9   General's Office will be in control of this litigation and that no member of the board of trustees or

10  executive director will be involved.  At the hearing, the Court inquired into the Attorney

11  General's authority to control litigation for Mississippi PERS.  Mississippi PERS stated that the

12  Attorney General derived its authority from a state statute.  Mississippi PERS appended a copy of

13  the statute to its supplemental briefing.  Indeed, the statute, states, "[t]he Attorney General . . . is

14  charged with managing all litigation on behalf of the state . . . . He shall have the powers of the

15  Attorney General at common law and is given the sole power to bring or defend a lawsuit on

16  behalf of a state agency, the subject matter of which is of state-wide interest."  MISS. CODE ANN §

17  7-5-1.

18         Whereas here, the institutional investor is a state agency, the presumptively most adequate

19  lead-plaintiff candidate has significant experience in securities litigation, and the Attorney

20  General's Office, whose authority to manage litigation is derived from a state statute, will report

21  to the Board of Trustee's, the fact that no member of the board of trustees or executive director

22  will be a part of managing the litigation does not rebut the statutory presumption.

23         Mississippi PERS has the largest financial interest by far — its losses are more than seven

24  times those of New England Carpenters and almost twice the losses of all other original movants

25  combined — and otherwise satisfies the typicality and adequacy requirements of FRCP 23.

26  Mississippi PERS is the most adequate lead plaintiff.  This order takes note that at the hearing

27  counsel stated that the Attorney General's Office would not seek attorney's fees in this case.

28

**CONCLUSION**

Mississippi PERS is appointed lead plaintiff. The following sets forth the procedure for selecting and approving class counsel. Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. 78u-4(a)(3)(B)(v). Selection and approval require an assessment of the strengths, weaknesses, and experience of counsel as well as the financial burden — in terms of fees and costs — on the class. *Wenderhold v. Cylink Corp.*, 191 F.R.D. 600, 602–03 (N.D. Cal. 2000) (Walker, J.).

Any important decision made by a fiduciary should be preceded by due diligence. A lead plaintiff is a fiduciary for the investor class. No decision by the lead plaintiff is more important than the selection of class counsel. Consequently, the lead plaintiff should precede its choice with due diligence. The extent of such due diligence is a matter of judgment and reasonableness based on the facts and circumstances.

The lead plaintiff should immediately proceed to perform its due diligence in the selection of class counsel, and to interview appropriate candidates, and through counsel, move for the appointment and approval of their selected counsel no later than **APRIL 30, 2012**. The motion should be accompanied by declarations from the lead plaintiff explaining the due diligence undertaken by each with respect to the selection of class counsel. The declarations should also explain why the counsel selected was favored over other potential candidates. The declarations should be filed under seal and not served on defendants. The motion for approval of lead plaintiff's choice of counsel, however, should be served on defense counsel. No hearing will be held on the motion unless the Court determines that it would be beneficial.

Once class counsel is approved, the first order of business will be to file a consolidated complaint within **45 CALENDAR DAYS** of the order appointing lead counsel. Defendants may then file a motion to dismiss (or answer) within **45 CALENDAR DAYS**. Any such motion shall be noticed on the normal 35-day track.

This appointment is conditioned on lead plaintiff submitting certification in writing, **WITHIN SEVEN CALENDAR DAYS** that it has read this order and is willing and able to meet the

schedule and its fiduciary obligations.  This should be signed both by the Attorney General's

Office and by the chief executive of Mississippi PERS.

**IT IS SO ORDERED.**

Dated:  March 20, 2012.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court

For the Northern District of California

13