Michael J. Shepard (Bar No. 91281)
HOGAN LOVELLS US LLP
Three Embarcadero Center, 15th Floor
San Francisco, California 94111
Telephone: (415) 374-2301
Facsimile: (415) 374-2499
michael.shepard@hoganlovells.com

Norman J. Blears (Bar No. 95600)
Maren J. Clouse (Bar No. 228726)
HOGAN LOVELLS LLP
525 University Avenue, 4th Floor
Palo Alto, California 94301
Telephone: (650) 463-4000
Facsimile: (650) 463-4199
norman.blears@hoganlovells.com
maren.clouse@hoganlovells.com

Attorneys for Defendant
STEVEN M. NEIL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE DIAMOND FOODS, INC. SECURITIES LITIGATION | Case No. 11-CV-05386 <br><br> **DEFENDANT STEVEN M. NEIL'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> The Honorable William H. Alsup <br> Date: November 15, 2012 <br> Time: 1:30 p.m. <br> Courtroom 9, Nineteenth Floor |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 2

II. SUMMARY OF ALLEGATIONS ..................................................................................... 2

III. LEGAL STANDARD .......................................................................................................... 4

IV. ARGUMENT ....................................................................................................................... 5

    A. The Complaint Fails To Allege Facts Supporting A Strong Inference Of Scienter As To Mr. Neil. ............................................................................................. 5

        1. The Statements of Confidential Witnesses Are Not Indicative of Scienter. ............... 5

        2. Vague Statements That Mr. Neil Was "Hands-On" Do Not Establish Scienter. ......... 7

        3. Mr. Neil's Employment Status Does Not Support Any Inference of Scienter. ............ 8

    B. Deloitte's Alleged Knowledge and Approval of the 2010 Payment Negates Scienter. ............................................................................................................................ 8

    C. Mr. Neil's History Of Buying And Holding Stock During the Class Period Refutes Any Inference Of Scienter. ............................................................................ 9

    D. The Complaint's Insufficient Allegations Are Not Saved By A "Holistic" Inquiry. ........................................................................................................................... 10

    E. Because The Complaint Fails To Plead A Rule 10b-5 Violation, The Section 20(a) Claim Fails. ........................................................................................... 12

V. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Glazer Capital Mgmt., L.P. v. Magistri*,
　549 F.3d 736 (9th Cir. 2008) ............................................................................................ 6, 10, 11

*GSC Partners CDO Fund v. Washington*,
　368 F.3d 228 (3rd Cir. 2004) ....................................................................................................... 10

*In re Am. Apparel, Inc. S'holder Litig.*,
　855 F. Supp. 2d 1043 (C.D. Cal. 2012) ....................................................................................... 11

*In re Business Objects S.A. Sec. Litig.*,
　2005 WL 1787860 (N.D. Cal. July 27, 2005) ................................................................................ 7

*In re Cadence Design Sys., Inc. Sec. Litig.*,
　654 F. Supp. 2d 1037 (N.D. Cal. 2009) ................................................................................... 6, 11

*In re Century Aluminum Co. Sec. Litig.*,
　749 F. Supp. 2d 964 (N.D. Cal. 2010) ..................................................................................... 6, 11

*In re Cirrus Logic Sec. Litig.*,
　946 F. Supp. 1446 (N.D. Cal. 1996) .............................................................................................. 9

*In re Daou Sys., Inc. Sec. Litig.*,
　411 F.3d 1006 (9th Cir. 2005) ........................................................................................................ 5

*In re Rigel Pharms., Inc. Sec. Litig.*,
　--- F.3d ----, 2012 WL 3858112 (9th Cir. Sept. 6, 2012) ............................................................ 10

*In re Silicon Graphics, Inc., Sec. Litig.*,
　183 F.3d 970 (9th Cir. 1999) .......................................................................................................... 4

*In re U.S. Aggregates, Inc. Sec. Litig.*,
　235 F. Supp.2d 1063 (N.D. Cal. 2002) .......................................................................................... 8

*In re Wet Seal, Inc. Sec. Litig.*,
　518 F. Supp. 2d 1148 (C.D. Cal. 2007) ......................................................................................... 9

