# Exhibit 4

EXHIBIT
20
Neville
4-3-13  CAK

1  John F. Harnes (admitted *pro hac vice*)
   Gregory E. Keller (admitted *pro hac vice*)
2  CHITWOOD HARLEY HARNES LLP
   1350 Broadway, Suite 908
3  New York, New York 10018
   Tel: (917) 595-4600
4  JHarnes@chitwoodlaw.com
   GKeller@chitwoodlaw.com
5
   Robert W. Killorin (admitted *pro hac vice*)        Richard M. Heimann
6  Meryl W. Roper (admitted *pro hac vice*)            (State Bar No. 63607)
   Ze'eva Kushner Banks (admitted *pro hac vice*)      Joy A. Kruse
7  CHITWOOD HARLEY HARNES LLP                          (State Bar No. 142799)
   2300 Promenade II                                   LIEFF CABRASER HEIMANN &
8  1230 Peachtree Street, N.E.                         BERNSTEIN LLP
   Atlanta, Georgia 30309                              275 Battery Street, 29th Floor
9  Tel: (404) 873-3900                                 San Francisco, California 94111- 3339
   Fax: (404) 876-4476                                 Tel: (415) 956-1000
10 RKillorin@chitwoodlaw.com                           Fax: (415) 956-1008
   MRoper@chitwoodlaw.com                              rheimann@lchb.com
11 ZBanks@chitwoodlaw.com                              jakruse@lchb.com

12 Attorneys for Lead Plaintiff Mississippi Public     Local Counsel for Lead Plaintiff
   Employees' Retirement System                        Mississippi Public Employees' Retirement
13                                                      System

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16                       SAN FRANCISCO DIVISION

17
                                          Case No.: 11-cv-05386-WHA
18 IN RE DIAMOND FOODS, INC.,
   SECURITIES LITIGATION                  **LEAD PLAINTIFF'S INITIAL DISCLOSURES**
19

20

21 This Document Relates to:

22   All Actions

23

24     Pursuant to Federal Rules of Civil Procedure 26(a)(1), Lead Plaintiff Mississippi

25 Public Employees' Retirement System ("Lead Plaintiff"), on behalf of itself and all

26 persons and entities who purchased the publicly traded securities of Diamond Foods, Inc.

27

28

("Diamond) during the period from October 5, 2011 though and including February 8, 2012, hereby submits the following Initial Disclosure Statement.

While much of the following information is primarily within the knowledge and control of Defendants Diamond, Michael J. Mendes and Steven M. Neil ("Defendants"), this Initial Disclosure Statement is made upon information currently known to Lead Plaintiff and is made without prejudice to Lead Plaintiff's right to use before or during trial, or to produce during discovery, such additional data, information or documents as are: (a) subsequently discovered; (b) subsequently determined to be relevant to the claims or alleged defenses; or (c) subsequently determined to have been omitted from this or any supplemental or amended disclosure statements.

Lead Plaintiff hereby reserves its right to amend and/or supplement at any time this Initial Disclosure Statement and the information provided pursuant to its initial disclosure obligations.

Lead Plaintiff hereby expressly reserves all objections to the use of this Initial Disclosure Statement, or any of the information or documents referenced herein, in any other proceeding.  By referring to documents and individuals in the initial disclosure process, Lead Plaintiff makes no representations or concessions regarding the relevancy or appropriateness of any particular documents or information and reserves all objections related thereto.

By referring to documents and individuals in the initial disclosure process, Lead Plaintiff does not waive its right to object to discovery requests on any basis, including, but not limited to, overbreadth, burden, attorney-client privilege, the attorney work-product doctrine, or any other lawful protection from disclosure.

## I.   INDIVIDUALS AND ENTITIES LIKELY TO HAVE DISCOVERABLE INFORMATION

Defendants possess far more information to enable them to determine who is likely to possess discoverable information relevant to Lead Plaintiff's claims. Identified below, however, are those persons Lead Plaintiff believes may, or are likely to have, discoverable information related to the claims in this action that Lead Plaintiff may use to support its claims, excluding impeachment witnesses. As discovery is ongoing, Lead Plaintiff reserves the right to supplement or amend this list pursuant to the Federal Rules of Civil Procedure and/or Local Rules for the Northern District of California.

### A.   Lead Plaintiff

The Lead Plaintiff is believed to have information concerning its transactions in Diamond common stock during the class period.

> Mississippi Public Employees' Retirement System
> c/o Chitwood Harley Harnes LLP
> 2300 Promenade II
> 1230 Peachtree Street, N.E.
> Atlanta, GA 30309
> Main:  404-873-3900
> Fax:    404-876-4476

### B.   Defendants

The following Defendants are believed to have information concerning the matters alleged in the Consolidated Complaint ("Complaint"):

> 1.   Diamond Foods, Inc.
>      c/o Fenwick & West LLP
>      555 California Street, 12th Floor
>      San Francisco, CA 94104
>      Main:  415-875-2300
>      Fax:    415-281-1350
>
> 2.   Michael J. Mendes
>      c/o Sidley Austin LLP
>      555 California Street, Suite 2000
>      San Francisco, CA 94104

Main:  415-772-1200
Fax:    415-772-7400

3.    Steven M. Neil
c/o Hogan Lovells LLP
525 University Avenue, 4th Floor
Palo Alto, CA 94301
Main:  650-463-4000
Fax:    650-463-4199

**C.    Current and Former Employees, Officers and Directors**

Diamond and other entities' current and former employees, officers and directors are believed to have information concerning the matters alleged in the Complaint including, but not limited to:

- Diamond's accounting for certain crop payments to walnut growers;

- Diamond's internal investigation(s) of the Company's accounting for certain crop payments to walnut growers;

- Diamond's restatement of financial results and resulting reduction of net income for Fiscal Years 2010 and 2011 by 47 percent and 48 percent, respectively;

- Diamond's discussions and/or negotiations with Procter & Gamble Co. regarding a potential acquisition of Pringles;

- Diamond's business, finances, structure, and operations;

- Diamond's disclosure controls and procedures;

- Diamond's internal accounting controls and information processing systems;

- Diamond's financial reports and filings with the United States Securities and Exchange Commission ("SEC"); and

- Communications to the market and investors.

1    Defendants possess far more information to enable them to determine the names

2    and addresses of Diamond's current and former employees, officers and directors with

3    discoverable information.  The current or former employees, officers and directors of

4    Diamond or other entities, of whom Lead Plaintiff is currently aware and who are believed

5    potentially to have information that Lead Plaintiff may use to supports its claims, other

6    than solely for impeachment, include the following:

| Name | Contact Information |
|---|---|
| Abundis, Juan | 480 West C Street<br>Dixon, CA 95620<br>209-922-5293 |
| Akino, Ron | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Allcock, Andy | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Anderson, Barry | 708-460-1580, 847-506-0053 |
| Arellano, Richard Anthony | 4215 North Pershing Avenue<br>Apartment 32<br>Stockton CA 95207<br>209-390-5591 |
| Arnold, Kerry | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Ayoub, Jacob | 730 Florida Street, Apartment 10<br>San Francisco, CA 94110<br>248-497-1814 |
| Azarcon, Loren | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Baer, Laurence M. | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Baffoni, David | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Balt, Josh | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Bannister, Randy | Diamond Foods, Inc. |

| Name | Contact Information |
|------|---------------------|
|  | 600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Barajas, Irene | 333 Shadywood Avenue<br>Lathrop, CA 95330<br>209-234-2728 |
| Barker, Jim | 107 Augusta Court<br>Palos Heights, IL 60463<br>708-385-3853 |
| Barker, Thomas | 1222 East 27th Street<br>Anderson, IN 46016<br>765-635-8543 |
| Barnhill, Douglas | 209-848-0035 |
| Barragan, Frank | 1438 La Sierra Street<br>Merced, CA 95348<br>209-662-0162 |
| Bartlow, Andrew | 2037 Hyde Street<br>San Francisco, CA 94109<br>415-230-7956, 312-342-4507 |
| Barton, Brent |  |
| Battaglia, Phli | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Batti, Michael | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Berreth, Patricia | Galt, CA 95632<br>209-744-9713 |
| Bhukhan, Dharmesh "Don" | 740 Saffron Drive<br>Tracy, CA 95377<br>209-820-4017, 209-830-4465 |
| Biase, Anthony | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Bielefeld, Ashley | 329 Meadowlark Way<br>Lodi, CA 95240<br>209-368-1366 |
| Bignetti, Piera | 603 Ashbury Avenue<br>El Cerrito, CA 94530<br>510-524-9556, 510-529-4052<br>415-794-8658 |
| Bladdick, Jeff | 2156 Waterman Avenue<br>Granite City, IL 62040<br>618-797-6503 |
| Blechschmidt, Edward A. | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Boccio, Rich | 631-957-2143, 561-495-7174 |
| Bolanos, Hector | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor |

| Name | Contact Information |
|---|---|
| | San Francisco, CA 94111 |
| | 415-445-7444 |
| Borba, Taryn | Diamond Foods, Inc. |
| | 600 Montgomery Street, 13th Floor |
| | San Francisco, CA 94111 |
| | 415-445-7444 |
| Borges, Jacyln | 1945 Broadway #405 |
| | San Francisco, CA 94109 |
| | 562-243-4587 |
| Bothe, Marcey | Antioch, CA 94531 |
| | 925-437-9472 |
| Bowman, Johnathan | 1561 Artese Lane |
| | Stockton, CA 95206 |
| | 209-275-2372 |
| Boyles, Rick | Diamond Foods, Inc. |
| | 600 Montgomery Street, 13th Floor |
| | San Francisco, CA 94111 |
| | 415-445-7444 |
| Bream, Justin | Diamond Foods, Inc. |
| | 600 Montgomery Street, 13th Floor |
| | San Francisco, CA 94111 |
| | 415-445-7444 |
| Breland, Barbara | Diamond Foods, Inc. |
| | 600 Montgomery Street, 13th Floor |
| | San Francisco, CA 94111 |
| | 415-445-7444 |
| Brown, Brad A. | 331 Cabernet Drive |
| | Oakdale, CA 95361 |
| | 209-322-3298 |
| Brown, David | Diamond Foods, Inc. |
| | 600 Montgomery Street, 13th Floor |
| | San Francisco, CA 94111 |
| | 415-445-7444 |
| Bukowski, Daniel | 4575 Mangrove Drive, Unit 26 |
| | Dublin, CA 94568 |
| | 925-361-7223, 925-895-4178 |
| Burchell, Tom | Burchell Nursery |
| | 12000 State Highway 120 |
| | Oakdale, CA 95361 |
| | 209-845-8733 |
| Burke, Andrew | Diamond Foods, Inc. |
| | 600 Montgomery Street, 13th Floor |
| | San Francisco, CA 94111 |
| | 415-445-7444 |
| Burlando, Tom | 14599 East Eight Mile Road |
| | Linden, CA 95236 |
| | 916-744-1380, 916-607-9354 |
| Cai, Steven | 3443 Bathgate Lane |
| | San Jose, CA 95121 |
| | 408-564-9579 |
| Cammarano, Daniel | Diamond Foods, Inc. |
| | 600 Montgomery Street, 13th Floor |
| | San Francisco, CA 94111 |
| | 415-445-7444 |

| Name | Contact Information |
|------|---------------------|
| Cardel, Carlos | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Cartmell, Deb | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Casem, Secilia | 6220 Morgan Place, Apartment #113<br>Stockton, CA 95219<br>209-373-0415 |
| Castro, Willie | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Cauble, Jeff | Modesto, CA 95355<br>209-568-2765 |
| Cefalo, Ron | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Chan, Christina | 9759 Deep Water Lane<br>Stockton, CA 95219<br>209-662-1456, 209-474-0510 |
| Chavez, Anthony E. | 2350 East Stadium Drive<br>Stockton, CA 95205<br>209-944-9852 |
| Chin, John | 3005 Darius Lane<br>Modesto, CA 95355<br>209-521-3808, 209-614-0323 |
| Chips, MaRita | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Chiu, Teresa | 349 2nd Avenue, Apartment 5<br>San Francisco, CA 94118<br>415-209-4433 |
| Clements, Susan | Albertville, AL 35950<br>256-470-1113 |
| Collom, Drew | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Compesi, Ellen | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Conant, Joe | Wheatland, CA 95692<br>530-682-7392 |
| Cooney, Kevin | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Cope, Kyle | 1869 Lakeshore Drive |

| Name | Contact Information |
|------|---------------------|
| | Lodi, CA 95242 |
| Counceller, Andrew | 3413 Forest Terrace<br>Anderson, IN 46013<br>765-274-8598 |
| Coyne, John M. | 30 Country Walk<br>Shelton, Utah 06484<br>203-228-3062 |
| Crider, Jennifer | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Critelli, Steve | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Cudd, Bruce | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Cuevas, Yesenia | 246 East Emerson Avenue<br>Tracy, CA 95376<br>209-479-9519 |
| Damle, Ashley | Deloitte & Touche LLP<br>555 Mission Street<br>San Francisco, CA 94105<br>415-783-4000 |
| Darling, Dave | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Davis, Rhonda | LaPorte, TX 77571<br>832-671-2734 |
| Devera, Cindy | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| DeWalt, Michael | 2210 Crestwood Drive<br>Anderson, IN 46016<br>765-274-1435 |
| Dhillon, Sharon | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Dobretz, Jami | Stockton, CA 95219<br>209-263-1137 |
| Dominguez, Paul | 1823 Cherokee Road, Apartment #2<br>Stockton, CA  95205<br>209-808-6765 |
| Donaghy, Debra | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Doxey, Mike | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor |

| Name | Contact Information |
|------|--------------------|
|  | San Francisco, CA 94111<br>415-445-7444 |
| Drescher, Tammy | PO Box 444<br>Lodi, CA 95241<br>408-313-5057 |
| Dube, Milton | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Duenas, Maria | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Dunlap, Jessica | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Dunn, Spencer | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Eastham, Debra "Debbie" | 2801 Winchester Court<br>Stockton, CA 95209<br>209-473-7144, 209-598-0035 |
| Ehsan, Pat | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Enfinger, Rob | 134 Huron Street<br>Decatur, GA 30030<br>843-497-9742, 404-373-8351 |
| Estrada-Cartagena, Desiree R | 16708 Forty Niner Trail<br>Lathrop, CA 95330<br>209-915-8230 |
| Estrella, Dayanara J. | 2910 Sunset Way<br>Tracy, CA 95376<br>209-346-9723 |
| Everhart, Amy | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Fedora, Sib | Fedora Farms<br>2551 Farmlan Road<br>Meridian, CA 95957 |
| Feely, Patrick "Bo" | 9139 Thoroughbred Run<br>Fairhope, AL 36532<br>251-986-7165 |
| Ferreyra, Fabian | 3238 Grayhouse Lane<br>Stockton, CA 95206<br>209-471-6643 |
| Field, Jonathan W | Walnut Bargaining Association<br>330 Vernon Street<br>Roseville, CA 95678<br>916-645-8835 |

| Name | Contact Information |
|------|---------------------|
| Fitzgerald, Mike | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Flaherty, Ryan | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Flores-Gueits, Iris | PO Box 1293<br>Aguas Buenas, PR 00703<br>787-732-4216 |
| Follas, Cameron | 2261 Westfarthing Way Northwest<br>Salem, OR 97304<br>503-507-0742 |
| Ford, Gary | 4106 Saint Andrews Drive<br>Stockton, CA 95219<br>209-952-9971 |
| Fraley, Ann | 133 Jessie Avenue<br>Manteca, CA 95337<br>209-624-6552 |
| Frazier, Didi | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Frydrych, Elizabeth | 151 Petaluma Boulevard South,<br>Apartment 319<br>Petaluma, CA 94952<br>707-480-6800 |
| Fuchs, William | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Funfar, Erik | 13135 Golondrina Street<br>Moorpark, CA 93021<br>805-529-0878 |
| Gagante, Lalaine | 5485 Stockton Loop<br>Livermore, CA 94550<br>209-207-1744 |
| Gallaspie, Duriamus | Stockton, CA 95206 |
| Garcia, Linda | 209-941-8631, 209-473-8335 |
| Gaskins, Kristine L. | 793 South Tracy Boulevard,<br>Apartment #115<br>Tracy, CA 95376<br>209-833-7431, 209-969-4258 |
| Gilbert, Sr., John "Jack" | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Glanz, Andrew | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Gonsalves, Judy | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor |

| Name | Contact Information |
|------|---------------------|
|  | San Francisco, CA 94111<br>415-445-7444 |
| Gonzales, Pamala | 1884 Pennebaker Way<br>Manteca, CA 95336<br>209-679-8065 |
| Gorang, Greg | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Grant, Molly | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Green, Tanisha | 1846 Gordon Verner Circle<br>Stockton, CA 95206<br>209-983-0687, 209-910-2271 |
| Greer, Kate | 10214 Lauren Pass<br>Fishers, IN 46037<br>317-576-1884, 317-318-5423 |
| Grudus, Adam | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Gutierrez, Angelica M. | 1717 South American Street<br>Stockton, CA 95206<br>209-688-4277 |
| Halio, Seth | 4209 Forest Glen Place<br>Castro Valley, CA 94546<br>510-583-0074, 415-641-4776 |
| Hamilton, Jaonna | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Hammond, Kevin | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Hannenberg, Craig | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Hanson, Marie | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Hasselbach, Matt | 2717 Tradition Way<br>Modesto, CA 95355<br>209-551-4949, 209-823-2531 |
| Hathaway, Dan | 10777 East 900 North Road<br>Grant Park, IL 60940 |
| Hays, Hilary | 6318 Fillmore Avenue<br>Stockton, CA 95207<br>209-952-1406 |
| Heath, Janel | Copperopolis, CA 95228 |

| Name | Contact Information |
|------|---------------------|
| | 209-409-4011 |
| Hedrick, Del | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Heidman, Eric | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Henrikson, Brian | 2901 14th Street<br>Sacramento, CA 95818<br>916-947-7374 |
| Henriques, Maryann | 209-467-6247 |
| Hernandez, David J. | 1739 South Sutter Street<br>Stockton, CA 95206<br>209-403-8898, 209-478-0996 |
| Hernandez, Juan Carlos | 735 East Sonora Street<br>Stockton, CA 95206<br>2094518630 |
| Hickenbottom, Ed | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Hiedeman, Gary L. | 3698 Whispering Creek Circle<br>Stockton, CA 95219<br>209-451-3650, 209-603-5675 |
| Hiett, Matt | Deloitte & Touche LLP<br>555 Mission Street<br>San Francisco, CA 94105<br>415-783-4000 |
| Ho, Jannie | 3020 26th Avenue<br>San Francisco, CA 94132<br>415-963-1528 |
| Hollingshead, Becky J. | 6526 Sparrowood Drive<br>Indianapolis, IN 46236<br>317-723-3418, 740-645-3530 |
| Holmes, Steve | 21261 Carlton Court<br>Noblesville, IN 46060<br>317-877-2835 |
| Hour, Savoeuth | 4404 Manchester Avenue, Apartment 22<br>Stockton, CA 95207<br>209-430-6542 |
| Houser, Hillary | 506 Oldstone Place<br>Simi Valley, CA 93065<br>805-581-0937 |
| Hrdy, Dan | Citrona Farms<br>21440 County Road 87<br>Winters, CA 95694<br>530-661-9225 |
| Hughes, Bret | Pittsburgh, PA 15222<br>412-720-1392 |
| Hulse, Gerald | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111 |

