# EXHIBIT B

| | |
|---|---|
| John F. Harnes (admitted *pro hac vice*) <br> Gregory E. Keller (admitted *pro hac vice)* <br> 1350 Broadway, Suite 908 <br> New York, New York 10018 <br> Tel.:   (917) 595-4600 <br> JHarnes@chitwoodlaw.com <br> GKeller@chitwoodlaw.com | |
| Robert W. Killorin (admitted *pro hac vice*) <br> Meryl W. Roper (admitted *pro hac vice)* <br> Ze'eva K. Banks (admitted *pro hac vice*) <br> CHITWOOD HARLEY HARNES LLP <br> 2300 Promenade II <br> 1230 Peachtree Street, N.E. <br> Atlanta, Georgia 30309 <br> Tel:   (404) 873-3900 <br> Fax:   (404) 876-4476 <br> RKillorin@chitwoodlaw.com <br> MRoper@chitwoodlaw.com <br> ZBanks@chitwoodlaw.com | Richard M. Heimann <br> (State Bar No. 63607) <br> Joy A. Kruse <br> (State Bar No. 142799) <br> LIEFF CABRASER HEIMANN & <br> BERNSTEIN LLP <br> 275 Battery Street, 29th Floor <br> San Francisco, California  94111- 3339 <br> Tel:  (415) 956-1000 <br> Fax:  (415) 956-1008 <br> rheimann@lchb.com <br> jakruse@lchb.com |
| Class Counsel for Plaintiff Mississippi Public Employees' Retirement System | Local Counsel for Plaintiff Mississippi Public Employees' Retirement System |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE DIAMOND FOODS, INC., SECURITIES LITIGATION <br><br> This Document Relates to: <br><br> All Actions | Case No.: 11-cv-05386-WHA <br><br> **DECLARATION OF JOHN F. HARNES IN SUPPORT OF PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR CLASS CERTIFICATION** <br><br> Date:           May 2, 2013 <br> Time:          8:00 a.m. <br> Courtroom:  8, 19th Floor <br> Judge:         The Honorable William H. Alsup |

I, John F. Harnes, declare as follows, pursuant to 28 U.S.C. § 1746:

1.     I am a member of the bar of the State of New York and of the firm Chitwood Harley Harnes LLP, counsel for Plaintiff Mississippi Public Employees' Retirement System ("MSPERS" or "Plaintiff").  I submit this declaration in connection with Plaintiff's Reply Brief in Further Support of its Motion for Class Certification.  More particularly, I submit this Declaration in response to the *ad hominem* attacks set forth in the Opposition Brief filed by Defendant Diamond Foods, Inc. ("Diamond" or the "Company").

2.     I have personal knowledge of the facts set forth herein and, if called upon to do so, could and would competently testify thereto.  I defended the depositions of both Mr. Neville and Ms. Tingle and was present throughout.

**I.     Background Facts**

3.     At the outset, Diamond characterize[es] [Mr. Neville's] deposition as consisting of a "half day."  In fact, the burden is much greater.  Traveling to San Francisco for a deposition and returning to Jackson, Mississippi, requires, at a minimum, two days, if not more realistically three.  While Mr. Neville and MSPERS understand that this is a burden any plaintiff undertakes when filing a lawsuit, that fact in no way lessens such burden, nor makes it an appropriate target for disparagement by Diamond's counsel.

4.     Mr. Neville testified pursuant to a deposition notice pursuant to Rule 30(b)(6).[1]  That notice initially identified 23 subjects about which Diamond proposed to inquire.  (Ex. 6 to the Decl. of Ze'eva Kushner Banks ("Banks Decl.")).  Plaintiff objected that the notice failed to comply with this Court's Supplemental Order to Order Setting Initial Case Management

---

[1] In that regard, Diamond makes much of Plaintiff's initial failure to identify individuals in its initial disclosures, a failure remedied immediately after it was addressed to Plaintiff's counsel. Diamond made no use of the information provided, serving instead 30(6)(b) notices, suggesting that Diamond was in no way prejudiced by the initial answer and that the only reason they protested so vigorously was to manufacture a controversy.

Declaration of John F. Harnes in Support of Plaintiff's Reply Brief in Further Support of Its Motion for Class Certification.
No. 11-CV-05386-WHA

- 1 -

Conference in Civil Cases ("Standing Order") (paragraph 23), which limited the subjects to ten. Thereafter, Diamond served an amended notice (the "Notice"), which retained 16 of the topics, but just grouped them into eight headings. (Banks Decl., Ex. 7). Expressly removed from the amended notice were the following topics: (1) the nature and extent of Plaintiff's relationship with its counsel of record in this action, including all instances in which such counsel has been retained by Plaintiff; and (2) the terms and provisions of any agreements between Plaintiff and its counsel of record in this action. If Diamond had included them in the amended notice, Plaintiff would have provided a deponent, who, unlike Mr. Neville, had knowledge of these topics.

