IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE DIAMOND FOODS, INC., SECURITIES LITIGATION

No. C 11-05386 WHA

This Document Relates to:
   All Actions.

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND NOTICE TO THE CLASS**

## INTRODUCTION

In this securities class action, lead plaintiff has filed a motion for preliminary approval of a proposed class settlement agreement. Reserving on final approval later, the motion for preliminary approval is **GRANTED.**

## STATEMENT

The background of this action has been set forth in a prior order and needs not be discussed in detail herein (*see* Dkt. No. 182). In brief, a number of putative class actions were filed on behalf of investors who purchased securities of defendant Diamond Foods, Inc., a food processing and distribution corporation. The actions were consolidated, and Mississippi Public Employees Retirement System was appointed as lead plaintiff. Defendants remaining in this action are Diamond, as well as its former executives Michael J. Mendes and Steven M. Neil. Claims against defendant Deloitte & Touche LLP were dismissed on November 30, 2012.

The consolidated complaint alleges that defendants deliberately understated the costs of walnuts and improperly accounted for payments made to walnut growers to increase apparent profits and maintain higher share prices. The complaint further alleges that defendants were

motivated to inflate share prices during a period in which Diamond was seeking to use its stock to acquire Pringles, a snack chip brand owned by Proctor & Gamble Co. When the truth regarding walnut costs became known, Diamond's stock price declined significantly, resulting in financial losses to its shareholders.

A May 6 order certified this matter as a collective action under Federal Rule of Civil Procedure 23(b)(3). The parties reached a proposed class settlement agreement, and lead plaintiff moved for preliminary approval. At the August 22 hearing on that motion, the class settlement agreement was discussed as requiring a number of revisions before preliminary approval could be given. The parties have since implemented those revisions, and now submit a revised class settlement agreement, class notice, and proof of claim form (Exh. A, A-1, and A-2). The parties also present a summary notice concerning the class settlement agreement and final approval hearing, to be published in the national edition of *The Investor's Business Daily* (Exh. A-3). This order now considers lead plaintiff's motion for preliminary approval.

## ANALYSIS

"A settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotations omitted). Different facts may predominate in different factual contexts. *Ibid.*

### 1. BENEFIT TO CLASS MEMBERS.

The class settlement agreement provides a significant monetary benefit to class members from a company with limited financial resources. Under the agreement, defendants will pay $11 million and distribute 4.45 million shares of Diamond common stock to the class. As of August 21, the market value of the 4.45 million shares was $85.1 million. Any amounts remaining after disbursement of the settlement amount will be paid out as additional distribution to class members or to a charitable organization. Based on lead plaintiff's damages analysis, the maximum aggregate damages totaled approximately $430 million.

Although a cash only settlement would have been preferable, the parties have sufficiently demonstrated why the class settlement agreement involves Diamond common stock. Lead plaintiff's damages expert reviewed Diamond's publicly filed financial information and found

that the company had only $7.2 million in cash and cash equivalents on its balance sheet. Diamond is also highly leveraged, with $579 million in long-term obligations. Furthermore, the company lost 40% of its volume in walnut sales from the previous year (Harnes Exh. 1 at ¶¶ 4, 5). As such, Diamond's weakened financial condition was a significant factor in determining that the company was unable to pay a cash only settlement.

Regarding the 4.45 million shares, the class settlement agreement provides that Diamond has sole discretion to market the shares while this agreement is being considered and the claims are being processed. Class counsel explains that this provision exists so that Diamond can ensure that class shares enter the market in an orderly and controlled fashion. Any sale of the class shares, however, are subject to the consent of lead plaintiff and class counsel, who may consult with an independent financial advisor. The class settlement agreement also states that Diamond will not take any action to dilute the class shares. In the event that Diamond pursues a private placement of shares to raise capital, the company will obtain a fairness opinion from an independent financial advisor and provide a copy of that opinion, along with any accompanying materials or analysis, to lead plaintiff and class counsel. Furthermore, Diamond would bear all costs associated with an offering, including placement agent fees as well as underwriting discounts and commissions.

"Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc.*, C 01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002). Given Diamond's strained financial state and the uncertainty with lead plaintiff's ability to collect on any judgment, "it is not unreasonable for counsel and the class representative to prefer the bird in hand." *Ibid.* Preliminary approval of the class settlement agreement is thus proper.

### 2. SCOPE OF RELEASE.

At the August 22 hearing, the original scope of release was found to be vague and overly broad. Specifically, the first part of the release would have exterminated all claims that relate in any way to the allegations, transactions, facts, matters, occurrences, disclosures, representations, or omissions involved in this action. This was problematic because the first part would have

applied to claims beyond those certified for class treatment in this action. The parties were therefore requested to revise the release language so as to narrow the scope of the release.

As to that first part, the class settlement agreement now calls for a release of claims that arise out of or are based on the claims set forth in this action, including any claims by a class member in his capacity as a holder of Diamond securities. This new language establishes a much narrower scope of release, restricted to claims that relate to those certified for class treatment. As such, the scope of release is now appropriately limited.

### 3. CLASS NOTICE AND PROOF OF CLAIM FORM.

The class settlement agreement also includes a class notice and proof of claim form. Both have been edited pursuant to the revisions discussed at the August 22 hearing. For instance, the first page of the class notice provides a clearer explanation of the consequences if a class member fails to opt out. The class notice also contains information on the expected timetable for the distribution of Diamond stock, the $430 million calculation for maximum damages, and the brokers' obligations to confirm that they have sent the class notice to their clients. Moreover, the proof of claim form has been amended to inform class members that they do not need to provide documentation to support their claims if they purchased 200 shares or fewer of Diamond stock during the class period.

The class notice and proof of claim are to be sent as follows: No later than ten days after preliminary approval, the claims administrator will mail a copy of the class notice and the proof of claim form to all class members who can be identified with reasonable efforts. For other class members — who used brokers or nominees to acquire Diamond stock during the class period — those brokers and nominees must either send the class notice and proof of claim form to their clients, or send a list of their clients' names and addresses to the claims administrator. The brokers and nominees must do one of these two options within ten days of receiving the class notice and proof of claim form.

In addition, class counsel will notify these brokers and nominees about their obligations to send the class notice and proof of claim form to their clients. Furthermore, the brokers and nominees must send a compliance letter that class counsel must receive by October 15,

1  indicating that they have sent or will send class notice to their clients. Lead plaintiff has
2  provided a copy of a compliance letter that the brokers and nominees can use (Supp. Br. Exh. A).
3  Having made these revisions, the order approves of both the class notice and the proof of claim
4  form.

## CONCLUSION

For the foregoing reasons, the motion for preliminary approval of the class settlement agreement is **GRANTED.** Furthermore, the revised class notice and proof of claim form are hereby **APPROVED.** Consistent with the parties' stipulation of settlement, the following dates shall be set in this matter.

The claims administrator shall mail class notices and proof of claim forms to class members within **10 CALENDAR DAYS** of this order. Moreover, the summary notice shall be published on the national edition of *The Investor's Business Daily*, and the class notice, summary notice, and proof of claim will be placed on the claim administrator's website, also by the aforementioned deadline. Class counsel must file a motion for final approval of the class settlement agreement by **NOVEMBER 27, 2013**. The claims administrator must receive class members' written requests to be excluded from the class by **DECEMBER 20, 2013**. Additionally, class counsel must receive class members' written objections to the settlement and/or their notice of intention to appear at the final approval hearing by **DECEMBER 20, 2013**. Class counsel shall file a reply brief in support of its final approval motion by **DECEMBER 30, 2013**. Furthermore, class members must postmark and submit their completed proof of claim form by **JANUARY 9, 2014**. The final approval hearing shall occur at **3:00 PM ON JANUARY 9, 2013**.

**IT IS SO ORDERED.**

Dated: September 26, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5