IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DIAMOND FOODS, INC., SECURITIES LITIGATION | No. C 11-05386 WHA |
| This Document Relates to:<br>     All Actions. | **ORDER GRANTING FINAL APPROVAL OF PROPOSED CLASS SETTLEMENT AND GRANTING IN PART ATTORNEY'S FEES AND REIMBURSEMENT EXPENSES** |

## INTRODUCTION

In this securities class action, lead plaintiff moves for final approval of a proposed class settlement. In addition, class counsel move for attorney's fees, reimbursement of litigation expenses, and reimbursement of time spent by lead plaintiff's representative on this matter. To the extent stated below, the motions for final approval, attorney's fees, and reimbursement of litigation expenses are **GRANTED**. The motion for reimbursement of time spent is **GRANTED IN PART**.

## STATEMENT

The background of this matter is set forth in prior orders (Dkt. Nos. 182, 289). In brief, this matter involves a consolidation of putative class actions filed on behalf of investors who bought securities of defendant Diamond Foods, Inc. According to the consolidated complaint, Diamond and two of its former executives — defendants Michael J. Mendes and Steven M. Neil — deliberately understated walnut costs and improperly accounted for payments to walnut growers so as to increase apparent profits and maintain higher share prices. This occurred during

a time in which Diamond sought to use its stock to acquire Pringles, a snack chip brand owned by Procter & Gamble Co. When the truth about walnut costs became known, Diamond's stock price declined significantly, resulting in financial losses to its shareholders.

On May 6, 2013, this matter was certified as a class action under Federal Rule of Civil Procedure 23(b)(3). Thereafter, the parties reached a proposed class settlement agreement and lead plaintiff Mississippi Public Employees' Retirement System moved for preliminary approval. On September 26, 2013, following a number of revisions to the proposed class settlement and the notice thereof, the undersigned gave preliminary approval and set a fairness hearing for January 9, 2014.

Class counsel then sent the notice of settlement to potential class members, pursuant to the requirements of the settlement and the September 26 order. The notice adequately provided information about the total settlement amount and plan of allocation, the requested attorney's fees and expenses, the deadlines and rights that class members had in making claims, objecting to the settlement, and opting out of the class, and the claims to be released. In addition, class counsel sent the notice to securities brokers, along with instructions for the brokers to mail back compliance letters after the brokers had shared the notice with their clients or provided the claims administrator with their clients' mailing information.

To date, the claims administrator has mailed a total of 67,727 notices to potential class members, including 471 notices that were re-sent to updated mailing addresses; 896 notices, however, were returned as undeliverable mail, with no new addresses found after an address search (Supp. MacDonald Aff. ¶¶ 3, 4, 8). Moreover, all but four of the 121 securities brokers on class counsel's mailing list have either sent compliance letters, sent their clients' mailing information to the claims administrator so that the clients would timely receive the notice of settlement, or explained that they are proprietary traders. At the fairness hearing, class counsel reported that they made several efforts to follow up with the four unresponsive brokers, identified only as Barclays, Crest International, Newedge, and Hold Brothers, and that they do not know whether these four brokers have potential class members as clients. Class counsel explained that they obtained all names and addresses for their brokers mailing list from the

Depository Trust & Clearing Corporation ("DTCC") (Gore Decl. ¶¶ 3, 9–12; Supp. Gore Decl. ¶¶ 2–4, 6).

As of December 26, 2013, the claims administrator has received 4,393 claims from potential class members, with a number of additional claims expected as the January 9 claims deadline approaches. The administrator has also received 29 requests for opting out of the class (Supp. MacDonald Aff. ¶¶ 8, 11, 13). No objection to the proposed class settlement or the requested attorney's fees and expenses has been received, but two would-be class members — Mr. Charles L. Baltimore and Mrs. O. Jean Baltimore — object to the duration of the class period, in light of their purchase of Diamond securities one day after the class period closed on February 8, 2012. This followed the Baltimores' other purchases of Diamond securities from November 2011 through December 2011.

A motion is now made for final approval of the proposed class settlement. Class counsel also move for (1) attorney's fees comprising $1,444,767.10 with accrued interest and 623,000 shares of Diamond common stock from the total settlement amount; (2) $633,375.35 in reimbursement of litigation expenses from the cash component of the total settlement amount; and (3) $46,860 in reimbursement of time that lead plaintiff's representative — the Mississippi Attorney General's Office — spent on this matter. Following briefing from lead plaintiff and class counsel, as well as oral argument at the fairness hearing, the order rules as follows.

**ANALYSIS**

**1.   FINAL APPROVAL OF PROPOSED CLASS SETTLEMENT.**

This order approves of the proposed class settlement. Diamond will pay $11 million in cash and distribute 4.45 million shares of its common stock to the class. On November 25, 2013, the value of the total settlement amount was $118.8 million, representing approximately 28% of the $430 million in maximum aggregate damages calculated under lead plaintiff's damages analysis; as of January 9, 2014, the value of the total settlement amount increased to $123.8 million. As a result, even though the settlement primarily relies on Diamond common stock and the share price of that stock fluctuates daily, the value of the total settlement amount supports approval here.