*Lipton v. Pathogenesis Corp.*,
　284 F.3d 1027 (9th Cir. 2002) ...................................................................................................... 12

*Mallen v. Alphatec Holdings, Inc.*,
　--- F. Supp.2d ----, 2012 WL 987314 (S.D. Cal. March 22, 2012) ............................................. 8

*McCasland v. FormFactor Inc.*,
  2008 WL 2951275 (N.D. Cal. July 25, 2008) ....................................................................... 7

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ............................................................................... 5, 7, 8

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ....................................................................................... 10

*South Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ......................................................................................... 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................ 2, 4, 7, 10

*Tuchman v. DSC Commc'ns Corp.*,
  14 F.3d 1061 (5th Cir. 1994) ........................................................................................ 10

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ................................................................................. passim

**STATUTES**

15 U.S.C. § 78u-4(b)(1) ........................................................................................................ 4

15 U.S.C. § 78u-4(b)(2) ........................................................................................................ 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 1

# NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT

PLEASE TAKE NOTICE THAT Defendant Steven M. Neil, through his attorneys of record, on November 15, 2012 at 8:00 a.m., or as soon thereafter as the matter may be heard by the Court, in the Courtroom of the Honorable William H. Alsup, located at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, 19th Floor, San Francisco, California, will, and hereby does, move the Court for an order granting Mr. Neil's motion to dismiss the Consolidated Complaint against him. This motion will be made based on Federal Rule of Civil Procedure 12(b)(6) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4. This motion also will be based upon this Notice; the attached Memorandum of Points and Authorities; the Motion to Dismiss the Consolidated Complaint filed by defendant Diamond Foods, Inc. and supporting Memorandum of Points and Authorities, which Mr. Neil joins; the Request for Judicial Notice filed by defendant Diamond Foods, Inc., which Mr. Neil also joins; the complete files and records of this action; and such other matters and arguments as may come before the Court, including those raised in connection with reply briefing and oral argument relating to this motion.

# JOINDER

Defendant Steven M. Neil joins in the Motion to Dismiss Plaintiff's July 30, 2012 Consolidated Complaint ("Complaint") filed by Defendant Diamond Foods, Inc. ("Diamond") on September 28, 2012. As asserted in that motion, the Complaint fails to allege sufficient facts, as required by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA"), to state a claim under Counts I and III of the Complaint, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Those counts should therefore be dismissed without leave to amend. Mr. Neil also joins in the Request for Judicial Notice filed by Diamond in support of its Motion to Dismiss.

Mr. Neil respectfully submits this Motion and supporting Memorandum to raise additional arguments why the Complaint as to him should be dismissed.

## STATEMENT OF ISSUES PRESENTED

1. Whether the Court should dismiss the Section 10(b) claim against Mr. Neil because the Complaint fails to allege facts creating a strong inference that he acted with scienter.

2. Whether the Court should dismiss the Section 20(a) claim against Mr. Neil because the Complaint fails to allege all essential elements of that claim.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

While the Plaintiff attempts to present its Complaint in the style of the accounting meltdown cases of yesteryear, even its own allegations show this case is anything but that. Instead, the allegations suggest the much more plausible inference that Diamond's decision to restate certain financial statements is the result of a change in approach about reporting the unique method Diamond has used to compensate growers since its days as a co-op. That plausible inference arises from the Complaint's allegations about Diamond's outside auditor, Deloitte, who is not alleged to have been deceived in any way but rather had "broad and unfettered access to Diamond's accounting records and information." Deloitte reviewed *and approved* Diamond's accounting for its 2010 grower payment. After that approval, Diamond employed a similar approach in 2011. As would be expected in light of Deloitte's express approval of the accounting and in light of the absence of any effort to deceive Deloitte, let alone any success in doing so, the Complaint fails to explain how Mr. Neil is supposed to have known that the accounting for the grower payments was in fact wrong – as would be required to support an inference that he engaged in reckless or intentional misconduct when he made representations about Diamond's financial results. The Complaint's other allegations about Mr. Neil's hands-on management style and performance-related compensation do not make up for those failings as a matter of law, especially in light of the fact that during the alleged class period, Mr. Neil purchased Diamond stock on the open market and then held it. Where a complaint's allegations of fraud are unsupported, and the more plausible inference from the allegations is instead an innocent one, the PSLRA's stringent pleading standards require the complaint be dismissed. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