| Name | Contact Information |
|------|--------------------|
|  | 415-445-7444 |
| Hunday, Bill | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Iagulli, Joe | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Intlekofer, Greg | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Irvine, Gene | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Jacobus, Fred | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Jacques, Hank | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| James, Ashley | 765-635-5830 |
| Jankauskas, Steve | 636 Pavilion Drive<br>Fairfield, CA 94534<br>209-640-9989 |
| Jenkins, Danny | 1198 Prospector Trail<br>South Lake Tahoe, CA 96150<br>530-600-1313 |
| Jenkins, Robert Lee | P.O. Box 184<br>Boaz, AL 35957<br>256-706-9686, 256-593-2374 |
| Jeong, Russell L | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Johnson, Jerry | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Johnson, Ken | Stockton, CA 95204<br>209-298-9864 |
| Johnson, Lloyd J. | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Jones, Delphina | 606 Cimarron Avenue<br>Stockton, CA 95210<br>209-688-2846 |
| Jones, Jonathan Andrew | 1737 Cherry Court<br>Stockton, CA 95206 |

| Name | Contact Information |
|---|---|
| | 209-808-6990 |
| Juarez, Charlene | 1823 Cherokee Road, Apartment #2<br>Stockton, CA 95205<br>209-298-6884 |
| Kafkares, Sally | 1830 Berry Road<br>Rio Oso, CA 95674<br>530-633-0476 |
| Keifer, Matthew | 727 Hawthorne Avenue Northeast<br>Salem, OR 97305<br>971-239-3207 |
| Keiper, Samuel J | 338 McEwen Road<br>Waterford, CA 95386<br>2098741502 |
| Kelly, Karen | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Keltner, Michael | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Kern, David | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Khim, Savath | 209-986-4615 |
| Kietzke, Lori | Lodi, CA 95240<br>209-957-1340, 209-887-2222<br>209-483-0065 |
| Kim, Stephen E. | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Kimble, Jon | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Kramer, Vanessa | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Kriebel, Scott P. | Deloitte & Touche LLP<br>555 Mission Street<br>San Francisco, CA 94105<br>415-783-4000 |
| Krieger, Eleni | 4135 Pebble Beach Drive<br>Stockton, CA 95219<br>209-612-8259, 209-688-6892 |
| Krueger, Kevin | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Kulling, David | Manteca, CA 95336<br>209-639-3121 |

| Name | Contact Information |
|------|---------------------|
| La Barbera, Ashley | 6394 Calida Way<br>Mason, OH 45040<br>612-202-1641 |
| Lampeoni, Sandra | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Landman-Pappas, Inna ("Eena") | 715 Watson Canyon Court, Apartment 108<br>San Ramon, CA 94582<br>602-625-8377, 925-365-1505, 925-553-7658 |
| Langdon, Timothy G. | 4777 Grouse Run Drive<br>Stockton, CA 95207<br>209-451-8328 |
| Langford, Matthew | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Larioque, Vincent E. | 802 West Weber Avenue, Apartment #130<br>Stockton, CA 95203<br>209-565-4794 |
| LaRosa, Jonathon | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Lea, Robert M. | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Leal, Miguel | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Leon, Guadalupe "Lupe" | 2130 Mountain Boulevard, Apartment 104<br>Oakland, CA 94611<br>510-325-0319 |
| Lightner-Castillo, Ariana | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Limon, Aaron J. | 2224 East Lafayette Street<br>Stockton, CA 95205<br>209-898-5292 |
| Lindauer, Earl | California Walnut Board<br>101 Parkshore Drive, Suite 250<br>Folsom, CA 95630<br>916-932-7070 |
| Lindsay, Steve | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Liu, Annie | 415-584-5551, 415-983-2700 |
| Long, John O. | 14229 Calming Waters<br>Fishers, IN 46038 |

| Name | Contact Information |
|------|--------------------|
| | 317-670-3403 |
| Lopez, Giovanni | 1902 North Broadway Avenue<br>Stockton, CA 95205<br>209-954-8760 |
| Lopez, Jorge | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Mackrani, Deepa K. | 2530 Promenade Way<br>Riverbank, CA 95367<br>209-373-7367 |
| Malone, Marinda | 2353 Foxhill Court, Apartment A<br>Indianapolis, IN 46228<br>317-693-4143 |
| Mancha, Elizabeth | 2620 Home Street<br>Stockton, CA<br>209-346-8569 |
| Manhire, Gene | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Martinez, Cherie | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Mastorides, Arist | 7072 Larkspur Lane<br>Liberty Township, OH 45044<br>513-319-9140, 248-613-2552 |
| McCarthy, Joe | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| McGaughey, Martha | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| McKenzie, Larry | 1536 Artese Lane<br>Stockton, CA 95206<br>209-688-8793 |
| Mecklenburg, Pat | 3620 Gallagher Road<br>Rio Oso, CA 95674<br>530-635-0504 |
| Merrill, Julie | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Miller, Elena | 910 Elmira Avenue<br>Stockton, CA 95206<br>209-390-7620 |
| Miller, Elizabeth | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Mills, Tom | 18 Lommel Court |

| Name | Contact Information |
|---|---|
| | Walnut Creek, CA 94597<br>925-930-6237, 925-482-4323 |
| Mize, Carla | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Mompean, Peter Jacob | 816 South Mills Avenue<br>Lodi, CA 95242<br>209-479-2649 |
| Monroe, Cory | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Moore, Jessica | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Moorman, Dennis | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Moreno, Joseph L | 5940 Arabian Place<br>Stockton, CA 95210<br>209-952-5611, 209-603-0808 |
| Morrow, Leslie A. | 3801 Gregory Way<br>Stockton, CA 95209<br>209-957-9572 |
| Moua, Charles | 520 East 5th Street<br>Stockton, CA 95206<br>209-298-9517 |
| Moyers, Linda | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Moynihan, Andrew | 10 Lemuel Cobb Road<br>Plympton, MA 02367<br>781-585-8495 |
| Murphy, Michael | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Mussell, Dennis | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Newman, Dan | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Ngo, Jeff | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Nixon, Grant | Deloitte & Touche LLP |

| Name | Contact Information |
|------|---------------------|
|  | 555 Mission Street<br>San Francisco, CA 94105<br>415-783-4000 |
| Ochoa, German | 2424 East 6th Street<br>Stockton, CA 95206<br>209-993-4943 |
| O'Driscoll, Lisa | 715 Grand Street<br>Alameda, CA 94501<br>415-205-8124 |
| Ojo, Todd | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Okeady, Virginia | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Olivas, John | Rancho Notso Grande<br>5051 12th Avenue<br>Hanford, CA 93230 |
| Ong, Phu | San Leandro, CA 94579<br>510-912-2928 |
| Orangi, Hanieh | Santa Clara, CA 95051<br>619-807-0040 |
| Orok, Ika | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| O'Rourke, Rachel | 3505 Fallon Street, Apartment 21B<br>Bozeman, MT 59718<br>650-302-5290, 406-586-1321<br>650-712-4403 |
| Osakue, Spencer O. | 1570 Sage Sparrow Avenue<br>Manteca, CA 95337<br>209-679-0811 |
| Oudom, John | 7667 Kelley Drive Apt 1<br>Stockton, CA 95207<br>209-639-0134 |
| Palm, Ryan | 239 6 ½ Avenue<br>Kingsburg, CA 93631<br>559-897-8624 |
| Panela, Brenda | 2130 Ascot Drive, Apartment 115<br>Moraga, CA 94556<br>925-878-9273 |
| Parrish, John | 373 Santa Clara Street<br>Stockton, CA 95207<br>209-932-9149 |
| Patee, Pamela | 35 Genie Way<br>Lodi, CA 95242<br>209-339-9173 |
| Peralta, John | 1823 East Post Road<br>Beloit, WI 53511<br>608-247-4680 |
| Perez, Joseph | P.O. Box 690965 |

| Name | Contact Information |
|------|--------------------|
| | Stockton, CA 95269<br>209-957-4836 |
| Perkins, Gregory | 18 Harbor Ridge Road<br>Mashpee, MA 02649<br>508-539-8503, 508-539-1938<br>508-539-8502 |
| Perotta, Bob | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Perreault, Katie | 13749 Flagstone Street<br>Lathrop, CA 95330<br>209-954-8458, 209-351-1122 |
| Peskin, Timon | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Phillips, Robert | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Pierce, Janet M. | 1437 South California Street<br>Stockton, CA 95206<br>702-748-1745 |
| Pogoso, Donna May | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Posey, Cathy | 1208 Cabrillo Avenue<br>Burlingame, CA 94010 |
| Powell, Meredith Ann | 1032 West Willow Street<br>Stockton, CA 95203<br>209-603-8024 |
| Prasad, Swaran | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Price, Hayden | 1321 Tulloch Drive<br>Tracy, CA 98304<br>209-832-2963 |
| Pulu, Tavake A. | P.O. Box 5302<br>Stockton, CA 95205<br>209-346-2497 |
| Quijalvo, John | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Quijalvo, Shiala A. | 1655 South America Street<br>Stockton, CA 95206<br>209-323-0164 |
| Ram-Lal, Priya | Stockton, CA 95219<br>209-981-2207 |
| Ramos, Abegale | 13749 Flagstone Street<br>Lathrop, CA 95330 |

| Name | Contact Information |
|------|--------------------|
| | 209-451-1786, 209-640-9208 |
| Ramos, Todd | California Walnut Commission<br>101 Parkshore Drive, Suite 250<br>Folsom, CA 95630<br>916-932-7070 |
| Randall, Rhonda | 8311 Potomac Drive<br>Vancouver, WA 98664<br>360-828-5187 |
| Rashid, Ahman | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Raymond, Christina | 655 Hyde Street, Apartment #6<br>San Francisco, CA 94109<br>415-627-7674, 408-621-4151 |
| Richardson, Joy | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Rivas, Maria | 937 South Sullivan<br>Stockton, CA 95205<br>209-922-9563 |
| Roach, Jr., Roy F. | 1765 Black Oak Drive<br>Stockton, CA 95207<br>209-478-5402 |
| Robson, Bob | Buchanan Holow Nut Co.<br>6510 Minturn Road<br>Le Grand, CA 95333<br>800-532-1500 |
| Royce-Powell, Christy | 418 Burlington Avenue<br>Billings, MT 59101<br>530-336-6243, 530-356-0575 |
| Ruelas, Ana L. | 733 Privet Place<br>Manteca, CA 95336<br>209-518-5554 |
| Ruiz, Fernando | 2209 East Roosevelt Street<br>Stockton, CA 95205<br>209-751-7679 |
| Russo, Bill | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Salazar, Alicia | 209-622-6544 |
| Samelson, Donna | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Sanchez, Victoria | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Sandoval, Gabriel | 512 Liberty Way<br>Stockton, CA 95219<br>209-474-1555, 209-351-1450 |

| Name | Contact Information |
|------|---------------------|
| Santillano, John | 7720 Masters Court<br>Elk Grove, CA 95758<br>209-544-1953 |
| Santoyo, Teresa G. | 910 Elmira Avenue<br>Stockton, CA 95206<br>209-462-8953 |
| Savage, Janet | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Schneiter, Victoria | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Segre, Linda | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Shank, Rob | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Shasky, Adam | Shasky Farms<br>11492 East Savana Road<br>Le Grand, CA 95333<br>209-389-0430 |
| Sherwood, Lynne | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Sibert, Stephen | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Simmons, Joelle | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Sindal, Gurminder S. | 11877 Weathered Edge Drive<br>Fishers, IN 46037<br>317-484-7334 |
| Singh Lamba, Kanwar Pratap | 1032 Old Peachtree Road, Suite 401<br>Lawrencevile, GA 30043<br>678-923-3832 |
| Singleton, Stacy | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Skelton, Angela | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Smith, Thomas L. | 1105 Savage Road Northeast<br>Salem, OR 97301 |

| Name | Contact Information |
|---|---|
|  | 503-409-4363 |
| Somers, Stephanie | 461 West 25th Avenue<br>San Mateo, CA 94403<br>650-212-1778, 415-225-3803 |
| Sori, Chris | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Sory, Christian | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Sosa, Gloria | 1139 Lucio Street<br>Manteca, CA 95336<br>209-545-4694, 209-481-0593<br>209-483-9037 |
| Soto, Jose F. | 2223 East Lafayette Street<br>Stockton, CA 95205<br>719-359-2070 |
| Springer, Nate | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Stephens, Preston J. | 1168 6th Street Northwest<br>Salem, OR 97304<br>971-209-8646 |
| Stilwell, Larry | Lockeford, CA 95237<br>209-727-0408 |
| Strube, Karl | Deloitte & Touche LLP<br>555 Mission Street<br>San Francisco, CA 94105<br>415-783-4000 |
| Suhling, Cathleen | 3836 North Richmond Street, Apartment 2<br>Chicago, IL 60618<br>773-267-8920 |
| Tablante, Elmer | 2069 Sharkson Court<br>Stockton, CA 95210<br>209-938-8920 |
| Tafoya, Ricardo E. | 754 Everglade Way<br>Stockton, CA 95215<br>209-623-7192 |
| Talbot, Ron | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Tango, Charlyn | 1593 Venice Circle<br>Stockton, CA 95206<br>209-598-6685 |
| Taresh, John | 1830 Berry Road<br>Rio Oso, CA 95674<br>530-633-0476 |
| Thomason, Jeff | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111 |

| Name | Contact Information |
|------|---------------------|
| Thompson, Kelly | 415-445-7444 |
| | P.O. Box 29 |
| | French Camp, CA 95231 |
| | 209-969-3933 |
| Tomimbang, Radonis | 5734 Krissi Court |
| | Stockton, CA 95212 |
| | 209-676-7375 |
| Torres, Monique A. | 509 South Pershing Avenue |
| | Stockton, CA 95203 |
| | 209-594-9278 |
| Tower, Jenay | Diamond Foods, Inc. |
| | 600 Montgomery Street, 13th Floor |
| | San Francisco, CA 94111 |
| | 415-445-7444 |
| Travis-Stone, Sara | Diamond Foods, Inc. |
| | 600 Montgomery Street, 13th Floor |
| | San Francisco, CA 94111 |
| | 415-445-7444 |
| Trejo, Juan | 630 Butte Avenue |
| | Modesto, CA 95358 |
| | 209-451-7868 |
| Tropp, Jim | Diamond Foods, Inc. |
| | 600 Montgomery Street, 13th Floor |
| | San Francisco, CA 94111 |
| | 415-445-7444 |
| Turpin, Judy | Diamond Foods, Inc. |
| | 600 Montgomery Street, 13th Floor |
| | San Francisco, CA 94111 |
| | 415-445-7444 |
| Tuttle, Brooke | Diamond Foods, Inc. |
| | 600 Montgomery Street, 13th Floor |
| | San Francisco, CA 94111 |
| | 415-445-7444 |
| Tzou, Olivia | Diamond Foods, Inc. |
| | 600 Montgomery Street, 13th Floor |
| | San Francisco, CA 94111 |
| | 415-445-7444 |
| Van Otterloo, E.B. | Diamond Foods, Inc. |
| | 600 Montgomery Street, 13th Floor |
| | San Francisco, CA 94111 |
| | 415-445-7444 |
| Vang, Phia | 8017 Diana Marie Drive |
| | Stockton, CA 95210 |
| | 209-951-4580 |
| Vega, David A. | 4520 Trinidad Court |
| | Stockton, CA 95210 |
| | 209-244-6026 |
| Wafer, Janee ("Ja Nay") Dominque | Deloitte & Touche LLP |
| | 555 Mission Street |
| | San Francisco, CA 94105 |
| | 415-783-4000 |
| Waggoner, Stan | 209-847-2460 |
| Walker, John M. | 527 Zenith Ridge Drive |
| | Danville, CA 94506 |

| Name | Contact Information |
|------|--------------------|
| | 925-309-4712 |
| Wallace, Matt | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Wang, Hairu | 25884 SW Canyon Creek Rd, Apt. #J303<br>Wilsonville, OR 97070<br>971-678-1879 |
| Warner, Lisa | California Walnut Board<br>101 Parkshore Drive, Suite 250<br>Folsom, CA 95630<br>916-932-7070 |
| Warren Jr., Glen C. | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Warren, John | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Warren, Joseph | 2010 Market Street<br>Oakland, CA 94607<br>215-410-3483 |
| Watkins, Robert Sanchez | 1708 Williamson Street<br>Guntersville, AL  5976<br>256-582-2613, 256-673-0100 |
| Williams, James | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Wills, Domanic | Anderson, IN 46016<br>765-203-8422 |
| Wilske, Craig R. | 4505 Jefferson Street<br>Napa, CA 94558<br>707-252-0613 |
| Wilson, Anthony D. | Stockton, CA 95209<br>209-271-6450 |
| Wolf, Dick | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Wolford, Richard G. | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Wolfram, Pamela | 3181 Amberfield Circle<br>Stockton, CA 95219<br>209-473-2573 |
| Woo, Ed | 510-582-4682, 510-537-0835<br>510-690-1045 |
| Wood, Jocelyn | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |

| Name | Contact Information |
|---|---|
| Wood, Sheree R | 966 Colgone Court<br>Lodi, CA 95242<br>209-368-9434 |
| Wood, Steve M. | 1510 Alamo Drive, Apartment #107<br>Vacaville, CA 95687<br>707-685-2228 |
| Wright, Bethany | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Wright, Charles | 880 East F Street, Apartment #27<br>Oakdale, CA 95361<br>209-848-0987, 809-918-7361 |
| Wyrick, Charmia | 25 Keith Drive<br>Battle Creek, MI 49037<br>269-420-0661, 269-420-0986 |
| Yabumoto, Justin | 1397 David Lane<br>Milpitas, CA 95035<br>408-506-1445 |
| Yost, Matt | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Zaffarano, Steve | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Zenney, Jake | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Zettle, Michelle | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Zollars, Robert J. | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |
| Zong, Sam (Yong) | Diamond Foods, Inc.<br>600 Montgomery Street, 13th Floor<br>San Francisco, CA 94111<br>415-445-7444 |

## D.   **Additional Third Parties**

The following entities and individuals are believed to have information concerning the matters alleged in the Complaint. In many instances, Defendants possess more

information to enable them to determine contact information for relevant offices/divisions of these entities and individuals.