5.   Mr. Neville was designated to testify as to the following substantive topics: (1) the damages allegedly sustained by the Plaintiff as a result of its investment in Diamond securities; (2) Plaintiff's understanding of its duties and responsibilities as a class representative in this action, including its ability to serve as an adequate representative of the putative class; and (3) the identity and status of all litigation, administrative proceedings or regulatory proceedings during the last ten years in which Plaintiff has been a party and which involved or related to mismanagement, fraud, breach of fiduciary duty, securities, criminal conduct, misappropriation or an investigation by any governmental body, agency or authority. [T]he Attorney General's office is responsible for all litigation on behalf of any state agency or arm of the State and is involved in "hundreds or thousands" of cases on behalf of the State. (Neville Tr. at 19:10-18; 21:14-16, Banks Decl., Ex. 2).

6.   With respect to substantive topic No. 1, however, Plaintiff put Diamond on notice that it objected to any questions concerning damages, since that constituted a legal determination made by an expert. This did not preclude Mr. Neville from testifying about economic loss. Ms. Tingle, MSPERS' chief investment officer, was designated to testify about the remaining

subjects: (1) the identities and duties of persons and entities with responsibility for determining, making and/or approving the equity investments made by Plaintiff during the period June 5, 2010 to June 8, 2012; (2) Plaintiff's investment policies, goals, plans, objectives and restrictions; (3) Plaintiff's purchases of, sales of, and any other transactions involving the securities of Diamond or The Procter & Gamble Company ("P&G"), including the reasons for such transactions; (4) Plaintiff's communications regarding Diamond, P&G, or Lead Plaintiff's transactions in Diamond or P&G securities during the period June 5, 2010 to June 8, 2012, including any communications with Diamond, P&G, and/or any outside consultants, analysts, investment advisors or managers and/or other third parties regarding Diamond, P&G, or Plaintiff's transactions in Diamond or P&G securities; and (5) documents maintained by Plaintiff, or on its behalf, that relate or refer to Diamond or P&G, including Plaintiff's efforts to locate any such documents that may be responsive to Diamond's document requests.

7. Before addressing the specific testimony of Mr. Neville raised by Diamond, it is important to note that Ms. Tingle, who was proffered as a fact witness strictly to testify about MSPERS' transactions in Diamond, P&G, and MSPERS' overall investment philosophy, was also questioned primarily about topics that had nothing to do with any of those for which she had been designated, including topics that, as noted above, had been removed from Diamond's 30(6)(b) notice. An investment officer with no legal training, Ms. Tingle was asked questions about the "Sunshine Act," campaign contributions, legal questions about the typicality of claims and damages, as well as other questions about the litigation, even though Ms. Tingle has no decision-making authority in this litigation and has a minimal role therein. (*E.g.*, Tingle Tr. at 68:17-70:6; 115:13-21; 120:5-17; 134:18-135:10, Banks Decl., Ex. 8).

## II. The Neville Deposition

8. In its brief, Diamond suggests that Mr. Neville was unwilling to answer certain

Declaration of John F. Harnes in Support of Plaintiff's Reply Brief in Further Support of Its Motion for Class Certification.
No. 11-CV-05386-WHA

- 3 -

questions. This is patently false, and Diamond's description is entirely inaccurate. Mr. Neville did not decline to answer any question; to the contrary, he answered many questions numerous times.

9. As with Ms. Tingle, much of the questioning directed to Mr. Neville concerned the "Sunshine Act," a bill that became effective after Lead Counsel was appointed. When I challenged counsel to explain how this line of questioning comported with the list of topics about which Mr. Neville was to testify, counsel replied generally "adequacy" but refused to explain (or could not explain) the nexus any further.

10. Diamond has attacked Mr. Neville at length for purportedly taking issue with being asked questions about the "Sunshine Act." This attack is unfounded, and the factual premise upon which it is based is inaccurate.

11. Although Diamond asserts that the first excerpt of testimony which it quotes (Opp'n at 17) is in response to questions about the "Sunshine Act," in fact that is not true; the quoted testimony is a misleading and inaccurate blending of answers to two specific, but different questions. The first part of the answer, the "intemperate" part, was in response to a question, not about the Act, but about "pay to play," a thinly veiled suggestion that Mr. Neville's boss, Attorney General Hood, and by extension, Mr. Neville himself, as well as Chief of Staff Geoffrey Morgan, were corrupt in their selection of lead counsel.[2] Furthermore, the question, and the line of "questioning" thereafter, described more fully below, pursuant to which Mr. Neville was shown a purported list of campaign contributions, did not seek to elicit any information from Mr. Neville (indeed, as set forth below, counsel actively discouraged him from testifying about the contributions he was shown), but were clearly calculated to provoke Mr.