This is true in light of the risk and expense of further litigation. In lead plaintiff's words, Diamond has "tenuous financial liquidity" (Br. 2). With only $7.2 million in cash and cash equivalents reflected on its latest balance sheet, Diamond has $579 million in long-term obligations. The company has also experienced a decline of more than forty percent in the volume of walnut sales from 2013, in part because walnut growers have abandoned Diamond. As a result, "it is not unreasonable for counsel and the class representative to prefer the bird in hand," given concerns about Diamond's strained financial state and its ability to pay a judgment following further litigation. *In re Critical Path, Inc.*, C 01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002). The litigation risk and expense thus cut in favor of approving the proposed class settlement.

Also supporting approval is the reaction of class members to the proposed class settlement. After 67,727 notices were sent to potential class members, there have been only 29 requests to opt out of the class and no objection to the settlement or the requested attorney's fees and expenses. It is true that the Baltimores have submitted an "objection," but the "objection" is really a validation of the settlement given that the Baltimores actually seek to further include their February 9 purchase by extending the class period by one day. This request for extension, however, is denied because the class was certified *only* as to those who purchased Diamond securities from October 5, 2010 through February 8, 2012. Furthermore, should there exist a viable claim as to their February 9 purchase, the Baltimores can still assert that claim, given that the proposed class settlement only releases claims for purchases of Diamond securities that occurred during the class period and not after.

There are also no issues with the proposed plan of allocation, as set forth in the notice of settlement. Under the plan of allocation, class members who timely submit a claim are eligible for their share of the total settlement amount, based on the dates of their economic loss from purchasing Diamond securities during the class period. If any amount of the total settlement remains after all distributions have been made to class members, then the remaining amount will be disbursed as additional distribution to the class or to an appropriate charitable organization, as approved by the undersigned.

4

Having considered the above, as well as all relevant submissions and the statements made at the fairness hearing, the order finds that the proposed class settlement is fair, reasonable, and adequate under Rule 23(e)(2). The order further finds that the notice of settlement and the manner in which it was sent to potential class members are reasonable and adequate in providing information about the proposed class settlement, the manner in which potential class members could participate in or object to the settlement, and the manner in which such class members could opt out of the class; both the notice and the manner of notice therefore satisfy the requirements of Rule 23(e)(1).

With respect to the four unresponsive brokers described above, however, class counsel will file proposed orders to show cause directed at these brokers to appear in court and justify why they should not be held in contempt for failure to respond to class counsel's notice and instructions. If DTCC did not provide class counsel with an address for any of these four brokers, then that proposed order to show cause should be directed at DTCC to explain why a proper mailing address was not given to class counsel. The proposed orders to show cause should all be set for the shortest hearing date reasonably possible.

As to potential class members whose notices were returned as undeliverable with no new addresses found, these individuals likely did not receive notice of their rights under the proposed class settlement and will receive no benefit. Accordingly, such individuals will be deemed excluded from participating in the proposed class settlement, such that they are not bound by either the settlement or its release of claims. Class counsel shall file a final list of names and cities for these individuals whose notices were returned as undeliverable, as well as for the 29 requests to opt of the class.

Final approval of the proposed class settlement and plan of allocation is thus **GRANTED**.

**2.    ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES.**

Class counsel seek attorney's fees of $1,444,767.10 with accrued interest and 623,000 shares of Diamond common stock from the total settlement amount. Class counsel also request $633,375.35 from the cash component of the total settlement amount to reimburse litigation

1    expenses, as well as $46,860 for the time that the Mississippi Attorney General's Office spent on
2    this matter. The order addresses each request in turn.

3          A district court must ensure that attorney's fees are "fair, reasonable, and adequate," even
4    if the parties have entered into a settlement agreement that provides for those fees. *See Staton v.*
5    *Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003). In determining such fees, "the district court
6    has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar
7    method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

8          Here, class counsel request that the attorney's fees be calculated under the percentage-of-
9    the-fund method. To that end, class counsel ask for $1,444,767.10 with interest accrued — *i.e.*,
10   14% of the cash component of the total settlement amount, net of the requested reimbursement
11   expenses — as well as 623,000 shares of Diamond common stock — *i.e.*, 14% of the stock
12   component of the total settlement amount. Class counsel thus seek 14% of the total settlement
13   amount overall, which is below the 25% benchmark set forth by our court of appeals under the
14   percentage-of-the-fund method. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).
15   Moreover, the circumstances of this case — including the settlement amount and the risk of not
16   recovering anything due to Diamond's weakened financial condition — support a finding that
17   the request for attorney's fees is fair and reasonable. *Vizcaino*, 290 F.3d at 1048–50. Subject to
18   the timing restrictions set forth below, the motion for attorney's fees is **GRANTED**.

19         Class counsel also request $633,375.35 to reimburse their litigation expenses, which are
20   detailed in a declaration and include in large part experts' fees and litigation support costs
21   (Harnes Decl. ¶¶ 117–25). Because the order finds that this request for reimbursement of
22   litigation expenses is reasonable, the motion as to these expenses is **GRANTED**.