## II. SUMMARY OF ALLEGATIONS

In Fall 2011, Diamond's Audit Committee initiated an investigation into the Company's accounting for certain payments to walnut growers. Compl. ¶¶ 171. On February 8, 2012, Diamond announced that it had "substantially completed" its investigation and concluded that

two grower payments – a $20 million "continuity" payment made in August 2010, and a $60 million "momentum" payment made in September 2011 – were not accounted for in the correct periods, requiring restatement of Diamond's financial results for fiscal years 2010 and 2011. *Id.* ¶¶ 34-35. On that date, Diamond also announced that Mr. Neil, as well as Diamond's Chief Executive Officer Michael Mendes, had been placed on administrative leave. *Id.* ¶ 38. Diamond did not announce any conclusion about Mr. Neil's involvement in the inaccurate accounting, and in fact has not stated why the payments were not properly accounted for or whether any wrongdoing was involved. *Id.* ¶¶ 35, 38. Nevertheless, Plaintiff alleges that there was wrongdoing at Diamond, and they seek to hold Mr. Neil accountable for it.

As the Complaint explains, Diamond had a unique system for purchasing walnuts: "Diamond purchased walnuts from its growers, pursuant to exclusive long-term contracts, many of which dated from when the Company was still a cooperative. Pursuant to such contracts, *Diamond unilaterally set the price at which it would purchase walnuts* (although required to act in good faith), but agreed to purchase the entirety of each grower's crop. Growers recognized that Diamond historically paid slightly below the going rate for walnuts, but the trade-off was the security and predictability of Diamond's commitment." *Id.* ¶ 36 (emphasis added). This arrangement impacted Diamond's accounting for grower payments. Mr. Neil explained that "walnuts are a little bit unique in that we don't finalize the price until the summer, until August. And so what we must do is we estimate what that cost is …." *Id.* ¶ 114. These aspects of Diamond's business and potential impact on the Company's financial statements are no secret to investors; rather, they have been regularly reported by the Company for years. *See, e.g., id.* ¶ 94 (quoting FY 2010 10-K).

The Complaint focuses on two grower payments made at the end of the summer in 2010 and 2011. The Company accounted for those payments as payments for the coming year's crop, which was shortly to be delivered. *Id.* ¶ 3. In the case of the 2010 payment, Deloitte knew of, reviewed, and approved Diamond's accounting treatment. *Id.* ¶¶ 288, 291, 361. The Company made a similar grower payment in 2011. *Id.* ¶ 68. But the Company later concluded that those

payments should have been accounted for as payments for the prior year's crop. *Id.* ¶ 212. The Complaint pleads no specific facts that explain what Mr. Neil knew about the two grower payments at issue. *See id.* ¶¶ 52-81. Nor does the Complaint plead any facts alleging what, if anything, Mr. Neil knew about alleged communications with growers characterizing the payments as being for the prior year, instead of for the coming year, consistent with Diamond's accounting and with Deloitte's approval of that accounting. The Complaint fails to allege facts from which to infer that Mr. Neil knew that the grower payments were accounted for improperly.

## III. LEGAL STANDARD

This case is governed by the PSLRA. That statute imposes exacting pleading standards on plaintiffs alleging claims under Section 10(b) of the Securities Exchange Act. With respect to each challenged statement, a complaint must set forth facts constituting "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). And while in ordinary fraud actions a plaintiff may allege state of mind generally, the PSLRA requires securities fraud plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). These are rigorous standards. "[A] private securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics, Inc., Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999). Facts showing a motive and opportunity to commit fraud are not sufficient to establish a strong inference of *deliberate* recklessness. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (quoting *Silicon Graphics*, 183 F.3d at 974 (emphasis added)). Rather, the plaintiff must plead "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care." *Id*. A plaintiff creates the necessary "strong inference" of deliberate fraud "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 310.