1. Auditor

Deloitte & Touche LLP
c/o Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111
Main:  415-393-2000
Fax:    415-393-2286

2. Law Firms

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Main:  213-229-7000

3. Securities Analysts

a. BB&T Capital Markets
901 E. Byrd Street
Riverfront Plaza West
Richmond, VA 23219
Main:   804-649-3966

b. Craig-Hallum Capital Group LLC
222 South Ninth Street, Suite 350
Minneapolis, MN 55402
Main:   612-334-6300

c. Credit Suisse – North America
Eleven Madison Avenue
New York, NY 10010
Main:   212-325-2000

d. DataMonitor
52 Vanderbilt Avenue, 7th Floor
New York, NY 10017
Main:   212-686-7400

e. Deutsche Bank Securities Inc.
60 Wall Street
New York, NY 10005
Main:   212-250-2500

f.  Disclosure Insight, Inc.
    3200 Harbor Lane, Suite 200
    Plymouth, MN 55447
    Main:  763-595-0900

g.  GlobalData
    425 California Street, Suite 1300
    San Francisco, CA 94104
    Main:  415-800-0336

h.  ICD Research
    John Carpenter House
    7 Carmelite Street
    London, EC4Y OBS
    United Kingdom
    Main:  44-0-20-7336-5200

i.  Janney Montgomery Scott LLC
    1717 Arch Street
    Philadelphia, PA 19103
    Main:  215-665-6000

j.  Jeffries & Company, Inc.
    520 Madison Avenue, 10th Floor
    New York, NY 10022
    Main:  212-284-2300

k.  KeyBanc Capital Markets
    Key Tower
    127 Public Square
    Cleveland, OH 44114
    Main:  216-689-3723

l.  New Constructs LLC
    210 Jamestown Park, Suite 201
    Brentwood, TN 37027
    Main:  615-377-0443

m. RBC Capital Markets Corp.
    One Liberty Plaza
    165 Broadway
    New York, NY 10006
    Main:  212-858-7000

n.  Sadif-Investment Analytics
    Marques Mendes & Associados Lda.
    Rua Domingos F. Pinto Basto, 17
    3830-176 Ilhavo, Portugal,

1                      Main:   351-234-322-037

                o.   SunTrust Robinson Humphry
                      3333 Peachtree Road N.E.
                      Atlanta, GA 30326
                      Main:   404-926-5572

                p.   ValuEngine, Inc.
                      2425 Pineapple Avenue, Suite 308
                      Melbourne FL 32935
                      Main:   800-381-5576

                q.   Wright Investors' Service
                      440 Wheelers Farms Road
                      Milford, CT 06461
                      Main:   203-783-4343

        4.     Others

                a.   KPMG LLP
                      Suite 1400
                      55 Second Street
                      San Francisco, CA 94105
                      Main:   415-963-5100

                b.   The Procter & Gamble Company
                      One Procter & Gamble Plaza
                      Cincinnati, OH 45202
                      Main:   513-983-1100

                c.   The Blackstone Group L.P.
                      345 Park Avenue
                      New York, NY 10154
                      Main:   212-583-5000

                d.   Oaktree Capital Management, L.P.
                      333 South Grand Ave., 28th Floor
                      Los Angeles, CA 90071
                      Main:   213-830-6300

                e.   Bank of America Merrill Lynch
                      555 California Street
                      San Francisco, CA 94104
                      Main:   800-432-1000

                f.   Morgan Stanley
                      1585 Broadway
                      New York, NY 10036

Main:  212-761-4000

## II.   DOCUMENTS

Defendants possess far more information to enable them to determine the location of documents and other material referenced by Rule 26(a)(1)(A)(ii).  Pursuant to Rule 26(a)(1)(A)(ii), the following is a description by category of documents, electronically stored information, and tangible things that may be in the possession, custody or control of Lead Plaintiff, excluding any impeachment evidence, that Lead Plaintiff may use to support its claims.  As discovery is ongoing, Lead Plaintiff reserves the right to amend or supplement this list pursuant to the Federal Rules of Civil Procedure:

1. News and other media articles concerning Diamond, all of which are available on Westlaw, Dow Jones, and other public sources;

2. News and other media articles concerning the walnut industry, all of which are available on Westlaw, Dow Jones, and other public sources;

3. Diamond's press releases during the relevant period;

4. Transcripts of Diamond's conference calls during the relevant period;

5. Diamond's public filings with the SEC, which may be accessed on the Internet at www.sec.gov;

6. Various securities analysts' reports regarding Diamond obtained from public sources; and

7. Trading records of Lead Plaintiff.

## III.   DAMAGES

Lead Plaintiff seeks compensatory damages, attorneys' fees and reimbursement of expenses, and other relief as the Court deems proper.  At the time designated by the Court, Lead Plaintiff's expert will opine on the monetary damages that the Class seeks and provide an expert opinion in compliance with Fed. R. Civ. P. 26 (a)(2).

1

## IV.    **INSURANCE**

2

Lead Plaintiff does not hold, and is not aware of any, insurance policies applicable

3

to this proceeding.

4

Dated:  December 14, 2012                    Respectfully submitted,

5

6                                            By: /s/ John F. Harnes
                                                  John F. Harnes
7

8       CHITWOOD HARLEY HARNES LLP
        John F. Harnes (admitted *pro hac vice*)
9       Gregory E. Keller (admitted *pro hac vice*)
        1350 Broadway, Suite 908
10      New York, New York 10018
        Tel.: (917) 595-4600
11      JHarnes@chitwoodlaw.com
        GKeller@chitwoodlaw.com

12      Robert W. Killorin (admitted *pro hac vice*)
        Meryl W. Roper (admitted *pro hac vice*)
13      Ze'eva Kushner Banks (admitted *pro hac vice*)
        2300 Promenade II
14      1230 Peachtree Street, N.E.
        Atlanta, Georgia 30309
15      Tel: (404) 873-3900
        Fax: (404) 876-4476
16      RKillorin@chitwoodlaw.com
        MRoper@chitwoodlaw.com
17      ZBanks@chitwoodlaw.com

18      *Class Counsel for Lead Plaintiff the Mississippi*
        *Public Employees' Retirement System*
19

20      LIEFF CABRASER HEIMANN & BERNSTEIN
        LLP
21

22      Richard M. Heimann
        Joy A. Kruse
        275 Battery Street, 29th Floor
23      San Francisco, California  94111- 3339
        Telephone: (415) 956-1000
24      Facsimile: (415) 956-1008
        rheimann@lchb.com
25      jakruse@lchb.com

26      *Local Counsel for Lead Plaintiff the Mississippi Public*
        *Employees' Retirement System*
27

28

# Exhibit 5

EXHIBIT
21
_Neville_
4-3-13   CMR

John F. Harnes (admitted *pro hac vice*)
Gregory E. Keller (admitted *pro hac vice*)
CHITWOOD HARLEY HARNES LLP
1350 Broadway, Suite 908
New York, New York 10018
Tel: (917) 595-4600
JHarnes@chitwoodlaw.com
GKeller@chitwoodlaw.com

Robert W. Killorin (admitted *pro hac vice*)
Meryl W. Roper (admitted *pro hac vice*)
Ze'eva Kushner Banks (admitted *pro hac vice*)
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 873-3900
Fax: (404) 876-4476
RKillorin@chitwoodlaw.com
MRoper@chitwoodlaw.com
ZBanks@chitwoodlaw.com

Richard M. Heimann
(State Bar No. 63607)
Joy A. Kruse
(State Bar No. 142799)
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, California 94111- 3339
Tel: (415) 956-1000
Fax: (415) 956-1008
rheimann@lchb.com
jakruse@lchb.com

Class Counsel for Lead Plaintiff the Mississippi
Public Employees' Retirement System

Local Counsel for Lead Plaintiff
Mississippi Public Employees' Retirement
System

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE DIAMOND FOODS, INC., SECURITIES LITIGATION | Case No.: 11-cv-05386-WHA |
|  | **LEAD PLAINTIFF'S AMENDED INITIAL DISCLOSURES** |
| This Document Relates to:<br><br>All Actions | |

Pursuant to Federal Rules of Civil Procedure 26(a)(1), Lead Plaintiff Mississippi

Public Employees' Retirement System ("Lead Plaintiff"), on behalf of itself and all

persons and entities who purchased the publicly traded securities of Diamond Foods, Inc.

("Diamond") during the period from October 5, 2010 though and including February 8, 2012, hereby submits the following Amended Initial Disclosure Statement.

While much of the following information is primarily within the knowledge and control of Defendants Diamond, Michael J. Mendes and Steven M. Neil ("Defendants"), this Initial Disclosure Statement is made upon information currently known to Lead Plaintiff and is made without prejudice to Lead Plaintiff's right to use before or during trial, or to produce during discovery, such additional data, information or documents as are: (a) subsequently discovered; (b) subsequently determined to be relevant to the claims or alleged defenses; or (c) subsequently determined to have been omitted from this or any supplemental or amended disclosure statements.

Lead Plaintiff hereby reserves its right to further amend and/or supplement at any time this Amended Initial Disclosure Statement and the information provided pursuant to its initial disclosure obligations.

Lead Plaintiff hereby expressly reserves all objections to the use of this Amended Initial Disclosure Statement, or any of the information referenced herein, in any other proceeding. By referring to documents and individuals in the initial disclosure process, Lead Plaintiff makes no representations or concessions regarding the relevancy or appropriateness of any particular documents or information and reserves all objections related thereto.

By referring to documents and individuals in the initial disclosure process, Lead Plaintiff does not waive its right to object to discovery requests on any basis, including, but not limited to, overbreadth, burden, attorney-client privilege, the attorney work-product doctrine, or any other lawful protection from disclosure.

## I.   INDIVIDUALS AND ENTITIES LIKELY TO HAVE DISCOVERABLE INFORMATION

Defendants possess far more information to enable them to determine who is likely to possess discoverable information relevant to Lead Plaintiff's claims.  Identified below, however, are additional persons Lead Plaintiff believes may, or are likely to have, discoverable information related to the claims in this action that Lead Plaintiff may use to support its claims, excluding impeachment witnesses.  As discovery is ongoing, Lead Plaintiff reserves the right to further supplement or amend this list pursuant to the Federal Rules of Civil Procedure and/or Local Rules for the Northern District of California.

### A.   Lead Plaintiff

The following individuals at the Mississippi Attorney General's office and Mississippi Public Employees' Retirement System, located at 550 High Street, Suite 1200, Jackson, MS 39201, and 429 Mississippi Street, Jackson, MS 39201, respectively, possess knowledge of the complaint and the substance of the claims in the lawsuit and/or transactions in Diamond's publicly traded securities during the Class Period:

Chief of Staff Geoffrey C. Morgan;

Special Assistant Attorney General George W. Neville;

Special Assistant Attorney General S. Martin Millette III;

Special Assistant Attorney General Jane Mapp;

Pat Robertson, Executive Director of the Mississippi Public Employees' Retirement System; and

Lorrie Tingle, Chief Investment Officer of the Mississippi Public Employees' Retirement System.

Dated:  February 18, 2013

Respectfully submitted,

By: /s/ John F. Harnes
           John F. Harnes

CHITWOOD HARLEY HARNES LLP
John F. Harnes (admitted *pro hac vice*)
Gregory E. Keller (admitted *pro hac vice*)
1350 Broadway, Suite 908
New York, New York 10018
Tel: (917) 595-4600
JHarnes@chitwoodlaw.com
GKeller@chitwoodlaw.com

Robert W. Killorin (admitted *pro hac vice*)
Meryl W. Roper (admitted *pro hac vice*)
Ze'eva Kushner Banks (admitted *pro hac vice*)
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 873-3900
Fax: (404) 876-4476
RKillorin@chitwoodlaw.com
MRoper@chitwoodlaw.com
ZBanks@chitwoodlaw.com

*Class Counsel for Lead Plaintiff the Mississippi
Public Employees' Retirement System*

LIEFF CABRASER HEIMANN & BERNSTEIN
LLP

Richard M. Heimann
Joy A. Kruse
275 Battery Street, 29th Floor
San Francisco, California  94111- 3339
Tel: (415) 956-1000
Fax: (415) 956-1008
rheimann@lchb.com
jakruse@lchb.com

*Local Counsel for Lead Plaintiff the Mississippi Public
Employees' Retirement System*

# Exhibit 6

John F. Harnes (admitted *pro hac vice*)
Gregory E. Keller (admitted *pro hac vice*)
1350 Broadway, Suite 908
New York, New York 10018
Tel: (917) 595-4600
JHarnes@chitwoodlaw.com
GKeller@chitwoodlaw.com

Robert W. Killorin (admitted *pro hac vice*)
Meryl W. Roper (admitted *pro hac vice*)
Ze'eva Kushner Banks (admitted *pro hac vice*)
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 873-3900
Fax: (404) 876-4476
RKillorin@chitwoodlaw.com
MRoper@chitwoodlaw.com
ZBanks@chitwoodlaw.com

Class Counsel for Lead Plaintiff Mississippi Public
Employees' Retirement System

Richard M. Heimann
(State Bar No. 63607)
Joy A. Kruse
(State Bar No. 142799)
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, California  94111- 3339
Tel: (415) 956-1000
Fax: (415) 956-1008
rheimann@lchb.com
jakruse@lchb.com

Local Counsel for Lead Plaintiff
Mississippi Public Employees' Retirement
System

**EXHIBIT**
23
Neville
4-3-13   CAR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE DIAMOND FOODS, INC., SECURITIES LITIGATION | Case No.: 11-cv-05386-WHA |
| | **LEAD PLAINTIFF MISSISSIPPI PUBLIC EMPLOYEES' RETIREMENT SYSTEM'S RESPONSES AND OBJECTIONS TO DEFENDANT DIAMOND FOODS, INC.'S FIRST SET OF INTERROGATORIES** |
| This Document Relates to: | |
| All Actions | |

TO:   Diamond Foods, Inc. by and through its attorney of record, Catherine D. Kevane, Fenwick & West LLP, 555 California Street, 12th Floor, San Francisco, CA 94104

PLEASE TAKE NOTICE THAT Lead Plaintiff Mississippi Public Employees' Retirement System ("Lead Plaintiff") hereby responds to Defendant Diamond Foods, Inc.'s ("Diamond" or "Defendant") First Set of Interrogatories to Lead Plaintiff Mississippi Public Employees' Retirement System ("First Interrogatories") pursuant to the provision to Rule 33 of the Federal Rules of Civil Procedure, as follows:

## GENERAL OBJECTIONS

Lead Plaintiff makes the following objections to Diamond's First Interrogatories:

1.    Lead Plaintiff objects to the First Interrogatories and the "Definitions" and "Instructions" to the extent they exceed the permissible scope of Rules 23, 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of California (the "Local Rules").

2.    Lead Plaintiff objects to the First Interrogatories to the extent they seek information protected by various privileges and protections, including the attorney-client privilege, the work-product doctrine, and any other legally recognized privilege and/or protection.

3.    Lead Plaintiff objects to the First Interrogatories to the extent they are vague, ambiguous or incomprehensible and, therefore, require Lead Plaintiff to engage in conjecture as to their meaning.

4.    Lead Plaintiff objects to the First Interrogatories to the extent they are overbroad, unduly burdensome, harassing and/or not calculated to lead to the discovery of admissible evidence.

5.    Lead Plaintiff objects to the First Interrogatories to the extent they call for legal conclusions, legal arguments, or constitute contention interrogatories that are premature at this stage of the litigation.

Lead Plaintiff Mississippi PERS' Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
Case No. 11-CV-05386-WHA

-  1  -

6.      Lead Plaintiff objects to the First Interrogatories to the extent the interrogatories, definitions or instructions are vague and ambiguous, including, but not limited to, the following: the definition of "YOU" set forth in Definition 1, which definition refers to multiple and independent entities, only one of whom is the entity to which the interrogatories were directed to and served upon; and the use of the phrase "any other PERSON, business, advisor, or legal entity acting, or purporting to act, on behalf of Plaintiff" in Definition 1.

7.      Lead Plaintiff objects to the definition of "Person" in Definition 6, "Communication" in Definition 5, and "Identify" in Definition 9 and 10 to the extent they purport to impose obligations broader than, or inconsistent with, the Federal Rules of Civil Procedure, Local Rules for the Northern District of California, and this Court's Standing Orders.

8.      By making the responses herein, Lead Plaintiff does not concede that the information set forth in these responses is relevant to this action.  Lead Plaintiff expressly reserves the right to object to further discovery into the subject matter of these responses.

9.      Because discovery is ongoing, Lead Plaintiff reserves the right to amend, revise or supplement these responses, only to the extent required by the Federal Rules of Civil Procedure, if it appears that, at any time, inadvertent errors or omissions have been made or additional or more accurate information becomes available.

Plaintiff's General Objections are hereby incorporated in each and every response set forth below.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Describe in detail ALL representations, information, recommendations, or data upon which YOU relied in making each purchase, acquisition, sale, transfer, or other transaction in DIAMOND SECURITIES set forth in Exhibit B to YOUR Court Questionnaire to Lead-Plaintiff

Lead Plaintiff Mississippi PERS' Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
Case No. 11-CV-05386-WHA

- 2 -

Candidates which was filed on February 9, 2012 in this matter ("Questionnaire").

**RESPONSE TO INTERROGATORY NO. 1**:

Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous and overly broad. Lead Plaintiff further objects that this Interrogatory constitutes a contention interrogatory that is premature at this state of the litigation. Subject to and without waiving the foregoing objections, Lead Plaintiff responds that Diamond securities traded in an efficient market, and Lead Plaintiff intends to rely on the fraud-on-the-market presumption of reliance. Lead Plaintiff additionally refers Diamond to the public statements made by Defendants as identified in the Consolidated Complaint, as well as documents produced in response to Diamond's First Request for Production of Documents to Lead Plaintiff.

**INTERROGATORY NO. 2:**

IDENTIFY ALL PERSONS on whom you relied in making ANY investment decision regarding DIAMOND SECURITIES, including with respect to ALL of the transactions in DIAMOND SECURITIES set forth in Exhibit B to the Questionnaire.

**RESPONSE TO INTERROGATORY NO. 2**:

Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, argumentative, and seeks a legal conclusion. Lead Plaintiff further objects that this Interrogatory constitutes a contention interrogatory that is premature at this state of the litigation. Subject to and without waiving the foregoing objections, Lead Plaintiff responds that Diamond securities traded in an efficient market, and Lead Plaintiff intends to rely on the fraud-on-the-market presumption of reliance. Lead Plaintiff additionally refers Diamond to the public statements made by Defendants as identified in the Consolidated Complaint, as well as documents produced in response to Diamond's First Request for Production of Documents to Lead Plaintiff.

Lead Plaintiff Mississippi PERS' Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
Case No. 11-CV-05386-WHA

- 3 -

**INTERROGATORY NO. 3:**

IDENTIFY ALL PERSONS who have knowledge of facts concerning EACH of the transactions in DIAMOND SECURITIES set forth in Exhibit B to the Questionnaire.