---

[2] Mr. Neville has been a public servant for most of his professional career, having over 20 years of experience at the Office of the Attorney General under three separate elected Mississippi Attorneys General. He also has over 31 years of military experience and has served two mobilizations in support of Operation Enduring Freedom.

Declaration of John F. Harnes in Support of Plaintiff's Reply Brief in Further Support of Its Motion for Class Certification.
No. 11-CV-05386-WHA

- 4 -

1  Neville.

2        12.    Diamond cites a second piece of testimony as further evidence to argue that Mr.

3  Neville took issue with being asked questions about the "Sunshine Act."  Again, this is

4  misleading and inaccurate.  A review of the transcript reflects that counsel asked Mr. Neville

5  specific questions about details in the Act, including specifics as to fees, before a copy was

6  provided to him.  Mr. Neville's issue with the repeated questioning was that the provisions of the

7  Act spoke for themselves, that he had already testified that he did not know their specifics, and

8  that, as a consequence, the questioning served little purpose.  The transcript also reflects that

9  immediately thereafter, counsel produced the Act, asked questions about it, and Mr. Neville

10  responded to all questions without issue.

11        13.    Similarly, Diamond asserts that Mr. Neville "assailed" its counsel.  (Opp'n at 17-

12  18).  The testimony it cites, again taken out of context, was not in response to a question, but was

13  directly in response to counsel's "assailing" him.  To start, the testimony came during the course

14  of 20 pages of questioning about political contributions, about which Mr. Neville testified he

15  knew nothing.  Such "questioning," as noted above, consisted of little more than asking Mr.

16  Neville to read from a highlighted list of political contributions.  The remarks partially quoted by

17  Diamond came, not in response to a question, but in response to a directive by Diamond's

18  counsel that Mr. Neville "focus on my question" and that "if you have strong feelings about my

19  questions, there will be an opportunity for you to – your counsel to ask you about those."

20  (Neville Dep. Tr. at 139:8-15, Banks Decl., Ex. 2).

21        14.    The part of the answer omitted by Diamond makes clear that Mr. Neville objected

22  to the attempt to restrict his answers specifically, and the suggestion generally that he should be

23  required to sit through questioning about political contributions, about which he testified he

24  knew nothing, without being able to respond.  (Neville Tr. at 139:16-19, Banks Decl., Ex. 2)

Declaration of John F. Harnes in Support of Plaintiff's Reply Brief in Further Support of Its Motion for Class Certification.
No. 11-CV-05386-WHA

- 5 -

("No, I'm going to answer the questions the way I want them.  You're not going to cut me off. You're not going to tell me what I can say and not say, period."). Mr. Neville took issue, not with having to answer the questions, but at being told how he could answer the questions.[3]

15. [Q]uestions asked of Ms. Tingle include[ed] legal questions.  Nevertheless, at no time did Mr. Neville (or Ms. Tingle) refuse to answer any question or to provide any information.

16. In short, the deposition was a contentious one, on both sides.  But I know from personal experience that Mr. Neville, who acts together with a staff of attorneys in his office, is an outstanding attorney who takes an active role in all aspects of this litigation.  It is that quality that is important to the Class.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 18th day of April, 2013.

           /s John F. Harnes
           JOHN F. HARNES

---

[3] Equally inaccurate and misleading are citations to Mr. Neville's testimony that Diamond purports to be insulting. (Opp'n at 18 n.14).  The first quote was in response to a question concerning a document request seeking documents relating to every lawsuit involving certain claims of misconduct over a ten year period.  To make such a request of the State's legal officer, who, as noted above, is involved in hundreds, if not thousands of cases, is, on its face, senseless, which was the point that Mr. Neville was attempting to make.  (Neville Dep. Tr. at 165:3-25, Banks Decl., Ex. 2).  Furthermore, Mr. Neville neither disparaged nor complained about a Mississippi Supreme Court Justice nor Diamond's counsel.  The cited answer came in the context of a discussion about campaign finances and, more specifically, the amount of money raised by opponents of Attorney General Hood, the only Democrat to hold a major statewide office in Mississippi.  Mr. Neville was testifying about the amount of money spent to defeat a "very experienced" candidate for the Court on behalf of one relatively inexperienced.  Mr. Neville's comment about counsel's age was made, not as an insult, but simply as a frame of reference to describe the candidate's relative inexperience. (Neville Dep. Tr. at 136:21-139:11, Banks Decl., Ex. 2).  Additionally, contrary to Diamond's intimation otherwise, Mr. Neville at no point stated that sitting for the deposition was a waste of time, but rather was simply questioning why he was asked multiple questions repeatedly.

Declaration of John F. Harnes in Support of Plaintiff's Reply Brief in Further Support of Its Motion for Class Certification.
No. 11-CV-05386-WHA

- 6 -