23         The request for $46,860, however, presents a different issue. Although class counsel
24   make this request as reimbursement for time spent by the Mississippi Attorney General's Office
25   on this matter, the undersigned disfavors any type of special payment because "there is a huge
26   risk that [such a payment is] an incentive to entice a representative to support a marginal
27   settlement." *In re Charles Schwab Corp. Sec. Litig.*, C 08-01510 WHA, 2011 WL 1481424, *9
28   (N.D. Cal. Apr. 19, 2011). In fact, our court of appeals noted that "excessive payments to named

6

class members can be an indication that the agreement was reached through fraud or collusion," and that "[i]f class representatives expect routinely to receive special awards in addition to their share of recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Staton*, 327 F.3d at 975 (citations omitted).

Nonetheless, in making this request, class counsel cite to the Private Securities Litigation Reform Act, which permits an award of "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. 78u-4(a)(4). To that end, class counsel submit a declaration detailing the 262.6 hours that individuals from the Mississippi Attorney General's Office spent on this matter, and cite to the undersigned's decision to grant a discounted amount of compensation for the lead plaintiffs in *Charles Schwab* (Neville Decl. ¶¶ 4, 10–17). The reimbursement sought will not go to lead plaintiff itself, but will go into a fund maintained by the Mississippi Attorney General's Office to investigate other cases.

The Court disagrees. There is no requirement to reimburse lead plaintiff, much less the Attorney General, in the amount sought here. Nor does the amount of time spent by lead plaintiff justify granting the request for $46,860. Indeed, in *Charles Schwab*, the undersigned was "very reluctant to give a class representative more than class members," but granted partial compensation to the lead plaintiffs because they had spent an "impressive amount of time and effort" and the case "did not settle until the eve of trial." Even then, the most compensation that any of those lead plaintiffs received was $8,750, a fraction of the amount requested (*i.e.*, $25,000). 2011 WL 1481424, *9–10.

The Mississippi Attorney General's Office was not appointed as class counsel and was not, in fact, lead plaintiff itself. Still, some of the work done by the Mississippi Attorney General's Office was beneficial to the class and therefore this order will reimburse and ratify it after the fact. The order finds that $10,000 is an appropriate amount to compensate the Mississippi Attorney General's Office, such that the motion for reimbursement of time spent is **GRANTED IN PART**.

7

**CONCLUSION**

Accordingly, it is hereby ordered as follows:

1. The notice of settlement, as well as the manner in which it was sent to class members, fairly and adequately described the proposed class settlement, the manner in which class members could object to or participate in the settlement, and the manner in which class members could opt out of the class; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to class members; and complied fully with the Federal Rules of Civil Procedure, due process, and all other applicable laws. A full and fair opportunity has been afforded to class members to participate in the proceedings convened to determine whether the proposed class settlement should be given final approval. Accordingly, the undersigned hereby determines that all class members who did not exclude themselves from the settlement by filing a timely request for exclusion are bound by this settlement order and judgment.

2. With regard to the four unresponsive brokers, class counsel shall file proposed orders to show cause directed at either these brokers or DTCC, as described above. The proposed orders to show cause are due by **5 PM ON JANUARY 13, 2014**.

3. Class counsel shall also file a final list of names and cities for potential class members who either timely opted out or whose notices were returned as undeliverable with no new addresses found. These individuals are deemed excluded from participating in the proposed class settlement, and thus are not bound by either the settlement or its release of claims.

4. The undersigned also finds that the proposed class settlement is fair, reasonable, and adequate as to the class, plaintiffs, and defendants; that it is the product of good faith, arms-length negotiations between the parties; and that the settlement is consistent with public policy and fully complies with all applicable provisions of law. The settlement is therefore approved.

5. Pursuant to the terms of the amended stipulation of settlement dated August 20, 2013, the claims in this action are hereby dismissed with prejudice.

6. Having considered class counsel's motion for attorney's fees and reimbursement expenses, the undersigned hereby awards class counsel attorney's fees of 14% of the total settlement amount — *i.e.*, $1,444,767.10 with interest accrued and 623,000 shares of Diamond common stock. Class counsel shall also receive $633,375.35 as reimbursement for their litigation expenses, to be paid from the cash component of the total settlement amount. Defendants are authorized to pay half of the $1,444,767.10 and all of the $633,375.35 to class counsel immediately. The rest is authorized to be paid only after class counsel certify that all other funds and shares of common stock have been distributed to the class. Furthermore, the 623,000 shares of Diamond common stock shall be payable to class counsel when the settlement shares are distributed to the class.

7. Diamond Foods will rely on Section 3(a)(10) of the Securities Act of 1933, as amended, in connection with the issuance of shares of its common stock pursuant to the amended stipulation of settlement dated August 20, 2013.

8. In addition, lead plaintiff Mississippi Public Employees' Retirement System and the Mississippi Attorney General's Office are awarded $10,000 as reimbursement for time spent on this matter.

9. Class counsel and lead plaintiff are reminded of past orders with respect to campaign contributions and to the notice requirements, heretofore composed and accepted (Dkt. Nos. 227, 289, 299).

**IT IS SO ORDERED.**

Dated: January 10, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9