## IV. ARGUMENT

### A. The Complaint Fails To Allege Facts Supporting A Strong Inference Of Scienter As To Mr. Neil.

Plaintiff attempts to pile insufficient allegation atop other insufficient allegation, apparently hoping the Complaint will equal more than the sum of its parts. But even under a holistic review, the allegations fail to establish scienter against Mr. Neil under the PSLRA.[1] The bottom line is that the Complaint does not allege that Mr. Neil actually knew that Diamond's accounting was incorrect, and it fails even to allege any facts as to Mr. Neil from which it could be inferred that he should have questioned the Company's accounting for the walnut payments at issue. Instead, the Complaint alleges that Deloitte was aware of and approved Diamond's accounting treatment for these grower payments after receiving all the information from Diamond that Deloitte wanted. The most plausible inference is that the Company's ultimate decision to restate resulted from a change in approach to the accounting, such that the misstatements are mistakes and not fraud.

#### 1. The Statements of Confidential Witnesses Are Not Indicative of Scienter.

A complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements. First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge. *Zucco Partners*, 552 F.3d at 995 (citing *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1015-16 (9th Cir. 2005)). A witness' job title or set of responsibilities does not inform whether the witness actually has personal knowledge. *See, e.g.*, *Zucco Partners*, 552 F.3d at 996 (despite highly detailed information about each witness, plaintiffs failed to demonstrate personal knowledge of witnesses with particularity). CW 3 was purportedly an assistant treasurer, but he was not a member of the "circle" of people with information about grower payments. Compl. ¶ 39. *See also id.* ¶ 385 (alleging decisions on walnut pricing were "a closely guarded secret" among senior executives, as to which others were not informed).

---

[1] A comprehensive perspective on otherwise insufficient allegations "cannot transform a series of inadequate allegations into a viable inference of scienter." *Zucco Partners*, 552 F.3d at 1008. Nor can a plaintiff avoid dismissal by reliance on an isolated statement that stands in contrast to the other insufficient allegations in the complaint. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008).

Likewise CW 5, a financial accountant, is not alleged to have any specific facts about what Mr. Neil knew of the grower payments.

Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter. *Zucco Partners*, 552 F.3d at 995. The allegations of CW 3 and CW 5 are not.[2] Neither makes any allegations about Mr. Neil's knowledge of the accounting treatment of the grower payments at issue. *See In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp.2d 1063, 1074 (N.D. Cal. 2002) (no scienter allegations in accounting fraud claim where "confidential witnesses [did not] have any first-hand knowledge of [defendant's] accounting decisions"). CW 3's statements about Mr. Neil's conversations relating to lines of credit or whether grower payments could be altered in a cost worksheet more plausibly support an inference that Mr. Neil was monitoring the liabilities and obligations of the company, consistent with the responsibilities of his job as a corporate officer. *In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 973 (N.D. Cal. 2010) ("bare allegations that … officers had access to financial statements and analyzed those statements does not support the inference that defendants knew about the accounting error") (citing *Glazer Capital Mgmt., L.P. v. Magistri*, 549 F.3d 736, 746 (9th Cir. 2008)); *In re Cadence Design Sys., Inc. Sec. Litig.*, 654 F. Supp. 2d 1037, 1046-47 (N.D. Cal. 2009) (citing *Zucco Partners*, 552 F.3d at 995) (statements of confidential witnesses about executive's "meticulous" role in approving and signing off on deals was not sufficiently detailed to indicate scienter for the deal at issue).[3]

Generally, CW 5 alleges that Mr. Neil was involved in "pre-audit review," and "knew what was going on." Compl. ¶ 35. Here CW 5 provides a single statement attributable to Mr. Neil – that he instructed quarter-end meeting attendees to "be aggressive." *Id*. The Complaint offers no supporting facts to indicate any context, timing, or specific audience for this statement,

---

[2] Of the ten confidential witnesses referenced in Plaintiff's complaint, only CW 3 and CW 5 make any specific mention of Mr. Neil. *See, e.g.*, Compl. ¶¶ 387-89.

[3] Given the nature of Diamond's price estimation and payment schedule over the course of the year, Mr. Neil's request to alter costs in payment worksheets gives rise to the more plausible inference that commodity price fluctuation led to changing price and payment assumptions over the course of the year. Neither CW 3 – nor Plaintiff elsewhere in the Complaint – provides any information about what Mr. Neil said to CW 3, specifically, with regard to grower payments or cost worksheets.