**RESPONSE TO INTERROGATORY NO. 3**:

Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous and overly broad. Lead Plaintiff also objects to this Interrogatory as it is duplicative of the information sought in Interrogatory No. 2 and seeks information prior to the beginning of the Class Period, which is not relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections, Lead Plaintiff responds that Artisan Partners Limited Partnership (including, but not limited to James Hamel and Andrew Stephens), Acadian Asset Management, Inc., and Wellington Management Company, LLP executed the transactions in Diamond securities on its behalf. Furthermore, Lorrie S. Tingle and Charles Nielsen, individuals at Lead Plaintiff, have knowledge of the transactions executed on Lead Plaintiff's behalf. Lead Plaintiff further refers Diamond to documents produced in response to Diamond's First Request for Production of Documents to Lead Plaintiff.

**INTERROGATORY NO. 4:**

IDENTIFY ALL PERSONS responsible for the decision to make EACH purchase, acquisition, sale, transfer, or other transaction involving DIAMOND SECURITIES set forth in Exhibit B to the Questionnaire.

**RESPONSE TO INTERROGATORY NO. 4**:

Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous and overly broad. Lead Plaintiff also objects to this Interrogatory as it is duplicative of the information sought in Interrogatory No. 2 and seeks information prior to the beginning of the

Lead Plaintiff Mississippi PERS' Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
Case No. 11-CV-05386-WHA

- 4 -

Class Period, which is not relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections, Lead Plaintiff responds that Artisan Partners Limited Partnership, Acadian Asset Management, Inc., and Wellington Management Company, LLP executed the transactions in Diamond securities on its behalf. Lead Plaintiff further refers Diamond to documents produced in response to Diamond's First Request for Production of Documents to Lead Plaintiff.

**INTERROGATORY NO. 5:**

For EACH purchase, acquisition, sale, transfer, or other transaction in DIAMOND SECURITIES, state ALL facts supporting YOUR contention that the price of the SECURITY was inflated at the time of such purchase, acquisition, sale, transfer, or other transaction.

**RESPONSE TO INTERROGATORY NO. 5:**

Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous and overly broad. Lead Plaintiff further objects that this Interrogatory constitutes a contention interrogatory that is premature at this state of the litigation. Finally, Lead Plaintiff objects that this Interrogatory is premature to the extent that it requests information that will be the subject of expert testimony. Lead Plaintiff will provide all information required to be produced in connection with expert opinions under Fed. R. Civ. P. 26(a)(2) and at the time set forth by the Court in the September 6, 2012 Case Management Order. Subject to and without waiving the foregoing objections, Lead Plaintiff refers Diamond to the Consolidated Complaint for a recitation of currently known facts demonstrating that the price of Diamond securities was artificially inflated due to the false and misleading statements of the Defendants.

**INTERROGATORY NO. 6:**

For EACH purchase, acquisition, sale, transfer, or other transaction in DIAMOND SECURITIES, state the amount by which YOU contend the price of the SECURITY was, at the

Lead Plaintiff Mississippi PERS' Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
Case No. 11-CV-05386-WHA

– 5 –

time artificially inflated.

**RESPONSE TO INTERROGATORY NO. 6**:

Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous and overly broad. Lead Plaintiff further objects that this Interrogatory constitutes a contention interrogatory that is premature at this state of the litigation. Finally, Lead Plaintiff objects that this Interrogatory is premature to the extent that it requests information that will be the subject of expert testimony. Lead Plaintiff will provide all information required to be produced in connection with expert opinions under Fed. R. Civ. P. 26(a)(2) and at the time set forth by the Court in the September 6, 2012 Case Management Order. Subject to and without waiving the foregoing objections, Lead Plaintiff refers Diamond to its certification and loss calculation prepared in connection with its motion to be appointed as Lead Plaintiff in this litigation as to the out-of-pocket losses it incurred.

**INTERROGATORY NO. 7:**

IDENTIFY fully ALL of YOUR investment positions intended to offset potential losses or gains that may be incurred relating to YOUR purchase, acquisition, sale, transfer, or other transaction in DIAMOND SECURITIES set forth in Exhibit B to the Questionnaire.

**RESPONSE TO INTERROGATORY NO. 7**:

Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous and overly broad. Subject to and without waiving the foregoing objections, Lead Plaintiff responds that it did not enter into any transaction designed to offset potential losses or gains in Diamond securities.

**INTERROGATORY NO. 8:**

State ALL facts supporting YOUR contention in paragraph 9 of the COMPLAINT that Mississippi PERS "suffered damages as a result of the violations of the federal securities laws

Lead Plaintiff Mississippi PERS' Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
Case No. 11-CV-05386-WHA

- 6 -

1   alleged herein," including the amount of such damages.

2   **RESPONSE TO INTERROGATORY NO. 8**:

3           Lead Plaintiff objects to this Interrogatory on the grounds that it constitutes a contention

4   interrogatory that is premature at this state of the litigation.  Lead Plaintiff additionally objects

5   that this Interrogatory is premature to the extent that it requests information that will be the

6   subject of expert testimony.  Lead Plaintiff will provide all information required to be produced

7   in connection with expert opinions under Fed. R. Civ. P. 26(a)(2) and at the time set forth by the

8   Court in the September 6, 2012 Case Management Order.  Subject to and without waiving the

9   foregoing objections, Lead Plaintiff refers Diamond to its certification and loss calculation

10  prepared in connection with its motion to be appointed as Lead Plaintiff in this litigation as to the

11  out-of-pocket losses it incurred.

12  **INTERROGATORY NO. 9:**

13          Describe in detail how YOU were damaged by DIAMOND's disclosure on November 1,

14  2011 regarding an update on the timing of DIAMOND's proposed acquisition of the Pringles

15  snack business from The Procter & Gamble Company, and an investigation by Diamond's Audit

16  Committee of the accounting for certain crop payments to walnut growers.

17  **RESPONSE TO INTERROGATORY NO. 9**:

18          Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous and

19  overly broad.  Lead Plaintiff further objects that this Interrogatory constitutes a contention

20  interrogatory that is premature at this state of the litigation and calls for a legal conclusion.

21  Finally, Lead Plaintiff objects that this Interrogatory is premature to the extent that it requests

22  information that will be the subject of expert testimony.  Lead Plaintiff will provide all

23  information required to be produced in connection with expert opinions under Fed. R. Civ. P.

24  26(a)(2) and at the time set forth by the Court in the September 6, 2012 Case Management

Lead Plaintiff Mississippi PERS' Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
Case No. 11-CV-05386-WHA

- 7 -

Order.  Subject to and without waiving the foregoing objections, Lead Plaintiff refers Diamond to its certification and loss calculation prepared in connection with its motion to be appointed as Lead Plaintiff in this litigation as to the out-of-pocket losses it incurred, as well as the information contained in the Consolidated Complaint regarding the loss in value of Diamond common stock as a result of the November 1, 2011 disclosure.

**INTERROGATORY NO. 10:**

Describe in detail how YOU were damaged by DIAMOND's disclosure on February 8, 2012, regarding the investigation by the Audit Committee of the Board of Directors of DIAMOND.

**RESPONSE TO INTERROGATORY NO. 10:**

Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous and overly broad.  Lead Plaintiff further objects that this Interrogatory constitutes a contention interrogatory that is premature at this state of the litigation and calls for a legal conclusion. Finally, Lead Plaintiff objects that this Interrogatory is premature to the extent that it requests information that will be the subject of expert testimony.  Lead Plaintiff will provide all information required to be produced in connection with expert opinions under Fed. R. Civ. P. 26(a)(2) and at the time set forth by the Court in the September 6, 2012 Case Management Order.  Subject to and without waiving the foregoing objections, Lead Plaintiff refers Diamond to its certification and loss calculation prepared in connection with its motion to be appointed as Lead Plaintiff in this litigation as to the out-of-pocket losses it incurred, as well as the information contained in the Consolidated Complaint regarding the loss in value of Diamond common stock as a result of the February 8, 2012 disclosure.

Lead Plaintiff Mississippi PERS' Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
Case No. 11-CV-05386-WHA

- 8 -

**INTERROGATORY NO. 11:**

IDENTIFY ALL COMMUNICATIONS YOU have had with ANY PERSON concerning, referring to or relating to this action.

**RESPONSE TO INTERROGATORY NO. 11:**

Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous and overly broad. Moreover, Lead Plaintiff objects to this Interrogatory to the extent it includes communications with counsel or communications by counsel with third parties, which are protected by the attorney-client privilege and/or work product doctrine. Finally, Lead Plaintiff objects that this Interrogatory is premature to the extent that it requests information that will be the subject of expert testimony. Lead Plaintiff will provide all information required to be produced in connection with expert opinions under Fed. R. Civ. P. 26(a)(2) and at the time set forth by the Court in the September 6, 2012 Case Management Order. Subject to, and without waiving the foregoing objections, Lead Plaintiff refers Diamond to its Initial Disclosures served on December 14, 2012, as well as documents produced in response to Diamond's First Request for Production of Documents to Lead Plaintiff.

**INTERROGATORY NO. 12:**

IDENTIFY ALL confidential witnesses identified in YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 12:**

Lead Plaintiff objects to the extent the Interrogatory seeks information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable protection. Subject to and without waiving the foregoing objections, Lead Plaintiff responds as follows:

| CW | NAME |
|---|---|
| 1 | Douglas Barnhill |
| 2 | Hayden Price |
| 3 | John Santillano |
| 4 | Andrew Bartlow |
| 5 | Frank Barragan |

Lead Plaintiff Mississippi PERS' Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
Case No. 11-CV-05386-WHA

| | | |
|---|---|---|
| 1 | 6 | Patricia Mecklenberg |
| 2 | 7 | Sally Kafkares |
| | 8 | John Taresh |
| 3 | 9 | Ryan Palm |
| | 10 | Stan Waggoner |
| 4 | Dated:  March 18, 2013 | Respectfully submitted, |

By: /s/ *John F. Harnes*
    John F. Harnes

CHITWOOD HARLEY HARNES LLP
John F. Harnes (admitted *pro hac vice*)
Gregory E. Keller (admitted *pro hac vice*)
1350 Broadway, Suite 908
New York, New York 10018
Tel.: (917) 595-4600
JHarnes@chitwoodlaw.com
GKeller@chitwoodlaw.com

Robert W. Killorin (admitted *pro hac vice*)
Meryl W. Roper (admitted *pro hac vice*)
Ze'eva Kushner Banks (admitted *pro hac vice*)
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 873-3900
Fax: (404) 876-4476
RKillorin@chitwoodlaw.com
MRoper@chitwoodlaw.com
ZBanks@chitwoodlaw.com

*Class Counsel for Lead Plaintiff Mississippi Public
Employees' Retirement System*

LIEFF CABRASER HEIMANN & BERNSTEIN LLP
Richard M. Heimann
Joy A. Kruse
275 Battery Street, 29th Floor
San Francisco, California  94111- 3339
Tel:  (415) 956-1000
Fax:  (415) 956-1008
rheimann@lchb.com
jakruse@lchb.com

*Local Counsel for Lead Plaintiff Mississippi Public
Employees' Retirement System*

Lead Plaintiff Mississippi PERS' Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
Case No. 11-CV-05386-WHA

- 10 -

## VERIFICATION

I, George W. Neville, hereby certify under oath that I read Lead Plaintiff Mississippi

Public Employees' Retirement System's Responses and Objections to Defendant Diamond

Foods, Inc.'s First Set of Interrogatories prior to the service of such Response upon counsel for

Defendants, and that the responses therein are true and correct to the best of my knowledge,

information and belief, which includes knowledge of the executing party, and information

obtained through agents and representatives of Mississippi Public Employees' Retirement

System.

This __18th__ day of March, 2013.

George W. Neville
Special Assistant Attorney General,
Executive Counsel to the Office of
the Mississippi Attorney General

Sworn to and subscribed before
Me this 18th day of March, 2013

Diana Ware
Notary Public

NOTARY PUBLIC
ID # 28446
DIANA WARE
Commission Expires
July 29, 2013
MADISON COUNTY
OF MISSISSIPPI

# Exhibit 7

EXHIBIT
24
Neville
4-3-13   CAL

1    John F. Harnes (admitted *pro hac vice*)
     Gregory E. Keller (admitted *pro hac vice*)
2    1350 Broadway, Suite 908
     New York, New York 10018
3    Tel: (917) 595-4600
     JHarnes@chitwoodlaw.com
4    GKeller@chitwoodlaw.com

5    Robert W. Killorin (admitted *pro hac vice*)        Richard M. Heimann
     Meryl W. Roper (admitted *pro hac vice*)            (State Bar No. 63607)
6    Ze'eva Kushner Banks (admitted *pro hac vice*)      Joy A. Kruse
     CHITWOOD HARLEY HARNES LLP                          (State Bar No. 142799)
7    2300 Promenade II                                   LIEFF CABRASER HEIMANN &
     1230 Peachtree Street, N.E.                         BERNSTEIN LLP
8    Atlanta, Georgia 30309                              275 Battery Street, 29th Floor
     Tel: (404) 873-3900                                 San Francisco, California  94111- 3339
9    Fax: (404) 876-4476                                 Tel: (415) 956-1000
     RKillorin@chitwoodlaw.com                           Fax: (415) 956-1008
10   MRoper@chitwoodlaw.com                              rheimann@lchb.com
     ZBanks@chitwoodlaw.com                              jakruse@lchb.com
11
     Class Counsel for Lead Plaintiff Mississippi Public    Local Counsel for Lead Plaintiff
12   Employees' Retirement System                           Mississippi Public Employees' Retirement
                                                            System
13
                      UNITED STATES DISTRICT COURT
14
                    NORTHERN DISTRICT OF CALIFORNIA
15
                         SAN FRANCISCO DIVISION
16

17                                            | Case No.: 11-cv-05386-WHA
     IN RE DIAMOND FOODS, INC.,
18   SECURITIES LITIGATION                    | **LEAD PLAINTIFF MISSISSIPPI PUBLIC**
                                              | **EMPLOYEES' RETIREMENT SYSTEM'S**
19                                            | **SUPPLEMENTAL RESPONSES AND**
                                              | **OBJECTIONS TO DEFENDANT DIAMOND**
20                                            | **FOODS, INC.'S FIRST SET OF**
     This Document Relates to:                | **INTERROGATORIES**
21
       All Actions
22

23

24        TO:   Diamond Foods, Inc. by and through its attorney of record, Catherine D. Kevane,
25              Fenwick & West LLP, 555 California Street, 12th Floor, San Francisco, CA
                94104
26

27

28

1   PLEASE TAKE NOTICE THAT Lead Plaintiff Mississippi Public Employees'

2   Retirement System ("Lead Plaintiff") hereby serves this supplemental response to Defendant

3   Diamond Foods, Inc.'s ("Diamond" or "Defendant") First Set of Interrogatories to Lead

4   Plaintiff Mississippi Public Employees' Retirement System ("First Interrogatories") pursuant

5   to Rule 33 of the Federal Rules of Civil Procedure.  Lead Plaintiff hereby incorporates all

6   objections and responses in its initial responses served on March 18, 2013, including, but not

7   limited to, General Objection 9, which explicitly provides that Lead Plaintiff may supplement

8   its responses if additional or more accurate information becomes available.  Additionally, these

9   supplemental responses are without prejudice and do not constitute an admission that any

10  answers made previously in Lead Plaintiff's initial responses were inadequate.  Subject to the

11  foregoing, Lead Plaintiff supplements as follows:

12  **INTERROGATORY NO. 1:**

13  Describe in detail ALL representations, information, recommendations, or data upon

14  which YOU relied in making each purchase, acquisition, sale, transfer, or other transaction in

15  DIAMOND SECURITIES set forth in Exhibit B to YOUR Court Questionnaire to Lead-Plaintiff

16  Candidates which was filed on February 9, 2012 in this matter ("Questionnaire").

17  **RESPONSE TO INTERROGATORY NO. 1:**

18  Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous and

19  overly broad.  Lead Plaintiff further objects that this Interrogatory constitutes a contention

20  interrogatory that is premature at this state of the litigation.  Subject to and without waiving the

21  foregoing objections, Lead Plaintiff responds that Diamond securities traded in an efficient

22  market, and Lead Plaintiff intends to rely on the fraud-on-the-market presumption of reliance.

23  Lead Plaintiff additionally refers Diamond to the public statements made by Defendants as

24  identified in the Consolidated Complaint, as well as documents produced in response to

Lead Plaintiff Mississippi PERS' Supplemental Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
Case No. 11-CV-05386-WHA

1    Diamond's First Request for Production of Documents to Lead Plaintiff, contained at bates

2    ranges MSPERS 000001 – 3303; 3740 – 3880; 3933 – 6860; 7094 - 7099.

3    **INTERROGATORY NO. 2:**

4
5        IDENTIFY ALL PERSONS on whom you relied in making ANY investment decision

6    regarding DIAMOND SECURITIES, including with respect to ALL of the transactions in

7    DIAMOND SECURITIES set forth in Exhibit B to the Questionnaire.

8    **RESPONSE TO INTERROGATORY NO. 2:**

9
        Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous,
10
     overly broad, argumentative, and seeks a legal conclusion.  Lead Plaintiff further objects that this
11
     Interrogatory constitutes a contention interrogatory that is premature at this state of the litigation.
12
     Subject to and without waiving the foregoing objections, Lead Plaintiff responds that Diamond
13
     securities traded in an efficient market, and Lead Plaintiff intends to rely on the fraud-on-the-
14
     market presumption of reliance.  Lead Plaintiff further responds that Artisan Partners Limited
15
     Partnership (including, but not limited to James Hammel and Andrew Stephens), Acadian Asset
16
     Management, Inc., and Wellington Management Company, LLP acted as investment advisor in
17
     connection with such purchases and sales and executed them.   Lead Plaintiff additionally refers
18
     Diamond to the public statements made by Defendants as identified in the Consolidated
19
     Complaint, as well as documents produced in response to Diamond's First Request for
20
     Production of Documents to Lead Plaintiff, contained at bates ranges MSPERS 009143 – 9177;
21
     9834 – 9866; 10457 – 11330; 11460-11465; 11466 – 11506; 11527 – 11609; 11666 – 11749 –
22
     11838; 11843 – 11891; 11944 – 12019; 12183 – 12217; 12270-12273.