HOGAN LOVELLS LLP
ATTORNEYS AT LAW

DEF. STEVEN M. NEIL'S MOTION TO DISMISS TO COMPLAINT
CASE NO. 11-CV-05386 WHA

neither from CW 5 or any other witness. There is likewise no indication as to what, if any, specific action or decisions followed the alleged statement. The statement is vague; the meaning of "aggressive" is ambiguous; and the import of the statement for establishing that Mr. Neil had any particular mental state about accounting is speculative at best. *See Metzler Inv*., 540 F.3d at 1069 (CFO's isolated statement failed to establish scienter in light of equally plausible inference that CFO was exhorting employees to improve business). The same is true of the allegation that Mr. Neil "scrubbed" its financial statements, Compl. ¶ 35; the term could support an inference that the Company sought to catch any errors just as easily as it could support an inference of nefarious intent.

These bare and speculative assertions stand in contrast to what the PSLRA requires under *Tellabs*: particularized facts giving rise to a strong inference of scienter. *See McCasland v. FormFactor Inc*., 2008 WL 2951275, at *8 (N.D. Cal. July 25, 2008) (no inference of scienter where confidential witness did not supply adequate corroborating details); *In re Business Objects S.A. Sec. Litig*., 2005 WL 1787860, at *6 (N.D. Cal. July 27, 2005) (rejecting confidential witness statements that were "long on speculation but short on relevant detail"). Given the insufficiency of the allegations in the complaint as a whole, one speculative and ambiguous statement cannot carry the weight of a 209-page complaint for the purpose of establishing a strong inference of scienter. *See Metzler Inv*., 540 F.3d at 1069 (a single ambiguous statement in an otherwise insufficient 181-page complaint was insufficient to demonstrate scienter).

**2. Vague Statements That Mr. Neil Was "Hands-On" Do Not Establish Scienter.**

Plaintiff also alleges Mr. Neil's scienter on the basis of a "hands-on approach" to his job, on a "core operations" theory. This argument has been rejected by the Ninth Circuit. According to the Complaint, Mr. Neil explained his opinion that the CFO needed to be "out in the field and close to the widgets" to truly understand his job, and he stated that he visited the growers at least twice a year. Compl. ¶ 386. Such an approach suggests that Mr. Neil was in fact interested, as he stated, in "how the product flows, how we can reduce our unit costs, and how we can improve our logistics." *Id*. Evidence of Mr. Neil's "hands-on" approach does not indicate whether he acted

deliberately by accounting for grower payments in a manner later deemed to be incorrect. *See South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784-85 (9th Cir. 2008) ("As a general matter, 'corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter – at least absent some additional allegation of specific information conveyed to management and related to the fraud' or other allegations supporting scienter."); *Metzler Inv.*, 540 F.3d at 1068 (core operations inference fell short of *Tellabs* pleading standard).

### 3. Mr. Neil's Employment Status Does Not Support Any Inference of Scienter.

The fact that Mr. Neil was placed on administrative leave following Diamond's announcement that it would restate its financial results does nothing to support an inference of scienter. In order for resignations, terminations, and other allegations of corporate reshuffling slightly before or after the defendant corporation issues a restatement to be probative of a strong inference of scienter, a plaintiff must plead facts refuting the reasonable assumption that the resignation occurred as a result of restatement's issuance itself. *Zucco Partners*, 552 F.3d at 1002 (citing *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d at 1074 ("Plaintiff can point to no particularized allegation refuting the reasonable assumption that [defendant's employee] was fired simply because the errors that lead to the restatement occurred on his watch or because he failed adequately to supervise his department.")). Mere conclusory allegations during the class period or shortly before or after the corporation issues its restatement, without more, cannot support a strong inference of scienter. *Zucco Partners*, 552 F.3d at 1002. *See also Mallen v. Alphatec Holdings, Inc.*, --- F. Supp. 2d ----, 2012 WL 987314, at *23 (S.D. Cal. March 22, 2012) (timing of CFO's removal two months after corrective announcement did not support a strong inference of scienter).