23   **INTERROGATORY NO. 3:**

24
        IDENTIFY ALL PERSONS who have knowledge of facts concerning EACH of the
25
     transactions in DIAMOND SECURITIES set forth in Exhibit B to the Questionnaire.
26
27
28
     Lead Plaintiff Mississippi PERS' Supplemental Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
     Case No. 11-CV-05386-WHA

     – 2 –

**RESPONSE TO INTERROGATORY NO. 3:**

Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous and overly broad. Lead Plaintiff also objects to this Interrogatory as it is duplicative of the information sought in Interrogatory No. 2 and seeks information prior to the beginning of the Class Period, which is not relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections, Lead Plaintiff responds that Artisan Partners Limited Partnership (including, but not limited to James Hammel and Andrew Stephens), Acadian Asset Management, Inc., and Wellington Management Company, LLP executed the transactions in Diamond securities on its behalf. Furthermore, Lorrie S. Tingle and Charles Nielsen, individuals at Lead Plaintiff, have knowledge of the transactions executed on Lead Plaintiff's behalf. Lead Plaintiff further refers Diamond to documents produced in response to Diamond's First Request for Production of Documents to Lead Plaintiff, contained at bates ranges MSPERS 009143 – 9177; 9834 – 9866; 10457 – 11330; 11460-11465; 11466 – 11506; 11527 – 11609; 11666 – 11749 – 11838; 11843 – 11891; 11944 – 12019; 12183 – 12217; 12270-12273.

**INTERROGATORY NO. 4:**

IDENTIFY ALL PERSONS responsible for the decision to make EACH purchase, acquisition, sale, transfer, or other transaction involving DIAMOND SECURITIES set forth in Exhibit B to the Questionnaire.

**RESPONSE TO INTERROGATORY NO. 4:**

Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous and overly broad. Lead Plaintiff also objects to this Interrogatory as it is duplicative of the information sought in Interrogatory No. 2 and seeks information prior to the beginning of the Class Period, which is not relevant to any claim or defense in this action nor reasonably

Lead Plaintiff Mississippi PERS' Supplemental Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
Case No. 11-CV-05386-WHA

– 3 –

1   calculated to lead to the discovery of admissible evidence.  Subject to, and without waiving the

2   foregoing objections, Lead Plaintiff responds that Artisan Partners Limited Partnership, Acadian

3   Asset Management, Inc., and Wellington Management Company, LLP executed the transactions

4   in Diamond securities on its behalf.  Lead Plaintiff further refers Diamond to documents

5   produced in response to Diamond's First Request for Production of Documents to Lead Plaintiff,

6   contained at bates ranges MSPERS 009143 – 9177; 9834 – 9866; 10457 – 11330; 11460-11465;

7   11466 – 11506; 11527 – 11609; 11666 – 11749 – 11838; 11843 – 11891; 11944 – 12019; 12183

8   – 12217; 12270-12273.

9

10  **INTERROGATORY NO. 11:**

11         IDENTIFY ALL COMMUNICATIONS YOU have had with ANY PERSON

12  concerning, referring to or relating to this action.

13  **RESPONSE TO INTERROGATORY NO. 11:**

14

15         Lead Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous and

16  overly broad.  Moreover, Lead Plaintiff objects to this Interrogatory to the extent it includes

17  communications with counsel or communications by counsel with third parties, which are

18  protected by the attorney-client privilege and/or work product doctrine.  Lead Plaintiff further

19  objects to this interrogatory on the grounds that it improperly seeks information directly from

20  counsel.  Finally, Lead Plaintiff objects that this Interrogatory is premature to the extent that it

21  requests information that will be the subject of expert testimony.  Lead Plaintiff will provide all

22  information required to be produced in connection with expert opinions under Fed. R. Civ. P.

23  26(a)(2) and at the time set forth by the Court in the September 6, 2012 Case Management

24  Order.  Subject to, and without waiving the foregoing objections, Lead Plaintiff refers Diamond

25  to its Initial Disclosures served on December 14, 2012, as well as documents produced in

26  response to Diamond's First Request for Production of Documents to Lead Plaintiff, contained at

27  bates ranges MSPERS 003901 – 3925.

28

Lead Plaintiff Mississippi PERS' Supplemental Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
Case No. 11-CV-05386-WHA

– 4 –

Dated:  March 29, 2013

Respectfully submitted,

By: /s/ John F. Harnes
      John F. Harnes

CHITWOOD HARLEY HARNES LLP
John F. Harnes (admitted *pro hac vice*)
Gregory E. Keller (admitted *pro hac vice*)
1350 Broadway, Suite 908
New York, New York 10018
Tel.: (917) 595-4600
JHarnes@chitwoodlaw.com
GKeller@chitwoodlaw.com

Robert W. Killorin (admitted *pro hac vice*)
Meryl W. Roper (admitted *pro hac vice*)
Ze'eva Kushner Banks (admitted *pro hac vice*)
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 873-3900
Fax: (404) 876-4476
RKillorin@chitwoodlaw.com
MRoper@chitwoodlaw.com
ZBanks@chitwoodlaw.com

*Class Counsel for Lead Plaintiff Mississippi Public Employees' Retirement System*

LIEFF CABRASER HEIMANN & BERNSTEIN LLP
Richard M. Heimann
Joy A. Kruse
275 Battery Street, 29th Floor
San Francisco, California  94111- 3339
Tel:  (415) 956-1000
Fax:  (415) 956-1008
rheimann@lchb.com
jakruse@lchb.com

*Local Counsel for Lead Plaintiff Mississippi Public Employees' Retirement System*

Lead Plaintiff Mississippi PERS' Supplemental Responses and Objections to Diamond Foods Inc.'s First Set of Interrogatories
Case No. 11-CV-05386-WHA

- 5 -

# Exhibit 8

EXHIBIT
1
Neville
4-3-13  CAR

1  DEAN S. KRISTY (CSB NO. 157646)
   dkristy@fenwick.com
2  SUSAN S. MUCK (CSB NO. 126930)
   smuck@fenwick.com
3  CATHERINE KEVANE (CSB NO. 215501)
   ckevane@fenwick.com
4  ALEXIS I. CALOZA (CSB NO. 278804)
   acaloza@fenwick.com
5  FENWICK & WEST LLP
   555 California Street, 12th Floor
6  San Francisco, CA  94104
   Telephone:    (415) 875-2300
7  Facsimile:    (415) 281-1350

8  Attorneys for Defendant
   Diamond Foods, Inc.
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                SAN FRANCISCO DIVISION

13

14                                    Case No. CV-11-05386-WHA

15  IN RE DIAMOND FOODS, INC.          **DEFENDANT DIAMOND FOODS,**
    SECURITIES LITIGATION              **INC.'S AMENDED NOTICE OF**
16                                     **DEPOSITION OF LEAD PLAINTIFF**
                                       **MISSISSIPPI PUBLIC EMPLOYEES'**
17                                     **RETIREMENT SYSTEM PURSUANT**
                                       **TO FEDERAL RULES OF CIVIL**
18                                     **PROCEDURE 26 AND 30(b)(6)**

19  This Document Relates to:          Date:    March 22, 2013
                                       Time:    9:00 am
20     All Actions.                    Place:   555 California Street, 12th Floor
                                                San Francisco, CA 94104
21

22

23  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

24        **PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 30(b)(6) of the Federal Rules

25  of Civil Procedure, Defendant Diamond Foods, Inc. ("Diamond") will take the deposition of Lead

26  Plaintiff Mississippi Public Employees' Retirement System ("Lead Plaintiff"). The deposition

27  will commence at 9:00 am on March 22, 2013, at the offices of Fenwick & West LLP, 555

28  California Street, 12th Floor, San Francisco, California 94104. The deposition will be upon oral

---

DEF. DIAMOND FOODS, INC.'S AMENDED
NOTICE OF DEPOSITION OF LEAD PLAINTIFF                          CASE NO. 11-CV-05386 (WHA)

1    examination taken before a notary public or other officer authorized by law to administer oaths,

2    and defendants may record the testimony by videotape, stenographically and/or through real-time

3    monitoring via LiveNote™ or similar facility.  The deposition will continue until completed.  The

4    deponent is not a natural person and therefore shall designate and produce at deposition the

5    person or persons most qualified to testify on its behalf on the following matters of examination:

6         1.      The identities and duties of persons and entities with responsibility for

7    determining, making and/or approving the equity investments made by Lead Plaintiff during the

8    period June 5, 2010 to June 8, 2012;

9         2.      Lead Plaintiff's investment policies, goals, plans, objectives and restrictions;

10        3.      Lead Plaintiff's purchases of, sales of, and any other transactions involving the

11   securities of Diamond or The Procter & Gamble Company ("P&G"), including the reasons for

12   such transactions;

13        4.      Lead Plaintiff's communications regarding Diamond, P&G, or Lead Plaintiff's

14   transactions in Diamond or P&G securities during the period June 5, 2010 to June 8, 2012,

15   including any communications with Diamond, P&G, and/or any outside consultants, analysts,

16   investment advisors or managers and/or other third parties regarding Diamond, P&G, or Lead

17   Plaintiff's transactions in Diamond or P&G securities;

18        5.      The damages allegedly sustained by Lead Plaintiff as a result of its investments in

19   Diamond securities;

20        6.      Lead Plaintiff's understanding of its duties and responsibilities as a class

21   representative in this action, including its ability to serve as an adequate representative of the

22   putative class;

23        7.      The identity and status of all litigation, administrative proceedings or regulatory

24   proceedings during the past ten years in which Lead Plaintiff has been a party and which involved

25   allegations of mismanagement, fraud, breach of fiduciary duty, securities, criminal conduct,

26   misappropriation or an investigation by any governmental body, agency or authority; and

27        8.      Documents maintained by Lead Plaintiff, or on its behalf, that relate or refer to

28   Diamond or P&G, including Lead Plaintiff's efforts to locate any such documents that may be

1   responsive to Diamond's document requests.

2

3   DATED:  March 7, 2013                    FENWICK & WEST LLP

4

5                                           By: _____

6                                               Alexis I. Caloza

7                                           Attorneys for Defendant
                                            Diamond Foods, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2      The undersigned declares as follows:

3      I am a citizen of the United States and employed in San Francisco County, State of

4      California. I am over the age of eighteen years and not a party to the within-entitled action. My

5      business address is Fenwick & West LLP, 555 California Street, 12th Floor, San Francisco,

6      California, 94104. On the date set forth below, I served a copy of the following documents:

7      • **DEFENDANT DIAMOND FOODS, INC.'S AMENDED NOTICE OF
       DEPOSITION OF LEAD PLAINTIFF MISSISSIPPI PUBLIC
8        EMPLOYEES' RETIREMENT SYSTEM PURSUANT TO FEDERAL
       RULES OF CIVIL PROCEDURE 26 AND 30(b)(6)**
9

10     on the interested parties in the subject action by placing a true copy thereof as indicated in the

11     attached Service List.

12     ☐      **BY US MAIL:** by placing the document(s) listed above in a sealed envelope for
              collection and mailing following our ordinary business practices. I am readily familiar
13            with our ordinary business practices for collecting and processing mail for the United
              States Postal Service, and mail that I place for collection and processing is regularly
14            deposited with the United States Postal Service that same day with postage prepaid.

15     ☐      **BY OVERNIGHT COURIER:** by placing the document(s) listed above in a sealed
              envelope with a prepaid shipping label for express delivery and causing such envelope to
16            be transmitted to an overnight delivery service for delivery by the next business day in the
              ordinary course of business.
17

18     ☐      **BY FACSIMILE:** by causing to be transmitted via facsimile the document(s) listed
              above to the addressee(s) at the facsimile number(s) set forth below.

19     ☑      **BY E-MAIL:** by causing to be transmitted via e-mail the document(s) listed above to the
              addressee(s) at the e-mail address(es) listed below.
20

21     ☐      **BY PERSONAL DELIVERY:** by causing to be personally delivered the document(s)
              listed above to the addressee(s) at the address(es) set forth below.

22     I declare under penalty of perjury under the laws of the State of California and the United

23     States that the above is true and correct. Executed this 7th day of March 2013, at San Francisco,

24     California.

25

26

27                                                      _____
                                                        Alexis Caloza
28

1

<u>SERVICE LIST</u>

2

| | |
|---|---|
| Robert W. Killorin, Esq.<br>Meryl W. Roper, Esq.<br>Ze'eva Kushner Banks, Esq.<br>Chitwood Harley Harnes LLP<br>2300 Promenade II<br>1230 Peachtree Street, N.E.<br>Atlanta, GA 30309<br>Tel:    404-873-3900<br>Fax:    404-876-4476<br>Email: rkillorin@chitwoodlaw.com<br>      mroper@chitwoodlaw.com<br>      zbanks@chitwoodlaw.com<br><br>*Attorneys for Lead Plaintiff Mississippi Public Employees' Retirement System* | John F. Harnes, Esq.<br>Gregory E. Keller, Esq.<br>Chitwood Harley Harnes LLP<br>1350 Broadway, Suite 908<br>New York, NY 10018<br>Tel:    917-595-4600<br>Email: jharnes@chitwoodlaw.com<br>      gkeller@chitwoodlaw.com<br><br>*Attorneys for Lead Plaintiff Mississippi Public Employees' Retirement System* |
| Richard M. Heimann, Esq.<br>Joy A. Kruse, Esq.<br>Lieff Cabraser Heimann & Bernstein LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Tel:    415-956-1000<br>Fax:    415-956-1008<br>Email: rheimann@lchb.com<br>      jakruse@lchb.com<br><br>*Attorneys for Lead Plaintiff Mississippi Public Employees' Retirement System* | Sara B. Brody, Esq.<br>Robert B. Martin, III, Esq.<br>Naomi A. Igra, Esq.<br>Sidley Austin LLP<br>555 California Street, 20th Floor<br>San Francisco, CA 94104<br>Tel:    415-772-1200<br>Fax:    415-772-7400<br>Email: sbrody@sidley.com<br>      rbmartin@sidley.com<br>      nigra@sidley.com<br><br>*Attorneys for Defendant Michael J. Mendes* |
| Michael J. Shepard, Esq.<br>Hogan Lovells US LLP<br>3 Embarcadero Center, Suite 1500<br>San Francisco, CA 94111<br>Tel:    415-374-2300<br>Fax:    415-374-2499<br>Email: michael.shepard@hoganlovells.com<br><br>*Attorneys for Defendant Steven M. Neil* | Norman J. Blears, Esq.<br>Maren J. Clouse, Esq.<br>Hogan Lovells US LLP<br>525 University Avenue, 4th Floor<br>Palo Alto, CA 94301<br>Tel:    650-463-4000<br>Fax:    650-463-4199<br>Email: norman.blears@hoganlovells.com<br>      maren.clouse@hoganlovells.com<br><br>*Attorneys for Defendant Steven M. Neil* |

# Exhibit 9

1   DEAN S. KRISTY (CSB NO. 157646)
    dkristy@fenwick.com
2   SUSAN S. MUCK (CSB NO. 126930)
    smuck@fenwick.com
3   CATHERINE KEVANE (CSB NO. 215501)
    ckevane@fenwick.com
4   ALEXIS I. CALOZA (CSB NO. 278804)
    acaloza@fenwick.com
5   FENWICK & WEST LLP
    555 California Street, 12th Floor
6   San Francisco, CA  94104
    Telephone:   (415) 875-2300
7   Facsimile:    (415) 281-1350

8   Attorneys for Defendant
    Diamond Foods, Inc.

9

EXHIBIT 40

10                  UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

14                                       Case No. CV-11-05386-WHA

15   IN RE DIAMOND FOODS, INC.           **DEFENDANT DIAMOND FOODS,**
     SECURITIES LITIGATION               **INC.'S AMENDED NOTICE OF**
16                                       **DEPOSITION OF ARTISAN**
                                         **PARTNERS LIMITED PARTNERSHIP**
17                                       **PURSUANT TO FEDERAL RULES OF**
                                         **CIVIL PROCEDURE 30(b)(6) AND 45**
18   ──────────────────────────────
                                         Date:    March 25, 2013
19   This Document Relates to:           Time:    9:00 am
                                         Place:   735 North Water Street
20      All Actions.                              Suite M185
                                                  Milwaukee, WI 53202
21

22

23   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

24       **PLEASE TAKE NOTICE** that, pursuant to Rules 30(b)(6) and 45 of the Federal Rules

25   of Civil Procedure, Defendant Diamond Foods, Inc. ("Diamond") will take the deposition of

26   Artisan Partners Limited Partnership ("Artisan").  The deposition will commence at 9:00 am on

27   March 25, 2013, at the offices of Brown & Jones Court Reporting, Inc., 735 North Water Street,

28

─────────────────────────────────────────────────────────────
DEF. DIAMOND FOODS, INC.'S AMENDED                    CASE NO. 11-CV-05386 (WHA)
NOTICE OF DEPOSITION OF ARTISAN PARTNERS

1   Suite M185, Milwaukee, WI 53202.  The deposition will be upon oral examination taken before a

2   notary public or other officer authorized by law to administer oaths, and Diamond may record the

3   testimony by videotape, stenographically and/or through real-time monitoring via LiveNote™ or

4   similar facility.  The deposition will continue until completed.  The deponent is not a natural

5   person and therefore shall designate and produce at deposition the person or persons most

6   qualified to testify on its behalf on the matters of examination listed in the attached subpoena.

7

8   DATED:  March 7, 2013                           FENWICK & WEST LLP

9

10                                                  By:_____

11                                                       Alexis I. Caloza

12                                                  Attorneys for Defendant
                                                    Diamond Foods, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

The undersigned declares as follows:

I am a citizen of the United States and employed in San Francisco County, State of California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Fenwick & West LLP, 555 California Street, 12th Floor, San Francisco, California, 94104. On the date set forth below, I served a copy of the following documents:

- **DEFENDANT DIAMOND FOODS, INC.'S AMENDED NOTICE OF DEPOSITION OF ARTISAN PARTNERS LIMITED PARTNERSHIP PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 30(b)(6) AND 45**

on the interested parties in the subject action by placing a true copy thereof as indicated in the attached Service List.

☐   **BY US MAIL:**  by placing the document(s) listed above in a sealed envelope for collection and mailing following our ordinary business practices. I am readily familiar with our ordinary business practices for collecting and processing mail for the United States Postal Service, and mail that I place for collection and processing is regularly deposited with the United States Postal Service that same day with postage prepaid.

☐   **BY OVERNIGHT COURIER:**  by placing the document(s) listed above in a sealed envelope with a prepaid shipping label for express delivery and causing such envelope to be transmitted to an overnight delivery service for delivery by the next business day in the ordinary course of business.

☐   **BY FACSIMILE:**  by causing to be transmitted via facsimile the document(s) listed above to the addressee(s) at the facsimile number(s) set forth below.

☑   **BY E-MAIL:**  by causing to be transmitted via e-mail the document(s) listed above to the addressee(s) at the e-mail address(es) listed below.

☐   **BY PERSONAL DELIVERY:**  by causing to be personally delivered the document(s) listed above to the addressee(s) at the address(es) set forth below.

I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct. Executed this 7th day of March 2013, at San Francisco, California.