### B. Deloitte's Alleged Knowledge And Approval Of The 2010 Payment Negates Scienter.

Plaintiff alleges that Diamond's outside auditor, Deloitte, was aware of the 2010 grower payment, and the fact that Diamond was accounting for it in the coming 2011 fiscal year, before Deloitte signed off on Diamond's financial statements for 2010. Compl. ¶ 288. While Plaintiff

8
DEF. STEVEN M. NEIL'S MOTION TO DISMISS TO COMPLAINT
CASE NO. 11-CV-05386 WHA

HOGAN LOVELLS LLP
ATTORNEYS AT LAW

alleges that Deloitte saw the fraud and decided to join in, a much more plausible inference is that Deloitte agreed with Diamond's accounting treatment. If, despite the lack of alleged facts, it is inferred that Mr. Neil knew about the Company's accounting for the grower payments, then it would also be reasonable to infer that Mr. Neil knew that Deloitte approved the Company's accounting treatment of the 2010 grower payment and relied on that approval. That would undermine any inference that Mr. Neil acted with scienter. *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1166 (C.D. Cal. 2007) (Deloitte's certification of defendant's financial statements weighed against scienter). It would also undermine any inference that Mr. Neil acted with scienter with regard to the 2011 grower payment, which Plaintiff alleges was similar to the 2010 payment and was accounted for in similar fashion. Compl. ¶¶ 68-70, 80. Deloitte's approval of the 2010 payment leads to the inference that it was reasonable to conclude that a similar payment in 2011 would be properly accounted for the same way. There is no allegation that Diamond misled Deloitte or hid information from the auditors, so as to undermine the inferences to be drawn from Deloitte's approval of Company's accounting treatment for the 2010 payment. To the contrary, Plaintiff alleges that Deloitte had "broad and unfettered access to Diamond's accounting records and information." *Id.* ¶ 359. Those allegations undermine an inference that anyone at Diamond acted with scienter by accounting for the grower payments in a manner approved by Deloitte. *See In re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1463 (N.D. Cal. 1996) (extensive disclosure to independent auditors on material accounting decisions negates inference of scienter). Instead, the allegations support an inference that the approach taken by Deloitte with regard to the grower payments differed from the approach later taken by the Audit Committee, which decided the payments should be accounted for differently. The most plausible inference is that any errors in accounting for the grower payments were just mistakes, and not fraud.

### C. Mr. Neil's History Of Buying And Holding Stock During The Class Period Refutes Any Inference Of Scienter.

Plaintiff likewise fails to plead scienter through their base assertions about Mr. Neil's financial motivation. *See* Compl. ¶¶ 222, 407-409. The Complaint alleges that Mr. Neil had a

9

DEF. STEVEN M. NEIL'S MOTION TO DISMISS TO COMPLAINT
CASE NO. 11-CV-05386 WHA

Hogan Lovells LLP
Attorneys At Law

personal financial incentive, in the form of bonuses tied to earnings per share and stock options grants tied to company performance, to misrepresent Diamond's financial results. Plaintiff also suggests, without supporting facts, that the Pringles acquisition "was a factor that supported" Mr. Neil's receipt of 190% of his target bonus. *Id.* ¶ 408. But an officer's desire to consummate a business transaction cannot give rise to a strong inference of fraudulent intent. *Glazer Capital Mgmt.*, 549 F.3d at 748 (citing *GSC Partners CDO Fund v. Washington*, 368 F.3d 228. 237-38 (3d Cir. 2004). And "… incentive compensation can hardly be the basis on which an allegation of fraud is predicated." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

Significantly, Mr. Neil did not sell stock during the class period. In fact, he spent more than $300,000 of his own money to purchase Diamond shares that he then held.[4] That history significantly undermines whatever inference of scienter might otherwise exist. *See, e.g.*, *In re Rigel Pharms., Inc. Sec. Litig.*, --- F.3d ----, 2012 WL 3858112 *13 (9th Cir. Sept. 6, 2012) (rejecting inference of scienter where individual defendants did not sell stock during the period during which they would have benefited from any allegedly fraudulent statements); *Metzler Inv.*, 540 F.3d at 1049 (absence of stock sales by defendant suggested an absence of insider information that undercut scienter); *Ronconi v. Larkin*, 253 F.3d 423, 436 (9th Cir. 2001) (no strong inference of scienter where knowledgeable insiders did not sell stock at a time that would have taken advantage of allegedly fraudulent statements).