Alexis Caloza

1

<u>SERVICE LIST</u>

| | |
|---|---|
| Robert W. Killorin, Esq.<br>Meryl W. Roper, Esq.<br>Ze'eva Kushner Banks, Esq.<br>Chitwood Harley Harnes LLP<br>2300 Promenade II<br>1230 Peachtree Street, N.E.<br>Atlanta, GA  30309<br>Tel:     404-873-3900<br>Fax:    404-876-4476<br>Email:  rkillorin@chitwoodlaw.com<br>          mroper@chitwoodlaw.com<br>          zbanks@chitwoodlaw.com<br><br>*Attorneys for Lead Plaintiff Mississippi Public Employees' Retirement System* | John F. Harnes, Esq.<br>Gregory E. Keller, Esq.<br>Chitwood Harley Harnes LLP<br>1350 Broadway, Suite 908<br>New York, NY  10018<br>Tel:    917-595-4600<br>Email:  jharnes@chitwoodlaw.com<br>          gkeller@chitwoodlaw.com<br><br>*Attorneys for Lead Plaintiff Mississippi Public Employees' Retirement System* |
| Richard M. Heimann, Esq.<br>Joy A. Kruse, Esq.<br>Lieff Cabraser Heimann & Bernstein LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA  94111-3339<br>Tel:    415-956-1000<br>Fax:    415-956-1008<br>Email:  rheimann@lchb.com<br>          jakruse@lchb.com<br><br>*Attorneys for Lead Plaintiff Mississippi Public Employees' Retirement System* | Sara B. Brody, Esq.<br>Robert B. Martin, III, Esq.<br>Naomi A. Igra, Esq.<br>Sidley Austin LLP<br>555 California Street, 20th Floor<br>San Francisco, CA  94104<br>Tel:     415-772-1200<br>Fax:    415-772-7400<br>Email:  sbrody@sidley.com<br>          rbmartin@sidley.com<br>          nigra@sidley.com<br><br>*Attorneys for Defendant Michael J. Mendes* |
| Michael J. Shepard, Esq.<br>Hogan Lovells US LLP<br>3 Embarcadero Center, Suite 1500<br>San Francisco, CA  94111<br>Tel:     415-374-2300<br>Fax:    415-374-2499<br>Email:  michael.shepard@hoganlovells.com<br><br>*Attorneys for Defendant Steven M. Neil* | Norman J. Blears, Esq.<br>Maren J. Clouse, Esq.<br>Hogan Lovells US LLP<br>525 University Avenue, 4th Floor<br>Palo Alto, CA  94301<br>Tel:     650-463-4000<br>Fax:    650-463-4199<br>Email:  norman.blears@hoganlovells.com<br>          maren.clouse@hoganlovells.com<br><br>*Attorneys for Defendant Steven M. Neil* |

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### Eastern District of Wisconsin

In re Diamond Foods, Inc., Securities Litigation

V.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  11-cv-05386-WHA

TO:   Artisan Partners Limited Partnership
    875 E. Wisconsin Avenue, Suite 800, Milwaukee, WI 53202

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☑   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  See Exhibit A (as amended).

| PLACE OF DEPOSITION  Brown & Jones Court Reporting, Inc. 735 North Water Street, Suite M185; Milwaukee, WI 53202 | DATE AND TIME 3/25/2013 9:00 am |
|---|---|

☐   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_ , Attorneys for Defendant Diamond Foods, Inc. | 3/7/2013 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Alexis I. Caloza, Esq., Fenwick & West LLP; 555 California Street, 12th Floor, San Francisco, CA 94104; acaloza@fenwick.com; 415.875.2339

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
    (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
    (2) Command to Produce Materials or Permit Inspection.
        (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
        (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
            (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
            (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
    (3) Quashing or Modifying a Subpoena.
        (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
            (i) fails to allow a reasonable time to comply;
            (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
            (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
            (iv) subjects a person to undue burden.
        (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
            (i) disclosing a trade secret or other confidential research, development, or commercial information;
            (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
            (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
        (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

            (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
            (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.
    (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
        (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
        (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
        (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
        (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) Claiming Privilege or Protection.
        (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
            (i) expressly make the claim; and
            (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
        (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
    The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**EXHIBIT A (AS AMENDED)**

**(DEPOSITION TOPICS)**

Each Deposition Topic incorporates by reference the Definitions set forth below.

## I.    DEFINITIONS

1.      "YOU" or "YOUR(S)" means Artisan Partners Limited Partnership, its officers, directors, employees, trustees, and any agent, representative, attorney, accountant, independent contractor, investment advisor, or other PERSON, business, advisor, or legal entity acting, or purporting to act, on behalf of Artisan Partners Limited Partnership.

2.      "LEAD PLAINTIFF" or "MPERS" means Lead Plaintiff Mississippi Public Employees' Retirement System, its officers, directors, employees, trustees, and any agent, representative, attorney, accountant, independent contractor, investment advisor, or other PERSON, business, advisor, or legal entity acting, or purporting to act, on behalf of Plaintiff, including but not limited to attorneys in the Mississippi Attorney General's Office ("Mississippi AG").

3.      "DIAMOND" means Diamond Foods, Inc., and its predecessors, successors, affiliates, parent or subsidiary entities, divisions, and any present or former officers, directors, employees, agents, representatives, independent contractors, attorneys, trustees, accountants, or other PERSONS or entities acting on its behalf.

4.      "P&G" means The Procter & Gamble Company, and its predecessors, successors, affiliates, parent or subsidiary entities, divisions, and any present or former officers, directors, employees, agents, representatives, independent contractors, attorneys, trustees, accountants, or other PERSONS or entities acting on its behalf.

5.      "COMMUNICATION(S)" means any transmission or exchange of information, opinions, or thoughts, whether orally, in writing, or otherwise, including but not limited to reports, mailings, conversations, meetings, letters, notes, and telegraphic, facsimile, recordings, telex, or computer-assisted electronic messages.

6.      "DOCUMENT(S)" includes, but is not limited to, all of the items defined in Fed.

R. Evid. 1001. "DOCUMENT(S)" means any writings and includes, without limitation, all written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received or neither, including originals, non-identical copies, and drafts, and both sides thereof, including, without limitation: letters, correspondence, papers, memoranda, contracts, agreements, books, journals, ledgers, statements, reports, studies, bills, billings, invoices, worksheets, jottings, projections, notes, abstracts, advertisements, drawings, audits, charges, balance sheets, income statements, magazine articles, newspaper or periodical articles, annual reports, public filings, analyst reports, checks, diagrams, blueprints, diaries, calendars, logs, recordings, instructions, lists, minutes of meetings, orders, resolutions, telegrams, wires, cables, telexes, messages, resumes, summaries, tabulations, tallies, statistical analyses, tapes, computer tapes, tape recordings, computer printouts, input/output computer systems, e-mails, and all other informal or formal writing or tangible things on which any handwriting, typing, printing, or sound is recorded or reproduced, and any and all attachments, amendments, or supplements to all of the foregoing, whether prepared by a party or another PERSON. If necessary, all DOCUMENTS must be translated through detection or decoding device into useable form. "DOCUMENT(S)" includes every DOCUMENT known to YOU, every DOCUMENT that can be located or discovered by reasonably diligent efforts on YOUR part and specifically includes, but is not limited to, those DOCUMENTS in YOUR control, possession or custody, wherever such DOCUMENTS are located.

7.    "PERSON(S)" includes, without limitation, individuals, corporations, partnerships, limited partnerships, unincorporated associations, and all other governmental and nongovernmental entities.

8.    "REGARDING," or any part thereof, means assessing, constituting, concerning, containing, discussing, evidencing, recording, reflecting, identifying, pertaining to, stating, summarizing, referring to, or relating to, in whole or in part, the given subject.

9.    "RELATING TO" shall mean to evidence, support, rebut, refer, reflect, relate, regard, concern, or in any way affect the given subject.

2

10.     "REFERRING TO" shall mean to point, allude, direct, or make reference to the given subject.

11.     "SECURITY" or "SECURITIES" means any and all stocks, bonds, mutual fund shares, puts, calls, options, limited partnership units, and/or any other interest in any company, partnership, fund or other business entity.

12.     The term "ALL" means "any and all."

13.     The terms "AND" AND "OR" shall be construed disjunctively OR conjunctively as necessary in order to bring within the scope of the interrogatory ALL responses which otherwise might be construed to be outside its scope.

14.     The terms "ANY" OR "EACH" should be understood to include AND encompass "ALL" AND vice versa.

15.     The term "AND" should be understood to include AND encompass "OR."

## DEPOSITION TOPICS

1.      Any agreement or arrangement between YOU and MPERS;

2.      All COMMUNICATIONS between YOU and MPERS, or any PERSON on MPERS' behalf, REGARDING, RELATING TO or REFERRING TO MPERS' investments, including but not limited to investments or proposed investments in DIAMOND or P&G SECURITIES, during the period June 5, 2010 to June 8, 2012;

3.      All purchases, acquisitions, sales, transfers or other transactions involving DIAMOND or P&G SECURITIES, by MPERS or on MPERS' behalf during the period June 5, 2010 to June 8, 2012, including the reasons for such transactions;

4.      Any research, investment advice, proxy voting or other service involving DIAMOND or P&G SECURITIES, performed or provided by YOU to MPERS or any PERSON on MPERS' behalf during the period June 5, 2010 to June 8, 2012;

5.      Any analysis, research, investigation, review, commentary or other service conducted by YOU regarding any of DIAMOND's or P&G's public disclosures during the period June 5, 2010 to June 8, 2012;

3

6.      Any research or investigation of DIAMOND or P&G conducted by YOU, or by others acting on YOUR behalf, during the period June 5, 2010 to June 8, 2012;

7.      YOUR organization structure;

8.      DOCUMENTS REGARDING, RELATING TO or REFERRING TO DIAMOND;

9.      MPERS' investment policies, goals, plans, objectives and restrictions; and

10.      MPERS' profits or losses from purchases, acquisitions, sales, transfers or other transactions involving DIAMOND or P&G SECURITIES from January 1, 2009 to the present.

4

# Exhibit 10



**PERS**

PUBLIC EMPLOYEES'
RETIREMENT SYSTEM
OF MISSISSIPPI

PROVIDING SECURITY
FOR YOUR FUTURE

PUBLIC EMPLOYEES'
RETIREMENT SYSTEM
BUILDING

429 MISSISSIPPI STREET
JACKSON, MISSISSIPPI
39201-1005

(601) 359-3589
1-800-444-PERS

FRANK READY
Executive Director

BOARD OF TRUSTEES
MARY HAWKINS BUTLER, CHM.
Municipal Employees

VIRGIL F. BELUE
Retirees

MARSHALL G. BENNETT
State Treasurer

LEE CHILDRESS
Public Schools,
Community/Junior Colleges

DEBORAH F. GILES
Appointed by Governor

JAN LARSEN
State Employees

ED LEGRAND
State Employees

RICHARD C. MILLER
Inst. of Higher Learning

FRED M. WALKER
Retirees

JEANNE R. WALKER
County Employees

PROGRAMS ADMINISTERED
Public Employees'
Retirement System of Mississippi

Mississippi Highway
Safety Patrol Retirement System

Government Employees'
Deferred Compensation Plan

Mississippi Municipal
Retirement Systems

Supplemental Legislative
Retirement Plan

Retiree Group Life
& Health Benefits

Optional Retirement Plan for
Institutions of Higher Learning

## PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI INVESTMENT MANAGEMENT AGREEMENT

AGREEMENT made as of this 11th day of September, 2002, by the Board of Trustees of the Public Employees' Retirement System of Mississippi (the "Board"), and Artisan Partners Limited Partnership, (the "Investment Advisor"), located at 1000 N. Water Street, Suite 1770, Milwaukee, Wisconsin 53202.

In consideration of the mutual agreements herein contained, the Board and the Investment Advisor agree as follows:

1.    The Investment Advisor will provide the Board with investment management services with respect to the securities and other assets held in the assigned Account of the Investment Advisor and all other assets that may be added thereto from time to time. These services will be in accordance with the statutes of the State of Mississippi, objectives, guidelines, limitations, terms and any other instructions established by the Board and communicated in writing to, and previously agreed to in writing by, the Investment Advisor.

2.    The Board hereby authorizes the Investment Advisor on behalf of the Board to issue to brokers instructions to purchase, sell and otherwise to trade in or deal with securities in or to be acquired for the Account and in name of the Board and the Investment Advisor acknowledges its responsibility to so act. The Board acknowledges that the Investment Advisor may from time to time execute trades with brokers and dealers as provided for in section 28(e) of the Securities Exchange Act of 1934.

1



EXHIBIT
33
Tingle
4-3-13   CGR

MSPERS 003317

3.    The Board agrees to provide the Investment Advisor the following information at the commencement of this Agreement and any changes therein as may occur from time to time:

    (a)  Provisions of the Code of Mississippi and any subsequent changes therein affecting the Board relating to the management of the assets in the Account;

    (b)  Investment policy and guidelines established from time to time by the Board;

    (c)  Certified copies of any resolution adopted by the Board affecting the Investment Advisor or management of assets held in the Account;

    (d)  A schedule of assets held in the Account at the commencement of this Agreement;

    (e)  Such other documentation as may reasonably be requested by the Investment Advisor in connection with this agreement or the performance thereof.

4.    The Investment Advisor agrees to have a representative to attend periodically meetings of the Board at the offices of the Board, or at some other agreed upon location on an agreed and reasonable schedule. The Investment Advisor further agrees to report to the Board on all matters which in its opinion at the time represent significant changes in economic forecasts, investment outlook, industry emphasis and any other matters of a general or specific nature, as requested by the Board.

5.    The Investment Advisor agrees promptly to notify the Board of any change (I) of the portfolio manager or any other key personnel who is/are assigned by the Investment Advisor as primarily responsible for this account and (ii) any change in the membership of the Investment Advisor by delivery of Part II of the Investment Advisor's Form ADV within a reasonable time after such change.

6.    The Investment Advisor's annual fee for its services on behalf of the Board shall be as set forth in the schedule annexed hereto which shall remain in effect for the term of this Agreement except as may be agreed in writing by the parties hereto. No additional charges will

2

MSPERS 003318

be made for the services agreed to be provided hereunder by the Investment Advisor without prior written consent of the Board. The fee shall be payable promptly for the services for each quarter upon presentation of a written statement.

7.   If, at any time from and after the date of this Agreement, the Investment Advisor shall enter into an agreement with any other client to provide investment management services comparable to those provided under this Agreement, and if such Agreement requires the payment of asset-based fees that are in any respect lower than the fee established under Paragraph 6, then the Investment Advisor agrees that the fee required under this Agreement shall be reduced to the level specified in the Agreement with such other client. Principal variables which shall be utilized to determine whether the services are comparable include, but are not limited to, size of account, scope and type of other relationships with the Investment Advisor, restrictions on the account, strategy followed in management of the account, aggressiveness of investment objectives and discretionary character of the account. Such reduction in fees shall be effective as of the effective date of the Agreement with such other client. The Investment Advisor agrees to provide the Board with timely notice of any event or occurrence that would require a reduction in fees herein provided.

8.   The Investment Advisor shall use its best efforts in the performance of its services hereunder. However, the Investment Advisor shall not be liable for any error in judgment or any act or omission performed or omitted to be performed in good faith and with exercise of due care so long as the specific restrictions set forth herein, and in the written instructions from the Board issued pursuant to paragraph 1 above, are fully complied with. The federal securities laws in some circumstances impose liability even on persons who have acted in good faith. Nothing herein shall be deemed to be a waiver or limitation by the Board of any rights it may have under the federal securities laws.

9.   It is understood that the Investment Advisor may be acting in a similar capacity for other institutional and individual clients and that investments and reinvestments of the assets in

3

MSPERS 003319

the Account may differ from other accounts even though the investment objectives may be the same or similar and that the Investment Advisory Services will be independent of other Advisory Services that may be employed by the Board.

10.   The applicable option concerning proxy voting is marked by an "X".

X   The investment management authority delegated to the Investment Advisor pursuant to this Agreement with respect to the Account includes the voting of proxies appurtenant to securities held in the Account; the Board acknowledges that the Investment Advisor is required to use its independent judgment in determining the interests of the Plan's participants and beneficiaries for purposes of such proxy voting.

_____ The investment management authority delegated to the Investment Advisor pursuant to this Agreement with respect to the Account does NOT include the voting of proxies appurtenant to securities held in the Account;  the Board acknowledges that it has exclusive authority to exercise such proxy voting authority.

11.   This Agreement shall remain in full force and effect for a period of one year from the date first above written and shall continue in effect thereafter from year to year, unless terminated as provided in paragraph 12 below.  The termination of this Agreement shall not affect any obligation or liability of the Board or the Investment Advisor for any transaction entered into or obligation incurred prior to such termination.

12.   This Agreement may be terminated upon not less than 30 days written notice by either party to the other.    Notwithstanding anything herein contained, the Board may immediately, upon oral notice promptly confirmed in writing, revoke the authority of the Investment Advisor to furnish investment management services.

13.   This Agreement shall not be assigned (as defined in the Investment Advisor's Act of 1940, as amended) without the consent of the parties hereto.

4

MSPERS 003320

14.   The Investment Advisor shall comply with all applicable laws, regulations, policies and procedures of the United States of America or any agency thereof, the State of Mississippi or any agency thereof and any local governments or political subdivisions that may affect the performance of services under this Contract.   Specifically, but not limited to, the Investment Advisor shall not discriminate against any employee nor shall any party be subject to discrimination in the performance of this agreement because of race, creed, color, sex, national origin, age or handicap.

15.   The Board acknowledges receipt of a copy of Part II of the Investment Advisor's current Form ADV, at least 48 hours prior to the signing of this Agreement.

16.   This Agreement is made under, and shall be governed by and construed in accordance with, the Laws of the State of Mississippi. Venue for the resolution of any dispute under the terms of this Agreement shall be Hinds County, Jackson, Mississippi.

IN WITNESS WHEROF, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

ATTEST:  Artisan Partners Limited Partnership
By Artisan Investment Corporation, its general partner

BY _____          TITLE: Vice President

ATTEST:  Board of Trustees, Public Employees' Retirement System of Mississippi
BY _____     TITLE: _____
     Frank Ready                                    Executive Director

5

MSPERS 003321

# ADDENDUM I

**Performance Expectations**

The Public Employees' Retirement System expects the following minimum performance standards over a rolling three year period from September 11, 2002.

(a) Consistent above median performance in the Mid Cap Growth manager universe provided by the PERS' Investment Consultant.

(b) Performance which consistently exceeds the Russell Mid Cap Growth Index by 200 basis points net of fees.

(c) The risk associated with this portfolio as measured by the variability of quarterly returns (standard deviation), should not exceed that of the Russell Mid Cap Growth Index without a corresponding increase in performance.

6

MSPERS 003322

# ADDENDUM II

Pursuant to the term of Paragraph 6 of the Investment Management Agreement dated as of September 11, 2002, the Board and Investment Advisor agree to be governed by the following fee schedule.

Fees will be payable quarterly in arrears in an amount equal to one-fourth of the annual rate, multiplied by the market value at the end of the current quarter plus any accrued income.  Fees for funds invested or redeemed during the quarter will be calculated on a pro-rata basis based on the number of days the funds were actually invested.