### D. The Complaint's Insufficient Allegations Are Not Saved By A "Holistic" Inquiry.

Courts must evaluate *all* inferences that arise from the allegations – both the inference (where appropriate) that defendants engaged in knowingly or deliberately reckless misconduct, and all the more benign inferences (for example, that defendants were simply doing their jobs, or perhaps acted with simple recklessness, or negligently). *See Tellabs*, 551 U.S. at 322-24. Following *Tellabs*, 551 U.S. 308, a court must *weigh* competing inferences, and may "only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing inference." *Zucco Partners*, 552 F.3d at 991. Even if "a set of allegations may

---

[4] *See* Diamond's Request for Judicial Notice, Ex. F.

HOGAN LOVELLS LLP
ATTORNEYS AT LAW

create an inference of scienter greater than the sum of its parts, it must still be at least as compelling as an alternative innocent explanation." *Id.* at 1006. S*ee also In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1087 (C.D. Cal. 2012) (rejecting inference of scienter even where the "whole is indeed greater than the sum of its parts" because the inference was not as compelling as opposing innocent explanations).

Plaintiff cannot create an inference of scienter simply by applying Mr. Neil's position as Diamond's Chief Financial Officer, his compensation, and his administrative leave to the fact that Diamond restated its financials. *See, e.g.*, *Zucco Partners*, 552 F.3d at 992 (rejecting holistic inference of scienter where restatement, resignations during the class period, SOX certifications, incentive compensation packages, and stock sales during the class period did not individually establish inference); *Glazer Capital Mgmt.*, 549 F.3d at 748-49 (rejecting scienter in holistic consideration of the size and nature of the business, SOX certifications, individuals' profit motives, settlement agreements with the SEC and DOJ, and earlier knowledge of others suggesting executive should have known, where each allegation gave rise to more plausible innocent inference); *accord Century Aluminum*, 749 F. Supp. 2d 964 (rejecting holistic inference of scienter from allegations of involvement in SEC filings, receipt of information about "true facts," personal financial motive and opportunity and magnitude of the fraud in absence of specific facts that shed light on the mental state of defendants); *Cadence Design Sys.*, 654 F. Supp. 2d at 1037 (rejecting holistic inference of scienter even where motive to consummate merger provided a "reasonable" inference of scienter, defendants were involved in core operations and similar deals, and six officers resigned around earnings restatement). Instead, a holistic view yields the innocent inference that Mr. Neil was the CFO who presided over financial statements that contained what was later determined to be a mistake. That inference is at least equally compelling, and more so, especially given: 1) Deloitte's alleged knowledge and approval of the accounting treatment, notwithstanding that Deloitte's view apparently differed from the view later developed by Diamond's Audit Committee; and 2) Mr. Neil's history of buying and holding stock in Diamond at a time when, if there were a fraud, he would instead have been

expected to cash out before the Company's allegedly hidden precarious financial situation came to light.

### E. Because The Complaint Fails To Plead A Rule 10b-5 Violation, The Section 20(a) Claim Fails.

Plaintiff asserts a cause of action against Mr. Neil as a control person liable under Section 20(a) for Diamond's violations. But, for the reasons explained in the Company's brief, there is no violation. Without a primary violation, Mr. Neil cannot be liable under Section 20(a), and Plaintiff's claim must be dismissed. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002) ("to prevail on their claims for violations of § 20(a) and § 20A, plaintiffs must first allege a violation of § 10(b) or Rule 10b-5").

## V. CONCLUSION

For the foregoing reasons, Mr. Neil respectfully requests that the Court dismiss the Consolidated Complaint against him.

Dated: September 28, 2012                            HOGAN LOVELLS LLP

By: */s/ Norman J. Blears*
     Norman J. Blears

     Attorneys for Defendant
     STEVEN M. NEIL