.47% on all assets

In witness whereof, the parties hereto have caused this Addendum to be executed as of the day and year first above written.

By: _____    Vice President, Artisan Investment
                 Title: Corporation, general partner

By: _____    Title: Executive Director
 Frank Ready

MSPERS 003323

# ADDENDUM III

# ARTISAN PARTNERS LIMITED PARTNERSHIP
## MID CAP GROWTH

## STATEMENT OF INVESTMENT OBJECTIVES AND GUIDELINES

1. <u>Portfolio Objective</u>. Artisan Partners should select and weight common stock investments in the Client's account ("Account") following Artisan Partners' mid-cap growth strategy, with the goal of compounding Client assets by exposing portfolio to growth and avoiding permanent capital losses.

2. <u>Investment Guidelines</u>. The Account shall be invested at the discretion of Artisan Partners with regard to individual security selection, subject to compliance with the Employee Retirement Income Security Act of 1974 (if applicable) and the restrictions below.

   *Revised 5/30/07*

   2.1. Capitalization. The portfolio shall maintain a median market capitalization and weighted average market capitalization of less than $10 billion.

   2.2. <u>Diversification</u>.

   2.2.1. No single security should exceed five percent (5%) of the market value of the Account at the time of purchase.

   2.2.2. At no time should the market value of a single security exceed ten percent (10%) of the market value of the Account.

   2.2.3. No more than 20% of the market value of the Account will be invested in companies in a single industry.

   2.3. <u>Limited or Prohibited Investments and Techniques</u>.

   2.3.1. Securities of non-U.S. issuers shall not exceed fifteen percent (15%) of the market value of the Account at the time of purchase.

   2.3.2. Securities may not be purchased or sold on non-U.S. exchanges.

   2.3.3. Private placement securities other than 144A securities may not be held.

   2.3.4. Derivative instruments may not be purchased or sold without advance approval from Client.

8

MSPERS 003324

2.4. <u>Cash</u>. All cash in the Account shall be invested in short-term investment funds to be designated by Client. The Account will not generally hold cash of more than ten percent (10%) of the total portfolio.

3. <u>Typical Portfolio Characteristics</u>. The portfolio will typically have the following characteristics:

- Portfolio typically consists of --

    o Garden positions with each position starting at 1% of the portfolio or less;

    o Crop positions with each position increasing to no more than about 5% of the portfolio; and

    o Harvest positions with each position declining as a percentage of the portfolio.

- Allocations among garden, crop and harvest will vary depending on market conditions.

- Portfolio typically holds 45 to 80 positions, with larger numbers of positions during periods of more difficult market conditions.

These characteristics are for information purposes only and are not intended as guidelines or restrictions limiting the portfolio management process. Portfolio characteristics may change with changes in market conditions and changes in portfolio investments.

9

MSPERS 003325

A R T I S A N            P A R T N E R S

MILWAUKEE   |   SAN FRANCISCO   |   ATLANTA   |   NEW YORK

May 29, 2007

Ms. Lorrie S. Tingle
Chief Investment Officer
Public Employees' Retirement System of Mississippi
Public Employee's Retirement Building
429 Mississippi Street
Jackson, MS 39201

Dear Lorrie:

We are writing you to regarding changes we would like to make regarding the market
capitalization guidelines applicable to your portfolio. We believe the changes will put us
in the best position to add value for your portfolio over the long-term.

Currently, on a strategy-wide basis, we limit the median and weighted average market
capitalization of the portfolios in our mid-cap growth investment strategy to not more
than $10 billion. When we established that strategy-wide guideline nearly five years ago
the median and weighted average market capitalizations of the Russell Midcap® Index
were $2.9 billion and $6.1 billion, respectively. Over the last 5 years the appreciation of
the Index has pushed those reference characteristics up to $4.6 billion and $9.2 billion.
What's more, about 40% of the Russell Midcap® Index market capitalization (135
companies) is in stocks with market capitalizations greater than $10 billion. So, while the
$10 billion market capitalization constraint provided sufficient flexibility for us to pursue
the most attractive investment opportunities five years ago, it is now limiting our ability
to execute our security selection and capital allocation processes over the full mid-cap
universe.

In order to put us in the best position to add value for your portfolio we are planning to
apply a new, two-pronged approach to market capitalization. At the time of initiation of
a position in the portfolio, we will invest in securities of companies with a market
capitalization within the market capitalization range of the companies included in the
Russell Midcap® Index. We view the Russell Midcap® Index as being the most
representative of the entire universe of mid-cap securities. Additionally, we will maintain
a weighted average market capitalization of not more than 50% greater than the weighted
average market capitalization of the Russell Midcap® Index or the Russell Midcap®
Growth Index, whichever is greater.

We believe these changes to our market capitalization guideline have several advantages.
First, they will insure consistent exposure to the mid-cap segment of the market. Second,
they will provide us with the ability to focus capital where we are finding the most value
in our investment universe. Finally, the changes provide a dynamic market capitalization

TELEPHONE 770 804 5434   |   FACSIMILE 770 804 5430
5 CONCOURSE PARKWAY NE  SUITE 2120  |  ATLANTA GA 30328

A R T I S A N   P A R T N E R S   L I M I T E D   P A R T N E R S H I P

MSPERS 003326

May 29, 2007
Page 2

guideline, which will track changes in our investment universe over time, versus a static guideline that could potentially become less representative of our universe.

For some of our clients, no changes to investment restrictions are necessary and we will implement the changes for those clients beginning on June 1, 2007. However, your guidelines currently state that your portfolio must maintain a median market capitalization and weighted average market capitalization of less than $10 billion. We will continue to manage your account in accordance with your current guidelines until we have received your consent to the changes discussed above.

At Artisan, we are keenly focused on providing the most value possible for our clients over the long-term. We believe that the changes we are instituting will allow us to consistently provide you with the most attractive portfolio of companies we find through our security selection process, with capital allocated among them in accordance with our best judgment. We will continue to follow the investment process we have applied since the inception of your account. As confirmation of your agreement to the changes described above, please sign this letter as indicated below and return a copy to us by fax to the attention of Tim Weston, 414-390-8401, at your earliest convenience.

Thank you for your continued support.

Sincerely,

Andrew C. Stephens
Portfolio Manager

James D. Hamel
Co-Portfolio Manager

Thomas D. Wooden
Associate Portfolio Manager


**THE BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI**

By: _____
Name: Lorrie S. Tingle
Title: CIO


cc:      Ms. Ruthann Moomey, Callan Associates, Inc.

MSPERS 003327

# Exhibit 11

*Addendum L*



# Investment Policy Statement

**Adopted**
**April 2012**

MSPERS 008910

*Addendum L*

## Statement of Investment Policy

### Purpose

The purpose of this document is to define the investment objectives of The Public Employees' Retirement System of Mississippi (PERS) in order to assist the Board and staff in effectively managing PERS assets. This statement establishes the policies and describes the organization and objectives of the PERS' investment program in accordance with Section 25-11-121 of the Mississippi Code 1972, *Annotated*. In addition, it establishes a framework for monitoring investment performance, and promoting effective communication between the Board, investment staff, consultants and the external investment managers. This policy provides a framework which allows sufficient flexibility to take advantage of investment opportunities, while setting reasonable parameters to ensure prudence and care in the execution of the investment program.

### Background

The Public Employees' Retirement System of Mississippi was established by the State legislature for the purpose of providing retirement benefits to all employees of public entities in Mississippi. The System also administers the Mississippi Highway Safety Patrol Retirement System, the Supplemental Legislative Retirement Plan, the Municipal Retirement Systems of Mississippi, the Governmental Employees' Deferred Compensation Plan & Trust and the Optional Retirement Plan. This responsibility includes the investment of plan assets and the selection of investment options offered within the defined contribution plans administered.

The Public Employees' Retirement System of Mississippi is committed to insuring secure retirement benefits are available for its current and future retirees through the prudent investment of its assets.

### Investment Objectives

The primary objective of the investment program is to ensure that PERS meets its financial responsibilities to provide stable benefits for its members. As such the investment program strives to:

a)   Achieve a real rate of return of 4.5% over long periods (approximately 30 years).

b)   Generate at a minimum the actuarial assumed rate of return on investments. Currently that rate is 8%.

MSPERS 008911

*Addendum L*

## Ethics and Conflicts of Interest

-All Board members are fund fiduciaries with a duty of loyalty to PERS and responsibility to observe the exclusive benefit rule.

-All members of the Board, Executive Director and investment staff will disclose any conflict of interest related to PERS investments.

-All investment managers, consultants and custodial banks shall be required to disclose all third-party relationships, which in any way involve payment of fees, shared fees or any "soft dollar" exchanges not otherwise disclosed.

-Upon request, each investment manager and consultant will disclose its ethics policy to the Board.

MSPERS 008917

# Exhibit 12



PERS OF MISSISSIPPI (U.S. Mid-Cap Growth Account) –
FIDUCIARY REVIEW PARTS 1 & 2

Information for year ending <u>6/30/11</u>

Firm Name:    <u>Artisan Partners Limited Partnership</u>

## Part 1 – Directed Commissions

A.    Total Commissions Paid for PERS Account

|  |  | % of Total Commission |
|---|---|---|
| Total Commissions Directed in PERS Commission Recapture Program: | ____ | _____ |
| Total Commissions directed for your Soft Dollar Usage: | ____ | _____ |

B.    Please identify the specific uses of the
       Soft Dollars directed:                    Please see Attachment 1

C.    Do you have clients who prohibit the use of their commissions in your soft dollar program?

   Artisan Partners provides advisory services to a governmental client that is subject to legal restrictions on the use of its commissions to pay for third-party research and services.  Artisan Partners pays for the pro-rata cost of such services for that client from its own funds.

## Part 2 – Consultant Relationship

A.    Total dollars paid to <u>Callan Associates:</u>

|  |  |
|---|---|
| _ | _____ |

Direct payment – Artisan Partners' share of the cost of a governmental client's 2010 annual investment conference
Business entertainment expenses
Total

Purpose of Payment(s):

A representative of Artisan Partners made a presentation regarding the firm and its investment strategies at an annual investment conference hosted by Callan Associates, Inc. for an existing governmental client of Artisan Partners.  All investment managers to that governmental client share in the expense of the annual investment conference.

Many of Artisan Partners' clients are clients of investment consulting firms, including Callan Associates.  Artisan Partners may also encounter representatives of those firms in connection with the process of seeking additional assignments.  Artisan Partners

REDACTED
MSPERS 011839



reimburses its employees for reasonable business entertainment expenses incurred in connection with those relationships.

We have not attempted to include within that amount any amounts reimbursed by Artisan Partners in connection with client entertainment at which a representative of Callan Associates might have been present.

In the discussion above, statements that Artisan Partners paid an expense "in cash" mean that Artisan Partners paid that amount from its own resources, generally by check or wire transfer of funds.

## Part 3 – Political Contributions

A.  Please attach a copy of your current policy and procedures related to monitoring and reporting campaign contributions.

Artisan Partners' Pay to Play Policy, adopted effective March 1, 2011, is attached.

B.  Provide a list of any contributions made by your firm, or any associate of your firm to any government officials (including political candidates), PACs, or state or local parties in Mississippi.

We confirm that no contributions were made on behalf of Artisan Partners to any governmental officials (including political candidates), PACs or state or local parties in Mississippi during the twelve months ended June 30, 2011.  Based upon the recent adoption of Artisan Partners' Pay to Play policy, we can also confirm no contributions were reported on behalf of any Artisans Partners associates to any government officials (including political candidates), PACs, or state or local parties in Mississippi, from March 1, 2011 (which was the effective date of Pay to Play Policy) through June 30, 2011.

Information provided by:  _____
                         Brooke J. Billick

          Title:    Chief Compliance Officer and Associate Counsel

          Firm:     Artisan Partners Limited Partnership

          Phone:    414-390-2028

# REDACTED

MSPERS 011840

# Exhibit 13

ARTISAN PARTNERS

# AN IN-DEPTH VIEW OF ARTISAN U.S. VALUE TEAM

## Investment Philosophy and Process

### A Discussion with Portfolio Management

Artisan Value Equity Strategy
Artisan U.S. Mid-Cap Value Strategy
Artisan U.S. Small-Cap Value Strategy



ARTISAN

INVESTMENT MANAGEMENT PRACTICED WITH
INTELLIGENCE AND DISCIPLINE IS AN ART®

Artisan U.S. Value Team Investment Philosophy and Process

## LEADERSHIP



**Scott C. Satterwhite,**
**Managing Director**
*Portfolio Manager -*
*U.S. Value Team*
*- 32 years of*
*investment experience*



**James C. Kieffer,**
**Managing Director**
*Portfolio Manager -*
*U.S. Value Team*
*- 24 years of*
*investment experience*



**George O. Sertl Jr.,**
**Managing Director**
*Portfolio Manager -*
*U.S. Value Team*
*- 20 years of*
*investment experience*



**Dan Kane,**
**Associate Portfolio**
**Manager -**
*U.S. Value Team*
*- 14 years of*
*investment experience*

## OUR INVESTMENT TEAM

Our investment team is led by four portfolio managers – Scott Satterwhite, Jim Kieffer, George Sertl and Dan Kane. Scott and Jim have worked together for over 20 years, first at Wachovia, and then at Artisan since 1997. George has been part of the team since 2000 and Dan joined the group in 2008. We have worked together for a long time and each member has a high level of trust and confidence in each other's capabilities. We also have two additional team members who support the research effort. Together we manage Artisan Value Equity Strategy, Artisan U.S. Mid-Cap Value Strategy and Artisan U.S. Small-Cap Value Strategy.

Though our title is "portfolio manager", we think of ourselves as stock pickers. Each of us functions as a generalist with respect to investment research and the entire team works together on considering potential investments. A significant amount of discussion is had between team members before a stock is added to a portfolio. We interact on a daily basis, challenging each other's ideas and ways of thinking. We regularly discuss the risks involved with each individual investment idea so that we can best understand where to position a holding within the portfolio. We do not operate under a hierarchy, though each investment has a portfolio manager sponsor.

We also have what we call a "Daily Maintainer" for each of our portfolios. This individual is solely responsible for relaying the trade instructions for a particular portfolio. George performs this function for Artisan Value Equity, Jim does this for Artisan U.S. Mid-Cap Value strategy and Scott does this for Artisan U.S. Small-Cap Value strategy.

## OUR INVESTMENT PHILOSOPHY

Our investment philosophy can be summarized by the following statement: *We seek cash producing businesses in strong financial condition that are selling at undemanding valuations.* Our effort is geared towards stacking the deck in our favor, i.e. we want the business on our side, the balance sheet on our side and valuation on our side. Experience has taught us that investing in companies with these characteristics tilts the risk/reward in our favor over the long term.

From a valuation perspective, we desire companies that are trading at a distinct discount to underlying worth. Our process is geared toward investing in low expectation situations. These situations are often found in areas of the market where high levels of fear and anxiety exist. Our belief is that if a high level of pessimism is already baked into the stock, risk/reward will be tilted in our favor.

We seek companies with healthy balance sheets, strong liquidity and financial flexibility. Focusing on financial condition helps us in many ways. A company with a strong financial position can reinvest in its business, make acquisitions at opportune times, buy back stock and/or pay down debt. Additionally, our experience has taught us that when we are wrong on an investment and it has a sound financial condition, we will still lose money, but we have found that we typically lose significantly less than if we were invested in a company that was highly levered.

For the business economics characteristic, we take a private businessman's perspective and focus on the free cash flow and return on capital capabilities

of the business. These two elements are necessary ingredients for the long-term prosperity of a business. Focusing on these elements helps us avoid value traps and instead targets situations where the potential exists for growth in business value.

All three of these characteristics are critical to our investment process. Our goal is to find investments that are strong on all three counts. We think of these characteristics as analytical guardrails that help us avoid taking on excessive business and/or financial risk.

## OUR INVESTMENT PROCESS

We employ a bottom-up investment process to construct a diversified portfolio of value-oriented investments that we believe are undervalued, in solid financial condition and have attractive business economics.

We generate investment ideas in lots of different ways. Our objective is to be open-minded and resourceful as we search for new investments. We use a variety of quantitative and qualitative screens to help narrow our universe. Some of the quantitative screens include: low price-to-earnings, low price-to-book and low price-to-cash flow ratios. Non-quantitative screens include published databases, spin-offs/divestitures, insider activity and corporate events. One of our most useful idea generation tools is what we call our "daily downtrodden" list, which are stocks with recent large percentage declines. We are constantly sifting through our investment universe, but due to our stringent criteria most ideas are quickly eliminated.



Once a potential investment candidate has been identified, we proceed with an in-depth analysis. Steps include a thorough analysis of financial statements, a company's competitive position, business economics and valuation.

## Artisan U.S. Value Team Investment Philosophy and Process

The goal of valuation analysis is to establish a conservative estimated range of a company's intrinsic value. We utilize many valuation tools, including the examination of normalized free cash flow multiples, price-to-book value, sum of the parts and M&A multiples. It is important to note that we do not utilize a "one size fits all" valuation approach. The use of these tools varies by each individual investment opportunity depending on the company and related industry. The most common tool we use is a normalized earnings approach. In general, we look to invest in a company priced at 8-12X normalized earnings, and we typically sell a holding when it reaches a more demanding multiple in the mid- to high-teens.



We seek companies in strong financial condition. Our analysis is holistic in that we look at on- and off-balance sheet items. Some of those items include interest coverage, debt type, pension liabilities, etc. Quite simply, we do not want the financial condition to impede on the business, meaning we do not want it to interfere with how the business is operated or where management wants to take the business strategically.

When it comes to business quality, our main focus is on analyzing the company's free cash flow capabilities and assessing its ability to earn cost of capital over a full business cycle. Our goal is to have a thorough understanding of how a company operates and its competitive dynamics so that we can properly judge how current controversies are impacting the business.

### TIME HORIZON INEFFICIENCY

Time horizon is an important facet of our investment process. We evaluate opportunities based on a 3-5 year investment time horizon. By extending our time horizon, we aim to take advantage of bargains that result when negative news and nervous investors drive stock prices down. Sentiment can shift dramatically over short periods, but changes in business value typically occur over long time frames. As a result, the difference between the success and failure of an individual investment can often be a function of one's time horizon. Hence, patience is important in exploiting this inefficiency.

### PORTFOLIO CONSTRUCTION

In building each of the portfolios, position sizes are determined based on how well each company fits our three investment criteria. For example, if a company clears each hurdle easily, it will be at the top end of the portfolio in terms of position size. If a potential investment meets all three criteria but is relatively weaker in one of the criteria, it will be a smaller position within the portfolio. This portfolio construction method provides a risk/reward framework for the portfolio.

### OUR SELL DISCIPLINE

We monitor each of our holdings closely, evaluating new information relative to our original investment thesis. Our dynamic price ranges are re-evaluated as a company's fundamentals evolve. We begin to trim a position when its stock enters our target selling range and we will exit that position entirely as it reaches the top end of our range. A decline in financial condition or a material change in business economics will also cause us to sell a stock. We aim to manage fully invested portfolios, so if we have a better idea, we will sell a stock to fund that opportunity.

### CONCLUSION

Our process aims to take advantage of market inefficiencies. To repeat our earlier line, we seek cash producing businesses in strong financial condition that are selling at undemanding valuations. More to the point, we want to stack the odds in our favor by buying cash flows as cheaply and safely as possible.

| ARTISAN VALUE EQUITY STRATEGY | ARTISAN U.S. MID-CAP VALUE STRATEGY | ARTISAN U.S. SMALL-CAP VALUE STRATEGY |
|---|---|---|
| The portfolio typically has 30 to 40 holdings | Market cap between $2 and $15 billion at initial purchase[3] | Market cap less than $2 billion at initial purchase |
| Maximum position size 10%[2] | Maximum of 25% in any one industry[1] | Maximum of 25% in any one industry[1] |
| Maximum of 25% in any one industry[1] | Attention to economic exposure | Attention to economic exposure |
| Maximum of 25% in non-U.S. companies[1] | The portfolio typically has 40 to 60 holdings | Maximum position size 5%[1] |
| Attention to economic exposure | Maximum position size 5%[1] | Typically less than 5% cash |
| Typically less than 15% cash | Typically no more than 10% cash | |

[1]Limitations apply at the time of purchase. [2]Maximum position size 5% in 75% of the portfolio; maximum position size 10% for remaining 25% of the portfolio. [3]80% of the portfolio's net assets at market value at time of investment in companies with market caps between the smallest in Russell Midcap® Index and 3x the weighted average market cap of companies in the Russell Midcap® Index.

Value securities may underperform other asset types during a given period. Value Equity strategy: International investments involve special risks, including currency fluctuation, lower liquidity, different accounting methods and economic and political systems, and higher transaction costs. These risks typically are greater in emerging markets. Value Equity and U.S. Mid-Cap Value strategies: Securities of medium-sized companies tend to be more volatile and less liquid than those of large companies, may have underperformed the securities of large companies during some periods and tend to have a shorter history of operations than large companies. U.S. Small-Cap Value strategy: Securities of smaller companies tend to be more volatile and less liquid than those of large companies, may have underperformed the securities of large companies during some periods and tend to have a shorter history of operations than large companies.

**Price-to-earnings ratio** (a measure of how expensive a stock is) is a valuation ratio of a company's current share price compared to its per-share earnings. **Price-to-book ratio** (a measure of how expensive a stock is) is a valuation ratio of a company's current share price compared to its per-share book value. **Price-to-cash flow** is a measure of the market's expectations of a firm's future financial health.

Artisan Partners is an independent investment management firm focused on providing high value-added, active investment strategies to sophisticated clients globally. Each of Artisan Partners Limited Partnership ("Artisan Partners US") and Artisan Partners UK LLP ("Artisan Partners UK") provides discretionary investment management services to clients and collectively (with their parent company) are referred to as Artisan Partners in this material. Artisan Partners US is an investment adviser registered with the U.S. Securities and Exchange Commission ("SEC"). Artisan Partners UK is authorised and regulated by the United Kingdom's Financial Services Authority ("FSA") and is a registered investment advisor with the SEC. Neither Artisan Partners US nor Artisan Partners UK has represented or will represent that it is otherwise registered with any regulator or other regulatory body.

Copyright 2013 Artisan Partners. All rights reserved. This material is for the intended recipient's use only and may not be reproduced or disseminated, delivered or distributed to anyone other than the intended recipient in whole or in part without Artisan Partners' permission.

For Professional, Institutional Investor Use Only.

# Exhibit 14

ARTISAN PARTNERS

# AN IN-DEPTH VIEW OF ARTISAN GLOBAL VALUE TEAM

## Investment Philosophy and Process

### A Discussion with Portfolio Management

Artisan Global Value Strategy
Artisan Non-U.S. Value Strategy



ARTISAN

INVESTMENT MANAGEMENT PRACTICED WITH
INTELLIGENCE AND DISCIPLINE IS AN ART®

## Artisan Global Value Team Investment Philosophy and Process

### LEADERSHIP



**N. David Samra, Managing Director**
*Portfolio Manager - Global Value Team*
*- 20 years of investment experience*



**Daniel J. O'Keefe, Managing Director**
*Portfolio Manager - Global Value Team*
*- 20 years of investment experience*

### OUR INVESTMENT TEAM

We (David Samra and Dan O'Keefe) are portfolio managers for the Artisan Global Value team. We have worked together for over fifteen years, and have implemented a consistent and disciplined investment process since the inception of Artisan Non-U.S. Value strategy in 2002 and Artisan Global Value strategy in 2007.

In addition to our portfolio manager responsibilities we are also research generalists. We assume full or partial coverage of all portfolio holdings and are assisted in our research by a team of analysts. Our team is organized by geographic regions, but within those regions we are generalists who look across all industries. We believe this model enables our analysts to become broad thinkers and gain critical insight across all economic sectors. It also allows us to more naturally gravitate to the most interesting opportunities. If you are a generalist you can more easily ignore an industry if it does not look interesting, while an expert in that industry will more than likely find one company or another that they want to buy.

### OUR INVESTMENT PHILOSOPHY

**Value Investing**

The key guiding point to our investment philosophy is that we are value investors. We look to buy shares in companies where there is a significant discount between the price we are paying and our estimate of the intrinsic value of the business. Over time, we expect to generate the vast majority of our returns through the unwinding of the discount between the share price and our intrinsic value estimate.

Many investors approach the global marketplace by buying equities with the intention of generating their returns as the underlying value of the business they are investing in grows. We like to own businesses that grow at high marginal rates of return when there is a low level of capital required to generate earnings growth, but quite often the market puts a premium on that growth which makes the opportunity unattractive to us.

We actively search for situations where there is a very large disconnect between what our research tells us is the underlying value of the business and the price that the market is offering us to access a piece of ownership in that business.

**Long-Term Investment Horizon**

A second core element of our philosophy is a long-term ownership view. We don't look at stocks as pieces of paper to be traded. We look at the shares in the companies that we are buying for what they represent – small pieces of ownership in a business that has some long-term enduring intrinsic value.

We are analysts trying to identify superior businesses that are trading in the marketplace at a price that represents a significant discount relative to the value of the business. We spend most of our time visiting companies, analyzing businesses and, most importantly, uncovering risk/reward situations where there is a disconnect between a company's share price and the price at which our research tells us the business is worth based on its earning power.

Market participants tend to overreact on the upside and the downside. Our long-term ownership view is designed to take advantage of those situations where the market is overreacting on the downside.

**Risk Management**

The final core element of our philosophy is risk management. We think about how risk relates to our investments in two ways: time value of money risk and business value volatility.

*Time Value of Money Risk* – Time value of money risk is a problem for many statistically cheap equities. As value investors, we are naturally inclined towards statistically cheap equities. These are equities that have low price-to-earnings ratios, low price-to-book ratios, or stocks where some measure, such as a high dividend yield is reflecting or at least looks like it is reflecting a discount to the underlying value of the business.

One of the main challenges of buying statistically cheap stocks is that often times the valuations are cheap for a reason. For example, the businesses may be of lower quality, the return on capital may be poor or the management team may not be good. Often times when you make an investment in a statistically cheap equity, you will find yourself in a value trap. For example, let's say you bought a stock at $20 today and the value of the business is $30. On the surface this seems like an attractive opportunity, but if the value of the business is shrinking over time, and in a few years it is worth $22 or $23 and the stock price hasn't moved, your risk reward is no longer in balance. In that scenario you haven't made any money and your purchasing power has been eroded because inflation is ever present.

In order to reduce the likelihood of this scenario, we narrow the universe of statistically cheap equities to what we view as superior businesses. We look for companies with enduring competitive advantages, high returns on capital employed and management teams with a track record of building value for their shareholders. We believe this enhances the odds of success over a reasonable period of time.

*Business Value Volatility* – Another risk that we encounter is business value volatility. The two key sources of volatility in the value of a business are high degrees of financial leverage and high degrees of operating leverage.

When you have a business that is financially leveraged, very small movements in the operating characteristics of the business can cause very wide swings in the return outcome. When this is exacerbated by operating leverage it makes the predictability of the outcome very low and the variability of the outcome very high, or as we say, the outcomes are very *symmetric*. If you get involved with a business that has very high levels of financial and operating leverage, there is the potential to



Discount to Intrinsic Value Illustration

## Artisan Global Value Team Investment Philosophy and Process

make a very significant return if you get it right. However, the opposite is also true. If something goes wrong, you are creating the potential for a meaningful permanent loss of capital.

We prefer to get involved in risk/reward situations where the outcome is *asymmetric*. In other words, within the universe of statistically cheap equities we focus our time, attention and capital on those businesses that have strong balance sheets and relatively low degrees of operating leverage. That way, if we make a mistake or have some bad luck with a company, the possibility that we lose a significant amount of money is diminished because we bought the equity at a significant discount to intrinsic value.

### OUR INVESTMENT PROCESS

We use the same process to manage Artisan Non-U.S. Value and Artisan Global Value strategies. The end goal of our process is to own a portfolio of businesses that retains four key characteristics. First and foremost, we want to own a portfolio of undervalued equities. Second, we want high-quality businesses with sustainable long-term competitive advantages. Third, we are looking for companies with strong balance sheets. Fourth, we are looking for management teams that have a history of adding value over time. If we have done our job correctly, the portfolio should aggregate into a group of undervalued companies that are generating high returns on capital, financially strong and managed by people who are working to build value over time. We think that all these characteristics together help maximize our chances of success and minimize our chances of permanent loss of capital.



### Idea Generation

We screen a lot on the metrics you'd expect for companies with a combination of low valuation and high business quality (P/E, cash flow, P/B, earnings growth, profitability and ROE), but we also like to search databases using keywords that indicate problems or big changes at a company – things like "profit warning" or "spin-off" or "restructuring." As with all screening, it's valuable only to point you in a direction. Our research is then very focused on the context in which a company is operating and on understand-

ing why the valuation is so low. If you're buying a house, you don't ask your real estate broker to blindfold you and take you to the cheapest house in town and just look at it from the inside. You have to stick your head out of the window and walk around the neighborhood to really understand what it's worth.

So when we look at banks, we want to know the leverage ratios for consumers in their primary markets. When we look at cement companies, we want to know where construction activity is historically relative to GDP in the relevant market and what import prices are. Just buying cheap stocks without paying enough attention to those contextual issues can create trouble.

### Business Analysis

When we find a business that is potentially interesting to us, the first thing we do is make sure the equity is cheap. However, it's important to point out that there are three other criteria that play a central and interrelated role in our process. These are, in effect, buffers that can help manage the risk of being wrong in our intrinsic value estimates and help ensure that we are buying truly undervalued securities, rather than simply cheap securities – an important distinction.

| RISK/REWARD PAYOFF | | |
|---|---|---|
| | Defense | Offense |
| Undervalued Companies | Risk Management | Return Generation |
| Quality Businesses | Time Value of Money Risk | Cash Generation |
| Financial Strength | Financial Flexibility | Purchasing Power |
| Shareholder-Oriented Management | Intelligent Management | Intelligent Capital Allocation |

*Undervalued Companies* – Like most value investors, we believe the price you pay for the equity of a business is the most important determinant of investment return over the long term. We believe that investing in a business at a substantial discount to its intrinsic value, and then waiting patiently for that discount to narrow, is the most consistent way to generate an attractive total return.

Our intrinsic value estimate attempts to capture what a business should be worth based on its earnings power in a normal economic environment and in a normal, liquid market. As a starting point, we generally become interested in a company if the current price is at least 30% below our estimate of intrinsic value. We would stress though, that it's less about the math and more about the work that goes into understanding the business and assessing the risks.

*Quality Businesses* – Another characteristic we emphasize is business quality. By this we are talking about business and industry characteristics as well as the strategy that is in place to face

them. Such considerations are important in judging the level of upside and downside risk to any estimate of intrinsic value.

In general, we look to return on capital as the best indicator of underlying business quality. Companies that earn high returns often have financial characteristics such as high profit margins, limited need for additional investment and high levels of cash flow generation available for distribution to shareholders or to fund growth. Such financial characteristics in turn reflect business fundamentals, including the level of competition in an industry, the relative concentration of suppliers and customers, and the degree of regulation facing an industry. In situations where a company continues to re-deploy capital at a high rate of return, the value of the business should grow over time.

*Financial Strength* – Financial strength is probably the easiest of the four characteristics to recognize. We like companies with no debt because there is very little margin for error when investing in heavily indebted companies. When business is going well and profits are growing, the returns to equity holders can be enormous as every incremental dollar of profit accrues to the equity owners. Of course, the opposite is also true. Since debt service is a largely fixed cost, if the business shrinks and there is only enough profit to pay the debt holders, the equity owners are left with nothing. This is why investors often clamor for management teams to take on more debt when times are good, only to shun the same companies when the road gets bumpy.

We also think that the balance sheet can be a competitive advantage. When business gets tough, as it certainly will at some point, companies with strong balance sheets are able to strengthen their competitive positions and generate returns for shareholders at times when competitors might not. Businesses with strong balance sheets can do this by using capital to take market share from weakened competitors, by buying up weaker companies or by repurchasing and canceling shares when valuations are low.

*Shareholder-Oriented Management* – Finally, we like to own shares in companies with management teams that have a track record of building value for shareholders over time. We have seen over and over again how sensible management can add value by preserving and growing the intrinsic value of the company through all types of environments, often in ways that we could never have foreseen. Conversely, we have seen how bad management teams can peck away at the intrinsic value of a business with decisions driven by motivations inconsistent with the interests of shareholders. This includes ego-driven acquisitions, outrageous compensation packages for management and unwillingness to return cash to shareholders.

*Continued on back*

## Artisan Global Value Team Investment Philosophy and Process

We look for management teams that have demonstrated discipline in the allocation of capital to new investments and acquisitions, and are conscious of controlling the financial risks to their companies by limiting debt. Aside from sitting down and talking to management teams, we also review a company's audited financial statements and its communications to shareholders.

Having covered all four elements of our business analysis it is important to note that the identification of these traits is generally not a black and white endeavor. Management track records are often mixed or conflicting; sometimes managers have no public track record from which to judge, sometimes good managers go bad and sometimes balance sheets are weak but getting better, or good but getting worse. Clearly, this is more of an art than a science. In addition, even when we feel comfortable with our evaluation of certain characteristics, very rarely do we find all of them present at the same time in the same security. A company might have a bulletproof balance sheet, great management and a cheap price, but it may operate in a very difficult industry. More often than not, we deal in informed trade-offs, weighing ambiguity in certain areas against greater certainty in others to determine which investments have the best odds of generating a significant return with the least amount of risk.

### SELL DISCIPLINE

We monitor each holding in the portfolio closely, incorporating new information relative to the original investment thesis. Material changes in a company's fundamentals or its market environment result in a careful review of the stock's attractiveness.

Our sell discipline is organized around the price to intrinsic value relationship. A stock is generally sold when it approaches or exceeds our target price. We will also sell when we find another company at a similar or greater discount that is of a higher quality or if we have made a mistake in assessing the intrinsic value or quality of the company.

### PORTFOLIO CONSTRUCTION

Once we find a group of equities that possess the four characteristics we just outlined, we apply our analysis to the amount of capital committed to each portfolio holding. Our approach is designed to allocate the most capital to those companies with the highest degree of undervaluation. Very simply, if we estimate that a company is 50% undervalued, it will carry a higher weighting than something that we estimate is 30% undervalued.

The tables (to the right) summarize some of the portfolio construction guidelines and constraints employed to help manage risk in both strategies.

### ARTISAN GLOBAL VALUE STRATEGY

The strategy typically has 30 to 50 holdings.

Market capitalizations of U.S. and non-U.S. companies above $2.0 billion at initial purchase.

Maximum position size of 5% in 75% of the strategy's net assets; maximum position size of 10% in remaining 25% of the strategy's net assets (measured at time of purchase).

Maximum of 30% in emerging markets at time of purchase.

Maximum of 25% in any one industry at time of purchase.

Ability to hedge currency defensively in unusual circumstances.

The strategy typically has no more than 15% in cash.

### ARTISAN NON-U.S. VALUE STRATEGY

The strategy typically has 40 to 60 holdings.

Non-U.S. companies of all market capitalizations.

Maximum 35% in any one country at time of purchase.

In general, maximum postion size of 5% of the strategy's net assets (measured at time of purchase).

Maximum of 20% in emerging markets at time of purchase.

Maximum of 25% in any one industry at time of purchase.

Ability to hedge currency defensively in unusual circumstances.

The strategy typically has no more than 10% in cash.

International investments involve special risks, including currency fluctuation, lower liquidity, different accounting methods and economic and political systems, and higher transaction costs. These risks typically are greater in emerging markets. Securities of small- and medium-sized companies tend to be more volatile and less liquid than those of large companies, may have underperformed the securities of large companies during some periods and tend to have a shorter history of operations than large companies. Value securities may underperform other asset types during a given period.

For more information visit www.artisanpartners.com.

Price-to-Earnings (P/E) Ratio is a valuation ratio of a company's current share price compared to its per-share earnings, calculated by dividing market value per share by earnings per share. Book Value is the value at which an asset is carried on a balance sheet, equal to the cost of an asset minus the accumulated depreciation. Price-To-Book (P/B) Ratio is a ratio used to compare a stock's market value to its book value and is calculated by dividing the current closing price of the stock by the latest quarter's book value per share or total assets minus intangible assets and liabilities. Dividend Yield is a financial ratio that shows how much a company pays out in dividends each year relative to its share price. Return on Capital (ROC) is a measure of how effectively a company uses the money invested in its operations. Return on Equity (ROE) is a measure of a corporation's profitability. It is calculated as the last twelve months net income before extraordinary items divided by the average total stockholder's equity at the beginning and end of the last twelve month period.

Artisan Partners is an independent investment management firm focused on providing high value-added, active investment strategies to sophisticated clients globally. Each of Artisan Partners Limited Partnership ("Artisan Partners US") and Artisan Partners UK LLP ("Artisan UK") provides discretionary investment management services to clients and collectively (with their parent company) are referred to as Artisan Partners in this material. Artisan Partners UK provides subadvisory services to Artisan Partners US with respect to the Global Equity Strategy. Artisan Partners Limited Partnership is an investment adviser registered with the U.S. Securities and Exchange Commission (SEC). Artisan Partners UK is an investment adviser registered with the SEC and authorized and regulated by the United Kingdom's Financial Services Authority.

Copyright 2013 Artisan Partners.  All rights reserved. This material is for the intended recipient's use only and may not be reproduced or disseminated, delivered or distributed to anyone other than the intended recipient in whole or in part without Artisan Partners permission.